## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ELIZABETH BARBER,
c/o National Student Legal Defense
Network
1015 15th Street N.W., Suite 600,
Washington D.C. 20005,

on behalf of herself and all others
    similarly situated,

       *Plaintiff,*

   vs.

ELISABETH DEVOS, in her official
    capacity as United States Secretary
    of Education,
400 Maryland Avenue S.W.
Washington, D.C. 20202, &

UNITED STATES DEPARTMENT OF
EDUCATION,
400 Maryland Avenue S.W.
Washington, D.C. 20202,

      *Defendants*

Case No. 20-cv-1137

## CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.     With each passing day, countless federal student loan borrowers are suffering needless harm because, in the midst of the COVID-19 pandemic, they remain subject to unlawful debt collection by Defendants United States Department of Education and Secretary of Education Elisabeth DeVos (collectively, "the Department").

2.      Decades ago, Congress vested the Department with the extraordinary authority to garnish the wages of individuals who default on their federally issued or guaranteed student loans without a court order.

3.      On March 25, 2020, during a period of rapid response to the spread of COVID-19, the Department announced it would use its administrative authority to stop involuntary collection activity, including wage garnishments, for certain borrowers of federal student loans. Further, it announced that it would issue refunds of amounts collected since March 13, 2020, the date President Donald Trump declared a national emergency.

4.      On March 27, 2020, Congress passed and President Trump signed into law the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"). *See* Pub. L. No. 116–136, ___ Stat. ___ (2020). In doing so, Congress and the President clearly and unambiguously acknowledged that administrative wage garnishment is unsustainable for student loan borrowers during the present crisis. As such, the law directs the Secretary to stop garnishing wages of certain federal student loan borrowers through September 30, 2020.

5.      Also on March 27, 2020, Secretary DeVos announced that the Department had "stopped federal wage garnishments altogether for students and families in default."

6.      On or around April 9, 2020, the Department sent a notice to student loan borrowers informing them that all collection activity, including wage garnishments, was stopped for the period of March 13, 2020, through September 30,

2020. The notice also informed borrowers that "[t]here's no action you need to take at this time."

7.      Despite the Department's announcement that it had stopped wage garnishments, and despite the Department's notice to student loan borrowers that it had done the same, the Department, more than a month into the six-month emergency suspension period, continues to seize wages from distressed federal student loan borrowers.

8.      Plaintiff Elizabeth Barber is one of those borrowers. She is exactly who the CARES Act was designed to help. She is 59 years-old and works as a home health aide, earning $12.89 per hour. Ms. Barber struggles to afford daily necessities while also paying off her debts. During the pandemic, her hours have been reduced, placing her under even more financial strain. The CARES Act's reprieve from wage garnishment was supposed to help her get by—immediately. She brings this lawsuit on behalf of herself and other similarly situated borrowers to force the Department to comply immediately with the wage garnishment suspension directive of the CARES Act, as Congress required.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under federal law. The Court also has the authority to order a remedy pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.

10.      Because this is an action against an officer and agency of the United States, venue is proper in this district pursuant to 28 U.S.C. § 1391(e). Venue is also

proper in this district because Secretary DeVos performs her official duties here.
Finally, many of the events giving rise to this action took place here.

## PARTIES

11.     Plaintiff Elizabeth Barber is a natural person who resides, and at all
relevant times has resided, in Penfield, NY. She is a home health aide and has
continued to provide patient care throughout the COVID-19 crisis. She is a federal
student loan borrower with federally held loans subject to the CARES Act. Since the
CARES Act became law on March 27, 2020, the Department has garnished her
wages multiple times, and, absent further direction from the Department, she
understands that they will continue to do so.

12.     Defendant Elisabeth DeVos is sued in her official capacity as the
Secretary of Education for the United States Department of Education.

13.     Defendant United States Department of Education is a department of
the executive branch of the United States government headquartered in
Washington, D.C. and an agency of the United States within the meaning of 5
U.S.C. § 552(f)(1).

## FACTUAL ALLEGATIONS

### The Department of Education's authority to garnish wages

14.     Title IV of the Higher Education Act of 1965 (as amended) ("HEA"), 20
U.S.C. § 1070 *et seq*., governs the administration of the federal student loan
program.

15.     As part of its management of the federal student loan program, the
Department possesses extensive extrajudicial collection powers, including the

authority to garnish federal student loan borrowers' wages without a court order following default on their student loans. The HEA and the Debt Collection Improvement Act ("DCIA") authorize this practice. *See* HEA § 488A, 20 U.S.C. § 1095a; 31 U.S.C. § 3720D.

