## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ELIZABETH BARBER, et al,
*on behalf of themselves and all others
similarly situated*,

      *Plaintiffs,*

  vs.

ELISABETH DEVOS, *in her official
capacity as United States Secretary of
Education*, and UNITED STATES
DEPARTMENT OF EDUCATION,

      *Defendants.*

Case No. 20-cv-1137

## PLAINTIFFS' AMENDED MOTION FOR CLASS CERTIFICATION
## AND SUPPORTING MEMORANDUM

### Introduction

      This case arises because the United States Department of Education, by and through its Secretary, Elisabeth DeVos (collectively, "the Department"), has not complied with the law at a time of national crisis. When enacting the Coronavirus Aid, Relief, and Economic Security Act, P.L. 116-136 (the "CARES Act"), to provide emergency economic relief during the coronavirus pandemic, Congress and the President clearly and unambiguously acknowledged that the burden of wage garnishment is unsustainable under present circumstances and directed the Secretary of Education to stop garnishing wages of federal student loan borrowers who have defaulted on their federally issued or guaranteed student loans.

      The CARES Act could not be more explicit about this requirement. In fact, the Department has acknowledged its duty under the statute to immediately

suspend wage garnishments. Nonetheless, such garnishments have persisted and many student loan borrowers have continued to incur the very harms that Congress intended to protect them from because of the Department's on-going failure to carry out its statutorily mandated obligations.

The Named Plaintiffs, Elizabeth Barber and Craigory Lee Jenkins, bring this case individually and on behalf of a putative class of similarly affected individuals[1]. They seek to obtain a declaration by this Court, pursuant to 28 U.S.C § 2201, that the Department's failure to suspend wage garnishment actions is not in accordance with law and is in excess of its statutory jurisdiction and authority. Furthermore, they claim that the Department's wage garnishments after the March 27, 2020, effective date of the CARES Act should be deemed legally unenforceable. Finally, Plaintiffs assert that the Department, consistent with the CARES Act, should be ordered to immediately cease and suspend all administrative wage garnishments for the class, and immediately refund all of the funds it has illegally and improperly taken.

The decision on the merits will turn on questions of law and fact that are common to all members of the proposed class. A favorable decision will result in a declaration and injunctive relief that is applicable equally to all putative class members. The Department's failure to suspend collections by wage garnishments as

---

[1] This motion is being filed simultaneous with an Amended Complaint, adding Ms. Jenkins as a named plaintiff. The original Complaint filed on behalf of Ms. Barber was accompanied by a motion for class certification. Dkt. 2. This motion amends, and is substituted for, that previously filed motion for class certification.

required by the CARES Act is identical as to the entire class, all of whom had their wages illegally garnished after the CARES Act became law on March 27, 2020.

There can be no question that the putative class representatives will present claims that are typical of all class members and that they are more than adequate to serve in that important capacity. Similarly, class counsel is experienced in pursuing such class claims in this Federal District Court and is committed to representing the class to the best of their abilities. Accordingly, Plaintiffs respectfully submit that the Court should certify under Fed. R. Civ. P. 23(b)(2) a class of "all borrowers of Department issued and/or held student loans whose wages are being garnished by the Department or have been garnished by the Department since March 27, 2020, and whose wages garnished during that time period have not been fully refunded" and appoint Plaintiffs' counsel as Class Counsel pursuant to Fed. R. Civ. P. 23(g).

## Statement of Facts

Plaintiff Elizabeth Barber supports herself through her employment as a home health aide. (Amended Complaint ¶ 49) Ms. Barber's salary ($20,000 in 2019) is her sole source of financial support. (*Id.* ¶ 50) Due to the coronavirus pandemic, her hours have been reduced, placing an even greater strain on her already very difficult financial situation. (*Id.* ¶ 53) Among other things, she is past due on utility bills and various local taxes. (*Id.* ¶ 61)

Ms. Barber took out federally held student loans to attend Nazareth College, where she studied psychology. (*Id.* ¶ 48) She still owes approximately $10,000 on her loans. (*Id.*) Beginning January 2020, the Department has garnished

approximately twelve percent of each of her paychecks. (*Id.* ¶¶ 55-57). That garnishment continued through April 24, after the passage of the CARES Act on March 27. (*Id.* ¶ 57) Her last paycheck, on May 1, was not garnished. (*Id.* ¶ 58) However, the Department has not refunded any of the wages it garnished since March 13 (the date the Department has declared to be the effective date for suspending wage garnishment) or March 27, when the CARES Act was passed. (*Id.* ¶ 59)