16. The Department reported that, in fiscal year 2018 alone, it garnished over $840 million from borrowers with federal Direct Loans. *See* Office of Fed. Student Aid, "Default Rates," https://studentaid.gov/data-center/student/default (select "FY18 Q1-Q4" under "Default Recoveries by Private Collection Agency" and hit "GO") (last visited Apr. 27, 2020).

17. When a borrower's delinquency qualifies for garnishment, the Department will issue a garnishment order directly to the borrower's employer. 34 C.F.R. § 34.18. The Secretary has the right to take legal action against an employer in order to enforce that order. 20 U.S.C. § 1095a(a)(6); 34 C.F.R. § 34.29.

18. The Department's regulations provide that the amount that can be garnished is the lesser of fifteen percent of a borrower's disposable income or the amount exceeding thirty times the prevailing minimum wage. 34 C.F.R. § 34.19(b).

19. Once issued, a garnishment order remains in effect until the Secretary rescinds the order or the debt is paid in full, including interest, penalties, and collection costs. *Id.* § 34.26.

20. At any time, the Department "may compromise or suspend collection by garnishment of a debt in accordance with applicable law." *Id.* § 34.2(c).

21.     Where the Department's wage garnishment is "barred by law at the time of the collection action," the Department must "promptly refund any amount collected by means of this garnishment." *Id.* § 34.28(a). Unless required by federal law, the Department will not pay interest on a refund. *Id.* § 34.28(b).

**The CARES Act requires immediate suspension of wage garnishment and notice of the suspension to borrowers.**

22.     On March 13, 2020, President Trump declared a national emergency due to the COVID-19 pandemic.

23.     On March 25, 2020, the Department announced that, due to the national emergency, it would "halt collection actions and wage garnishments to provide additional assistance to borrowers. This flexibility will last for a period of at least 60 days from March 13, 2020." *See* Press Release, U.S. Dep't of Educ., "Secretary DeVos Directs FSA to Stop Wage Garnishment, Collections Actions for Student Loan Borrowers, Will Refund More Than $1.8 Billion to Students, Families" (Mar. 25, 2020), *available at:* https://www.ed.gov/news/press-releases/secretary-devos-directs-fsa-stop-wage-garnishment-collections-actions-student-loan-borrowers-will-refund-more-18-billion-students-families.

24.     On March 27, 2020, after passing by a vote of 96–0 in the United States Senate, and by a voice vote in the United States House of Representatives, President Trump signed the CARES Act into law. *See* Pub. L. No. 116–136, ___ Stat. ___ (2020). The purpose of the CARES Act is to "[p]rovid[e] emergency assistance and health care response for individuals, families[,] and businesses affected by the 2020 coronavirus pandemic." *Id.*

25.     Prior to and after its passage, legislators from both parties came together to emphasize that the relief provided under the Act must be provided immediately. For example, Senator McConnell explained that the CARES Act "puts urgently-needed cash in the hands of American workers and families. . . . That is what we have to do: Inject a significant amount of money as quickly as possible into households, small businesses, key sectors, and our nation's hospitals and health centers. This bill would do just that—and do it fast." Press Release, Sen. Mitch McConnell, "This is Not a Political Opportunity. It is a National Emergency" (Mar. 22, 2020), *available at:*

https://www.mcconnell.senate.gov/public/index.cfm/pressreleases?ContentRecord_id=16D7E2DB-8860-4B80-A9F3-6E6858BF625D. *See also* 166 Cong. Rec. S1977 (Mar. 24, 2020) (statement of Sen. John Thune) ("[The CARES Act is filled with resources to help struggling families, provide relief to workers, and enable businesses to retain their employees during this crisis. Americans need this bill today, not tomorrow, [and] not next week[.]"); Press Release, Sen. Chuck Grassley (Mar. 25, 2020), *available at:* https://www.grassley.senate.gov/news/news-releases/grassley-releases-phase-3-coronavirus-response-legislation ("The economic and public health crisis we are experiencing as a country is an emergency and Congress must respond in kind. Congress must pass this legislation immediately.").