Plaintiff Craigory Lee A. Jenkins is currently employed as a cabinet sales specialist at Lowe's Home Centers, where she earns $17.58 per hour. (Amended Complaint ¶ 65) Due to the decrease in customers during the COVID-19 pandemic, Ms. Jenkins's income has been reduced because she can no longer earn bonuses for her sales performance. (*Id.* ¶¶ 75-77) She is struggling to pay for essential expenses; she is falling past due on utilities, bills and rent, and does not have enough savings to pay this month's rent. (*Id.* ¶¶ 79-81)

In February 2020, Ms. Jenkins' employer received a wage garnishment order stating that she owed over $65,000 on federal student loans that she had used to pay tuition to attend Ohio State University from 2012-14. (*Id.* ¶¶ 64-66) From March 2020 to the present, the Department has garnished approximately 15 percent of Ms. Jenkins's wages from her paychecks, for a total of over $1,100. (*Id.* ¶¶ 68-71)

That garnishment continued through every pay period after the passage of the CARES Act on March 27. (*Id.* ¶¶ 69-71) On May 6, 2020, Lowe's informed Ms.

Jenkins that it could not suspend garnishment of her wages because it had not received a letter of instruction from the Department instructing it to do so. (*Id.* ¶ 74) Her paystub for May 8, 2020 reflects that the Department has garnished $204.16 from her pay. (*Id.* ¶ 71) She has not received a refund of any wages garnished since March 13, 2020. (*Id.* ¶ 73)

Ms. Barber's and Ms. Jenkins' circumstances are exactly what Congress had in mind when it passed the CARES Act on March 27, 2020, in order to "provid[e] emergency assistance and health care response for individuals, families and businesses affected by the 2020 coronavirus pandemic." (*Id.* ¶ 28) In an effort to protect vulnerable borrowers from even more financial burdens during the coronavirus crisis, Section 3513(e) of the CARES Act requires the Secretary of Education to suspend, until September 30, 2020, all involuntary collections— including wage garnishment—of defaulted Direct Loans and Federal Family Education Loans owned by the Department. (*Id.* ¶ 30) The Department's failure to do so, and continued retention of illegally garnished wages, is a blatant violation of the CARES Act.

Nonetheless, the Department continues to garnish approximately fifteen percent of each of Ms. Jenkins' paychecks in a blatant violation of the CARES Act, and has not refunded the illegally garnished wages of either plaintiff. Apparently, they are not alone in suffering from the Department's violations of its obligations under the statute as countless student loan borrowers also have had, and some continue to have, their wages improperly garnished. (*Id.* ¶¶ 40, 42)

**Proposed Class Definitions**

The proposed class consists of all borrowers of Department issued and/or held student loans whose wages are being garnished by the Department or have been garnished by the Department since March 27, 2020, and whose wages garnished during that time period have not been fully refunded.

**Plaintiffs' Legal Claims**

Named Plaintiffs assert three claims against the Department for continuing to garnish the wages of themselves and the class and failing to stop employers from garnishing said wages following the enactment of the CARES Act: (1) it is unlawfully withholding its legal obligation as required by Section 3513(e) of the CARES Act in violation of § 706(1) of the Administrative Procedures Act; (2) it is not acting in accordance with the law and therefore is in violation of § 706(2)(A) of the Administrative Procedures Act; and (3) it is acting in excess of its statutory jurisdiction or authority in violation of § 706(2)(C) of the Administrative Procedures Act. Accordingly, they seek declaratory and injunctive relief on behalf of the proposed Class. (Amended Complaint Prayers 2-5)

## I.    The Requirements For Class Certification Under Rule 23(b)(2) Are Met Here

### A.    Legal Standard

To certify a class under Fed. R. Civ. P. 23(b)(2), a plaintiff must show that the proposed Class satisfies all of the prerequisites set forth in Fed. R. Civ. P. 23(a) and (b)(2). Rule 23(a) establishes four requirements, "numerosity, commonality,

typicality, and adequacy of representation." *Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 460 (2013). Respectively, they require a showing that:

> (1) the class is so numerous that joinder of all members is impractical;

> (2) there are questions of law or fact common to the class;

> (3) the clams or defenses of the representative parties are typical of the claims or defenses of the class; and

> (4) the representative parties will fairly and adequately protect the interests of the class.