26.     In an effort to protect financially vulnerable borrowers from mounting financial burdens during the COVID-19 crisis, section 3513(e) of the CARES Act requires the Secretary to suspend, until September 30, 2020, all involuntary

collections of defaulted Direct Loans and Federal Family Education Loans

("FFEL")[1] owned by the Department. The Act specifically and explicitly includes

suspension of wage garnishment:

> (a) IN GENERAL. —The Secretary shall suspend all
> payments due for loans made under part D and part B
> (that are held by the Department of Education) of title IV
> of the Higher Education Act of 1965 (20 U.S.C. 1087a et
> seq.; 1071 et seq.) through September 30, 2020.
> . . .
> (e) SUSPENDING INVOLUNTARY COLLECTION.—
> During the period in which the Secretary suspends
> payments on a loan under subsection (a), the Secretary
> shall suspend all involuntary collection related to the
> loan, including—(1) a wage garnishment authorized
> under section 488A of the Higher Education Act of 1965
> (20 U.S.C. 1095a) or section 3720D of title 31, United
> States Code.

---

[1] Direct and FFEL loans are two types of federal student loans. As part of the HEA, Congress established the FFEL loan program in which commercial lenders loaned money to students and their families under favorable terms, which were then guaranteed by guaranty agencies and reinsured by the United States government. *See generally* 20 U.S.C. § 1078(a)–(c). Effective in 2010, Congress ceased the origination of new FFEL loans and transitioned entirely to a Direct Loan program wherein the United States serves as the lender and contracts with non-governmental entities to service loans the Department issues. 20 U.S.C. § 1071(d); *see also* Health Care & Educ. Reconciliation Act of 2010, Pub. L. No. 111–152, § 2201 *et seq.*, 124 Stat. 1029, 1074 (2010). Although borrowers are still repaying FFEL loans, no new FFEL loans have been issued since June 30, 2010. In addition, in 2008, Congress—through the Ensuring Continued Access to Student Loan Act ("ECASLA"), Pub. L. No. 110–227—authorized the Department to purchase FFEL loans from commercial lenders for a limited period of time. That period was subsequently extended. Many of those loans are still owned by the Department today. The Department's statutory wage garnishment authority applies to loans "held" by the Secretary, regardless of whether they are Department-owned FFEL loans or Direct Loans. HEA § 488A, 20 U.S.C. § 1095a(a).

27.     With this provision, Congress immediately suspended wage garnishments for a six-month period (more than the sixty days previously announced by the Department) so that struggling student loan borrowers would have more income to put food on the table and pay their rent and medical bills during the crisis.

28.     The CARES Act also requires the Department to provide notice to borrowers of the actions taken suspending wage garnishment on or before April 10, 2020. Section 3513(g)(1)(B) provides that the Secretary shall "not later than 15 days after the date of enactment of this Act, notify borrowers—. . . . (B) of the actions taken in accordance with subsection (e) for whom collections have been suspended."

29.     Following passage of the CARES Act, Secretary DeVos stated the following at the White House coronavirus task force press briefing:

> Mr. President, you have promised to defeat this invisible enemy and to keep our economy strong. You took immediate action and provided student loan relief to tens of millions of borrowers. We set all federally held student loans to zero percent interest rates and deferred payments for 60 days. Now with the CARES Act, that you signed into law, Mr. President, those actions will extend to 6 months.

> Those who are, or become, delinquent on their payments as a result of the National Emergency will receive an automatic suspension of payments, without having to request it. **Additionally, we've stopped federal wage garnishments altogether for students and families in default.** And I have asked private collection agencies that contract with the Department to stop all collections correspondence including phone calls, letters, and emails.

> We hope these actions will help alleviate the financial burden and anxiety students and their families are feeling during these tough times.

*See* Press Release, U.S. Dep't of Educ., "Remarks by Secretary DeVos at the White

House Coronavirus Task Force Press Briefing" (Mar. 27, 2020) (emphasis added),

*available at*: https://www.ed.gov/news/speeches/remarks-secretary-devos-white-

house-coronavirus-task-force-press-briefing.

30.     On or around April 1, 2020, the Department placed the following

guidance to borrowers on its website:

> **UPDATED: On March 25, 2020, ED announced that my wages would
> not be garnished, but money is still being taken from my paycheck.
> What should I do?**
>
> Your human resources department will receive a letter from ED instructing
> them to stop your wage garnishment. If ED receives funds from a
> garnishment between March 13, 2020, and Sept. 30, 2020, we will refund
> your garnished wages.

*See* U.S. Dep't of Educ., "Coronavirus and Forbearance Info for Students, Borrowers, and

Parents," https://studentaid.gov/announcements-events/coronavirus (last visited Apr.

27, 2020).