Plaintiffs seeking to certify a Fed. R. Civ. P. 23(b)(2) class must also show that the "party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Plaintiffs must prove these elements by a preponderance of the evidence. *Healthy Futures of Tex. v. HHS*, 326 F.R.D. 1, 5 (D.D.C. 2018).

**B.     All Requisites Under Rule 23(a) Are Clearly Met**

Plaintiffs' claims are perfectly suited for classwide resolution under Fed. R. Civ. P. 23(b)(2). The Department's alleged violations of the CARES Act present the same factual proofs and legal arguments for each member of the proposed class. Either the Department has ceased all garnishment of wages and ordered all employers to stop further garnishments after the March 27, 2020 enactment of the statute, or it has not. Similarly, the declaratory and injunctive relief sought on behalf of the putative class, including the refund of garnished wages after the suspension of collections took effect, is identical and generally applicable to the

class as a whole. Therefore, all of the requirements of Fed. R. Civ. P. 23(a) and (b)(2) are readily satisfied, and the Court should certify the proposed class. Plaintiffs' counsel, who have significant experience in administrative law and class action practice, meet the standards of Fed. R. Civ. P. 23(g) and should be appointed as class counsel.

### 1. Numerosity

Rule 23(a)(1) requires that "the class [be] so numerous the joinder of all members is impracticable." This test does not impose a specific numeric threshold but "[a]bsent unique circumstances, 'numerosity is satisfied when a proposed class has at least forty members.'" *Coleman v. District of Columbia*, 306 F.R.D. 68, 76 (D.D.C. 2015) (quoting *Richardson v. L'Oreal USA, Inc.*, 991 F. Supp. 2d 181, 196 (D.D.C. 2013)). Plaintiffs need not provide "an exact number of putative class members," and may rely on "reasonable inferences from the facts presented." *Id.* (quotation omitted); *accord, e.g., Garnett v. Zeilinger*, 301 F. Supp. 3d 199, 206 (D.D.C. 2018) ("To establish numerosity, a party need not provide a precise number of class members as long as there is a reasonable basis to estimate it.").

Plaintiffs propose to certify a class consisting of all federal student loan borrowers from whom the Department is garnishing wages in violation of the CARES Act. On information and belief, approximately 285,000 people were having their wages garnished between March 13 and March 26, 2020. *See*, Danielle Douglas-Gabriel, "The Education Department is dragging its feet on stopping wage garnishment for student loan borrowers," *Washington Post* (Apr. 21, 2020), *available at:* https://www.washingtonpost.com/education/2020/04/21/wage-garnish-

student-loans-education-department/. Many of these borrowers continue to have their wages garnished in violation of the CARES Act. *Id.* Regardless of the actual number, which can be determined using the Department's own records, the class will far exceed the threshold for joinder and satisfy the requirement for numerosity set forth in Fed. R. Civ. P. 23(a)(1).

### 2. Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To meet this commonality requirement, the representative plaintiffs are required to demonstrate that the proposed class members "have suffered  the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). In other words, commonality requires  that the claims of the class "depend upon a common contention . . . of such a nature that it is  capable of classwide resolution— which means that determination of its truth or falsity will  resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Even so, Rule 23(a)(2) does not require that every question of law or fact raised in the litigation must be common. *See Wal-Mart*, 564 U.S. at 359.

The commonality requirement is met here because the Department treated all of the proposed class members identically. The Department's failure to suspend wage garnishments as required by the CARES Act is the same for *every* member of the defined class, all of whom had their wages illegally garnished after the CARES Act became law. Common questions of fact include, but are not limited to:

(1) Whether the Department failed to suspend class members' wage garnishments as required by the CARES Act; and

(2) Whether the Department has retained wages garnished in violation of the CARES Act.

By the same token, common questions of law apply to the claims of all proposed class members:

(1)  By continuing to garnish the wages of Named Plaintiffs and the class following the March 27 enactment of the CARES Act, has the Department violated Section 3513(e) of the CARES Act;

(2)  By failing to stop employers from garnishing the wages of Named Plaintiffs and the class following the enactment of the CARES Act, has the Department violated Section 3513(e) of the CARES Act;

(3) By failing to cease the garnishment of wages of Named Plaintiffs and the class has the Department unlawfully withheld its obligations as required by Section 3513(e) of the CARES Act, in violation of the provisions of the Administrative Procedures Act, 5 U.S.C. § 706(1);

(4) If the Department's actions violate the CARES Act, and therefore are not in accordance with the law, can they be found unlawful and set aside pursuant to the provisions of the Administrative Procedures Act, 5 U.S.C. § 706(2)(A); and

(5) If the Department's actions violate the CARES Act, and therefore are in excess of its statutory jurisdiction or authority, can they be found unlawful and set

aside pursuant to the provisions of the Administrative Procedures Act, 5 U.S.C. § 706(2)C).