31.     Because the Department's guidance states that borrowers' wages may

continue to be taken and that they should expect to receive refunds at some

uncertain date in the future, it contradicts the CARES Act's directive to

immediately suspend involuntary collections.

32.     On or around April 9, 2020, the Department sent a notice to borrowers

with the following heading in bold: "**We have temporarily . . . stopped

collection activity on your defaulted federally owned student loans**." The

notice explained that "we are contacting you to explain how [the CARES Act] affects

your defaulted federally owned student aid debt." In bold again, it then states:

**We've taken the following actions on your defaulted federally owned loans and/or grant overpayment debts:** . . . .

> **Stopped Collections**—We stopped all collection activity on the federal student aid debt for the period March 13, 2020, through Sept. 30 2020.

> During this period you will not . . . have your wages garnished (taken from your paycheck).

33.    In a section titled "**WHAT YOU NEED TO DO,**" the notice states: "Keep this notification for your records. We'll communicate with you in August to help prepare you for Sept. 30 2020, when the . . . stopped collections period ends. There's no action you need to take at this time."

**The Department's failure to implement the CARES Act**

34.    Despite these statements—including the notice to borrowers that their wage garnishment was suspended and there was no further action they needed to take—the Department continues to illegally garnish wages of borrowers in violation of the CARES Act, including the wages of Named Plaintiff Elizabeth Barber.

35.    Ms. Barber's most recent paycheck, dated April 24, 2020, was garnished in violation of the CARES Act, as were several others, and the garnishment order remains in effect.

36.    On information and belief, the Department still has not ensured that all affected employers have received instructions to stop garnishing the pay of their employees with defaulted federal student loans.

37.    According to the *Washington Post,* as of April 21, 2020, the Department has "yet to send letters requesting that employers stop garnishing the

pay of student loan borrowers in default." *See* Danielle Douglas-Gabriel, "The
Education Department is dragging its feet on stopping wage garnishment for
student loan borrowers," *Washington Post* (Apr. 21, 2020), *available at:*
https://www.washingtonpost.com/education/2020/04/21/wage-garnish-student-loans-
education-department/.

38.     In fact, the Department reportedly attempted to send emails to
employers regarding suspension of wage garnishment but is aware that most of
those emails were never opened. *Id.*

39.     The CARES Act did not provide the Department with a grace period in
which to provide this temporary six-month relief. To the contrary—as indicated by
the requirement in Section 3513(g)(1)(B) that the Secretary provide notice to
borrowers **by April 10, 2020** that wage garnishments were suspended—timely
action is essential to delivering the relief Congress mandated.

40.     Irrespective of steps that the Department may have taken to cease
garnishing wages of some student loan borrowers, it nevertheless has not stopped
the practice altogether and is therefore out of compliance with the CARES Act.

**Harm to Named Plaintiff and the Putative Class**

41.     The Department's illegal wage garnishments are causing material and
immediate harm to Named Plaintiff and the proposed class, as well as thwarting
the purpose of the CARES Act to provide fast, direct relief to student loan borrowers
during the current national emergency.

42.     If the Department provides full refunds to borrowers months or even
weeks into the future, many borrowers, including Ms. Barber, will still experience

irreparable harm. Section 3513 of CARES Act is designed to provide immediate relief to struggling borrowers for life necessities such as food, rent, and bills. A refund many weeks or months after the garnishment takes place cannot erase hardship suffered in the present.

**Elizabeth Barber**

43.     In 2010, Plaintiff Elizabeth Barber attended Nazareth College, where she studied psychology. Ms. Barber took out federally held student loans to attend the program. She currently owes approximately $10,000 on those loans.

44.     In 2019, Ms. Barber defaulted on her federal loans, and she received a Final Notice of Wage Garnishment on December 19, 2019. From January 2020 to the present, the Department has garnished approximately twelve percent of Ms. Barber's wages from her paychecks, for a total of over $900.00.

45.     Ms. Barber is currently employed as a home health aide at Companion Care of Rochester, Inc., a home care services agency for older adults and individuals with disabilities. Ms. Barber has continued to provide home health care throughout the COVID-19 crisis.

46.     Ms. Barber earns $12.89 per hour. In 2019, she earned approximately $20,000 in total. The money that Ms. Barber earns as a home health aide is her sole source of income.

47.     At work, Ms. Barber primarily looks after clients with cerebral palsy. Her work requires her to be in constant close contact with her clients, including to shower, feed, dress, and help them go to the bathroom. Ms. Barber also often needs

to clean her clients' catheters and change their diapers. In addition, she cooks, cleans, helps with laundry, shops for groceries and household supplies, plays games, and takes her clients outside.