### 3.  Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class . . . " Fed. R. Civ. P. 23(a)(3). This inquiry asks "whether the proposed party representative's injury is similar to that of class members?" *Healthy Futures*, 326 F.R.D. at 7. This requirement is "liberally construed." *Bynum v District of Columbia*, 214 F.R.D. 27, 34-35 (D.D.C. 2002), and "is ordinarily met 'if the claims or defenses of the representatives and the members of the class stem from a single event or a unitary course of conduct, or if they are based on the same legal or remedial theory.'" *J.D. v. Azar,* 925 F.3d 1291, 1322 (D.C. Cir. 2019) (quoting 7A Wright et al., Federal Practice and Procedure § 1764). "The facts and claims of each named representative need not be identical to those of the absent class members; rather, 'typicality refers to the nature of the claims of the representative, not the individual characteristics of the plaintiff.'" *Garnett*, 301 F. Supp. 3d at 209 (quoting *Hoyte v. District of Columbia*, 325 F.R.D. 485, 490 (D.D.C. 2017)). The typicality and commonality requirements "tend to merge," normally rising or falling together. *J.D.*, 925 F.3d at 1322 (quotation omitted).

As demonstrated in the section on commonality, *supra*, the claims of the proposed class representatives and proposed class members against the Department in this case are identical in all material respects. The proposed class representatives and those they would represent claim the same injury: garnishment of their wages.

Where, as in this case, the Plaintiffs' claims "arise[ ] from the same event or practice or course of conduct that gives rise to the claims of other class members, and . . . are based on the same legal theory" typicality is established. 1 Herbert B. Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS, § 3.13 (3d ed.1992)).

### 4. Adequacy of Representation

Finally, Rule 23(a)(4)'s requirement of adequacy of representation involves the satisfaction of two factors: (1) that plaintiffs' counsel is qualified, experienced, and generally able to conduct the litigation; and (2) that the plaintiffs' interests are not antagonistic to those of the rest of the class. *Amchem*, 521 U.S. at 625; *see also In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516, 532 (3d Cir. 2004).

As to the adequacy of class counsel, several members of Plaintiffs' counsel team have substantial experience in successfully prosecuting complex class actions. *See,* Fed. R. Civ. P. 23(g)(1). *See Declarations of Eric Rothschild and Stuart T. Rossman, attached as Exhs. A and B, respectively.* Plaintiffs' counsel's commitment, expertise, and diligence in class litigation demonstrate their ability to more than adequately protect the interests of the class. *See Section II infra.*

As to the named plaintiffs, courts usually look simply to whether the representatives' interests are in any way antagonistic to or in conflict with those of the class members. *Amchem*, 521 U.S. at 626. Conflicts of interest "prevent named plaintiffs from satisfying the adequacy requirement only if they are fundamental to the suit and . . . go to the heart of the litigation." *Garza v. Hargan*, 304 F. Supp. 3d 145, 158 (D.D.C. 2018) (quoting *Nat'l Veterans Legal Servs. Program v. United States*, 235 F. Supp.3d 32, 41 (D.D.C. 2017)), *aff'd in rel. part sub nom. J.D. v. Azar,*

925 F.3d 1291 (D.C. Cir. 2019). "Speculative" or "hypothetical" conflicts do not

defeat the adequacy requirement. *Id.*

Here, there is no conflict or antagonism whatsoever between the proposed

class representatives and the proposed class members. To the contrary, the relief

that Ms. Barber and Ms. Jenkins seek could only benefit all class members by

immediately stopping the garnishment of their wages during this pandemic when

access to such wages is critical. They therefore share interests identical to those of

all members of the proposed injunctive relief class and will adequately represent

those interests.

### C.    The Proposed Class Meets the Requirements of Rule 23(b)(2)

In addition to the four prerequisites of Fed. R. Civ. P. 23(a), the proposed

class satisfies the requirements of Fed. R. Civ. P. 23(b)(2)[1] that:

> the [defendant] has acted or refused to act on grounds generally
> applicable to the class, thereby making appropriate final injunctive
> relief or corresponding declaratory relief with respect to the class as a
> whole.