48.     Ms. Barber fears bringing the virus into her clients' homes, especially those whose medical conditions place them at heightened risk of severe symptoms if they catch the virus.

49.     Due to the decrease in demand for her services during the COVID-19 pandemic, Ms. Barber's hours have been reduced by approximately ten to fifteen hours per week, increasing her financial strain.

50.     As Ms. Barber continues to assist clients in need, the Department—in violation of the CARES Act—continues to garnish approximately twelve percent of her paychecks. Most recently, the Department illegally garnished $70.20 from her April 24, 2020 paycheck.

51.     Ms. Barber is struggling to make ends meet, so every dollar counts as she tries to meet her immediate needs.

52.     Ms. Barber often has to leave bills unpaid in order to cover her basic needs. She has no money in her checking or savings accounts, is in arrears on various local taxes, and is subject to a lien on her home. She is also past due on both her water and electric bills, which she cannot afford to pay in full each month.

53.     As her past due amounts continue to grow, the decrease in hours due to COVID-19 has magnified Ms. Barber's financial struggles.

54.     The funds that the Department has illegally garnished are essential to Ms. Barber's ability to satisfy her essential financial obligations during the pandemic.

## CLASS ACTION ALLEGATIONS

55.     Named Plaintiff files this class action on behalf of herself and all other individuals who are similarly situated. She seeks to represent a class consisting of:

> All federal student loan borrowers from whom the Department is garnishing wages in violation of the CARES Act.

56.     The proposed class satisfies the requirements of Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure.

57.     The class is so numerous that joinder of all members is impracticable. The Department estimates that approximately 285,000 people had their wages garnished between March 13 and March 26, 2020. *See* Danielle Douglas-Gabriel, *supra* ¶ 37. On information and belief, many of these borrowers continue to have their wages garnished in violation of the CARES Act. The exact number of class members can be readily determined using the Department's records.

58.     The nature of relief sought, as well as questions of fact and law, are common to all members of the class.

59.     The Department's failure to suspend wage garnishments, as required by the CARES Act, is identical for the entire class, all of whom have had their

wages illegally garnished after the CARES Act became law.[2] The Department's challenged actions therefore apply generally to the class, making declaratory relief regarding those decisions appropriate for the class as a whole.

60.     The common questions of law and fact also predominate over any questions affecting individual members. The common questions of law and fact include, but are not limited to, whether the Department's failure to suspend wage garnishment as required by the CARES Act violates the Administrative Procedure Act ("APA").

61.     Named Plaintiff's claims are typical of the claims of other class members, as they arise out of the same course of conduct and legal theories and challenge the Department's conduct with respect to the class as a whole.

62.     Named Plaintiff is capable of and committed to fairly and adequately protecting the interests of the class and has no conflicts with other class members.

63.     Named Plaintiff is represented by counsel experienced in higher education law, administrative law, and class action litigation.

64.     A class action is superior for the fair and efficient adjudication of this matter. The Department has acted in the same unlawful manner with respect to all class members. A legal ruling concerning the unlawfulness of the Department's actions under the APA would vindicate the rights of every class member. Finally, a

---

[2]     Although the CARES Act became law on March 27, 2020, the Department has committed to refunding all wage garnishments since March 13, 2020 (the date President Trump declared a national emergency). *See supra* ¶ 30.

class action would serve the economies of time, effort, and expense while preventing inconsistent results.

## CAUSE OF ACTION

### COUNT ONE
**Violation of the APA, 5 U.S.C. § 706(1) for Garnishing Wages in Violation of the CARES Act**

65.     Plaintiff repeats and incorporates by reference each of the foregoing allegations as if fully set forth herein.

66.     The garnishment of wages after March 27, 2020 constitutes "final agency action for which there is no other adequate remedy in court." 5 U.S.C. § 704.

67.     Under the APA, a "reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed." *Id.* § 706(1).

68.     Section 3513(e) of the CARES Act requires the Secretary to suspend, until September 30, 2020, all involuntary collection—including wage garnishment— of defaulted Direct and FFEL loans currently held by the Department.

69.     By continuing to garnish the wages of Named Plaintiff and the class following the March 27 enactment of the CARES Act, the Department has unlawfully withheld its legal obligation to suspend administrative wage garnishments between March 27, 2020, and September 30, 2020, as required by Section 3513(e) of the CARES Act.