A Fed. R. Civ. P. 23(b)(2) class action is designed for cases where broad, class-

wide injunctive or declaratory relief is necessary to redress a group-wide injury. As

the Supreme Court stated in *Wal-Mart*, the "key to the (b)(2) class is the indivisible

nature of the injunctive or declaratory remedy warranted—the notion that the

conduct is such that it can be enjoined or declared unlawful only as to all of the

---

[1] Rule 23(b)(2) does not require the court to determine whether the common issues
predominate or whether a class action is a superior method of resolving the dispute.
"Predominance and superiority are self-evident." *Wal-Mart*, 564 U.S. at 362-63.

class members or as to none of them." *Wal-Mart*, 564 U.S. at 360. Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. *Id.* It does not authorize class certification when each class member would be entitled to a different injunction or declaratory judgment. *Id.* Thus, the requirements of Rule 23(b)(2) are unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole.

In this case, each putative class member has an identical claim and seeks identical injunctive and declaratory relief. All putative class members have had their wages garnished because of the Department's failure to comply with the explicit requirements of the CARES Act. They seek simply to put an end to the Department's unlawful practices.

The Department has consistently "acted or refused to act on grounds generally applicable to the class" as required by Rule 23(b)(2). Furthermore, as in *Wal-Mart*, the entire class seeks the same single declaratory and injunctive relief that would apply to everyone, which places it firmly in the Rule 23(b)(2) category. Class treatment under Rule 23(b)(2) is therefore appropriate to ensure that the Department completely and, most important, immediately complies with the express provisions of the CARES Act.

II.     **The National Student Legal Defense Network and the National Consumer Law Center should be appointed as Class Counsel**

If the Court certifies the proposed class, it must appoint class counsel, considering:

(i) the work counsel has done in identifying or investigating potential claims in the action;

(ii) counsel's experience in handling class actions, other complex litigation and the types of claims asserted in the action;

(iii) counsel's knowledge of the applicable law; and

(iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

These factors support appointing the undersigned attorneys from the National Student Legal Defense Counsel ("Student Defense") and the National Consumer Law Center ("NCLC") as class counsel.

First, proposed class counsel's commitment to this case and to zealously representing the interests of the class are clear from the work that has gone into the Plaintiffs' Amended Complaint and this Motion for Class Certification. As shown by the work performed to date, proposed class counsel will commit whatever resources are necessary to represent the class fairly and adequately. *See*, Rothschild Decl. ¶ 8, Rossman Decl. ¶ 17.

Second, the proposed class counsel are well-versed in handling class actions and complex administrative law actions, and particularly knowledgeable about the law applicable to student loan issues. Counsel from Student Defense and NCLC

have represented and advised numerous student loan borrowers about their rights to potential debt relief, and litigated several cases dealing with the laws and regulations regarding federal student loans. Rothschild Decl. ¶¶ 4-5, Rossman Decl. ¶¶ 16 and 18. Counsel from Student Defense and NCLC also have experience representing Rule 23 classes of student loan borrowers. Rothschild Decl. ¶ 5, Rossman Decl. ¶¶ 11-12, 15.

Accordingly, the Fed. R. Civ. P. 23(g)(1)(A) factors strongly support appointing Student Defense and NCLC as class counsel in this case.

## Conclusion

A class action is the best method for class members to obtain a remedy for the widespread conduct that this case challenges. This matter can be litigated fairly and efficiently only by way of the class action device, and to forego class certification creates the distinct possibility that injured student loan borrowers may not obtain the relief to which they are entitled because of the Department's violations of the CARES Act. For the foregoing reasons, Plaintiffs respectfully request that this Court certify a class under Rule 23(b)(2) and appoint Student Defense and NCLC as class counsel.

Dated:        May 7, 2020                    Respectfully submitted,


By: /s/ *Alexander S. Elson*
Daniel A. Zibel (D.C. Bar No. 491377)
Eric Rothschild (D.C. Bar No. 1048877)
Alexander S. Elson (D.C. Bar No. 1602459)
National Student Legal Defense Network
1015 15th Street NW, Suite 600
Washington, DC 20005
(202) 734-7495
dan@defendstudents.org
eric@defendstudents.org
alex@defendstudents.org

Stuart T. Rossman* (BBO No. 430640)
Persis Yu* (BBO No. 685951)
National Consumer Law Center
7 Winthrop Square, Fourth Floor
Boston, MA 02110
P: (617) 542-8010
srossman@nclc.org
pyu@nclc.org

*Attorneys for Plaintiffs and Proposed Class*

**Admitted Pro Hac Vice*