### COUNT TWO
**Violation of the APA, 5 U.S.C. § 706(2)(A) for Garnishing Wages in Violation of the CARES Act**

70.     Plaintiff repeats and incorporates by reference each of the foregoing allegations as if fully set forth herein.

17

71.     The garnishment of wages after March 27, 2020, constitutes "final agency action for which there is no other adequate remedy in court." 5 U.S.C. § 704.

72.     Under the APA, a "reviewing court shall . . . hold unlawful and set aside agency action . . . found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 706(2)(A).

73.     Section 3513(e) of the CARES Act requires the Secretary to suspend, until September 30, 2020, all involuntary collection—including wage garnishment—of defaulted Direct and FFEL loans currently held by the Department.

74.     By continuing to garnish the wages of Named Plaintiff and the class following the March 27 enactment of the CARES Act, the Department is in violation of Section 3513(e) of the CARES Act. Its actions are therefore not in accordance with law.

75.     By failing to stop employers from garnishing the wages of Named Plaintiff and the class following the enactment of the CARES Act, the Department is in violation of Section 3513(e) of the CARES Act. Its actions are therefore not in accordance with law.

**COUNT THREE**
**Violation of the APA, 5 U.S.C. § 706(2)(C) for Garnishing Wages & Failing to Provide Notice in Violation of the CARES Act**

76.     Plaintiff repeats and incorporates by reference each of the foregoing allegations as if fully set forth herein.

77.     The garnishment of wages after March 27, 2020, constitutes "final agency action for which there is no other adequate remedy in court." 5 U.S.C. § 704.

78.     Under the APA, a "reviewing court shall . . . hold unlawful and set aside agency action . . . found to be . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." *Id.* § 706(2)(C).

79.     Section 3513(e) of the CARES Act requires the Secretary to suspend, until September 30, 2020, all involuntary collection—including wage garnishment—of defaulted Direct and FFEL loans currently held by the Department.

80.     By continuing to garnish the wages of Named Plaintiff and the class following the March 27 enactment of the CARES Act, the Department is in violation of Section 3513(e) of the CARES Act. Its actions are therefore in excess of statutory jurisdiction or authority.

81.     By failing to stop employers from garnishing the wages of Named Plaintiff and the class following the enactment of the CARES Act, the Department is in violation of Section 3513(e) of the CARES Act. Its actions are therefore in excess of statutory jurisdiction or authority.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests that this Court:

1.     Certify the class defined in paragraph 55 pursuant to Rule 23 of the Federal Rules of Civil Procedure;

2.     Enter a declaratory judgment, pursuant to 28 U.S.C. § 2201, that the Department unlawfully withheld its legal obligation to suspend wage garnishment as required by the CARES Act and/or that its failure to suspend wage garnishment is not in accordance with law and/or in excess of statutory jurisdiction or authority;

3.      Further declare that the Department's wage garnishments on or after the March 27, 2020, effective date of the CARES Act are not legally enforceable;

4.      Further declare that Defendants, their officers, their employees, and/or their agents must, consistent with the CARES Act, immediately suspend all administrative wage garnishments for Named Plaintiff and the class;

5.      Further declare that Defendants, their officers, their employees, and/or their agents must, consistent with the CARES Act, provide immediate notice of the suspension of wage garnishment to Named Plaintiff and the class when that suspension has actually happened;

6.      Order the Department to certify to the Court when it suspends garnishments and provides notices thereof to class members;

7.      Order ancillary relief, under 28 U.S.C. § 2202, including an immediate refund of all amounts illegally garnished;

8.      Award Plaintiff reasonable fees, costs, expenses, and other disbursements for this action; *and*

9.      Grant any other relief this Court deems just and proper.


*/s/Alexander S. Elson*
Daniel A. Zibel (D.C. Bar No. 491377)
Eric Rothschild (D.C. Bar No. 1048877)
Alexander S. Elson (D.C. Bar No. 1602459)
National Student Legal Defense Network
1015 15th Street NW, Suite 600
Washington, DC 20005
(202) 734-7495
dan@defendstudents.org
eric@defendstudents.org
alex@defendstudents.org

Stuart T. Rossman* (BBO No. 430640)
Persis Yu* (BBO No. 685951)
National Consumer Law Center
7 Winthrop Square, Fourth Floor
Boston, MA 02110
P: (617) 542-8010
srossman@nclc.org
pyu@nclc.org

*Counsel for Plaintiff*

***Application for admission pro hac vice
forthcoming***

Dated:        April 30, 2020