**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

ELIZABETH BARBER,
c/o National Student Legal Defense
Network
1015 15th Street N.W., Suite 600,
Washington D.C. 20005,

CRAIGORY LEE A. JENKINS,
c/o National Student Legal Defense
Network
1015 15th Street N.W., Suite 600,
Washington D.C. 20005,

on behalf of themselves and all others
similarly situated,

*Plaintiffs*,

vs.

ELISABETH DEVOS, in her official
capacity as United States Secretary
of Education,
400 Maryland Avenue S.W.
Washington, D.C. 20202, &

UNITED STATES DEPARTMENT OF
EDUCATION,
400 Maryland Avenue S.W.
Washington, D.C. 20202,

*Defendants*

Case No. 20-cv-1137

**Deleted:** herself

**Deleted:** *Plaintiff*

**AMENDED CLASS ACTION COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF**

1.    With each passing day, countless federal student loan borrowers are

suffering needless harm because, in the midst of the COVID-19 pandemic, they

remain subject to unlawful debt collection by Defendants United States Department of Education and Secretary of Education Elisabeth DeVos (collectively, "the Department").

2.      Decades ago, Congress vested the Department with the extraordinary authority to garnish the wages of individuals who default on their federally issued or guaranteed student loans without a court order.

3.      On March 25, 2020, during a period of rapid response to the spread of COVID-19, the Department announced it would use its administrative authority to stop involuntary collection activity, including wage garnishments, for certain borrowers of federal student loans. Further, it announced that it would issue refunds of amounts collected since March 13, 2020, the date President Donald Trump declared a national emergency.

4.      On March 27, 2020, Congress passed and President Trump signed into law the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"). *See* Pub. L. No. 116–136, ___ Stat. ___ (2020). In doing so, Congress and the President clearly and unambiguously acknowledged that administrative wage garnishment is unsustainable for student loan borrowers during the present crisis. As such, the law directs the Secretary to stop garnishing wages of certain federal student loan borrowers through September 30, 2020.

5.      Also on March 27, 2020, Secretary DeVos announced that the Department had "stopped federal wage garnishments altogether for students and families in default."

6.      On or around April 9, 2020, the Department sent a notice to student loan borrowers informing them that all collection activity, including wage garnishments, was stopped for the period of March 13, 2020, through September 30, 2020. The notice also informed borrowers that "[t]here's no action you need to take at this time."

7.      Despite the Department's announcement that it had stopped wage garnishments, and despite the Department's notice to student loan borrowers that it had done the same, the Department, more than a month into the six-month emergency suspension period, continues to seize wages from distressed federal student loan borrowers.

8.      More than a month into the six-month suspension period, the Department has not refunded the wages taken from Named Plaintiffs and the class in violation of the CARES Act.

9.      Named Plaintiff Craigory Lee A. Jenkins is one such borrower. She is a sales specialist at Lowe's Home Centers in Pinellas Park, Florida. She has continued to work during the COVID-19 pandemic, as her employer has remained open during the crisis. She has faced additional financial hardships in recent weeks as a direct result of the pandemic. The CARES Act was supposed to relieve her hardships by stopping the garnishment of her wages, but they have continued unabated, including on her paycheck dated May 8, 2020.

10.      Named Plaintiff Elizabeth Barber is another such borrower. She is a home health aide who has continued to serve patients in need throughout the

3

pandemic. However, her hours have been reduced by approximately ten to fifteen hours per week as a result of the pandemic, increasing her financial strain. Her wages were garnished throughout the months of March and April, despite the prohibitions in the CARES Act. Her last paycheck, on May 1, was not garnished. The Department has not, however, returned any of the money that was seized from her paycheck, depriving her of the benefit of the emergency relief the CARES Act is supposed to provide.

11.   The CARES Act's reprieve from wage garnishment was supposed to help Named Plaintiffs and the class—immediately. Named Plaintiffs bring this lawsuit on behalf of themselves and other similarly situated borrowers to force the Department to comply immediately with the wage garnishment suspension directive of the CARES Act, as Congress required, and to promptly refund the wages illegally seized.

**JURISDICTION AND VENUE**

12.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under federal law. The Court also has the authority to order a remedy pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.

13.   Because this is an action against an officer and agency of the United States, venue is proper in this district pursuant to 28 U.S.C. § 1391(e). Venue is also proper in this district because Secretary DeVos performs her official duties here. Finally, many of the events giving rise to this action took place here.

4

**Deleted:** , placing her under even more

**Deleted:** her get by

**Deleted:** She brings

**Deleted:** herself

**PARTIES**

14.     Named Plaintiff Elizabeth Barber is a natural person who resides, and at all relevant times has resided, in Penfield, NY. She is a home health aide and has continued to provide patient care throughout the COVID-19 crisis. She is a federal student loan borrower with federally held loans subject to the CARES Act. Since the CARES Act became law on March 27, 2020, the Department has garnished her wages multiple times and has not provided her with a refund of the payments illegally garnished.

15.     Named Plaintiff Craigory Lee A. Jenkins is a natural person who resides, and at all relevant times has resided, in Seminole, FL. She works in sales at Lowe's Home Centers and has continued to work throughout the COVID-19 crisis. She is a federal student loan borrower with federally-held loans subject to the CARES Act. Since the CARES Act became law on March 27, 2020, the Department has garnished her wages multiple times, including from the paycheck she receives this week, and has not provided her with a refund of the payments illegally garnished.

16.     Defendant Elisabeth DeVos is sued in her official capacity as the Secretary of Education for the United States Department of Education.

17.     Defendant United States Department of Education is a department of the executive branch of the United States government headquartered in Washington, D.C. and an agency of the United States within the meaning of 5 U.S.C. § 552(f)(1).

5

**Deleted:** , and, absent further direction from the Department, she understands that they will continue to do so. …

**FACTUAL ALLEGATIONS**

**The Department of Education's authority to garnish wages**

18.     Title IV of the Higher Education Act of 1965 (as amended) ("HEA"), 20 U.S.C. § 1070 *et seq.*, governs the administration of the federal student loan program.

19.     As part of its management of the federal student loan program, the Department possesses extensive extrajudicial collection powers, including the authority to garnish federal student loan borrowers' wages without a court order following default on their student loans. The HEA and the Debt Collection Improvement Act ("DCIA") authorize this practice. *See* HEA § 488A, 20 U.S.C. § 1095a; 31 U.S.C. § 3720D.

20.     The Department reported that, in fiscal year 2018 alone, it garnished over $840 million from borrowers with federal Direct Loans. *See* Office of Fed. Student Aid, "Default Rates," https://studentaid.gov/data-center/student/default (select "FY18 Q1-Q4" under "Default Recoveries by Private Collection Agency" and hit "GO") (last visited Apr. 27, 2020).

21.     When a borrower's delinquency qualifies for garnishment, the Department will issue a garnishment order directly to the borrower's employer. 34 C.F.R. § 34.18. The Secretary has the right to take legal action against an employer in order to enforce that order. 20 U.S.C. § 1095a(a)(6); 34 C.F.R. § 34.29.

22.     The Department's regulations provide that the amount that can be garnished is the lesser of fifteen percent of a borrower's disposable income or the amount exceeding thirty times the prevailing minimum wage. 34 C.F.R. § 34.19(b).

6

23.     Once issued, a garnishment order remains in effect until the Secretary

rescinds the order or the debt is paid in full, including interest, penalties, and

collection costs. *Id.* § 34.26.

24.     At any time, the Department "may compromise or suspend collection

by garnishment of a debt in accordance with applicable law." *Id.* § 34.2(c).

25.     Where the Department's wage garnishment is "barred by law at the

time of the collection action," the Department must "promptly refund any amount

collected by means of this garnishment." *Id.* § 34.28(a). Unless required by federal

law, the Department will not pay interest on a refund. *Id.* § 34.28(b).

**The CARES Act requires immediate suspension of wage garnishment and
notice of the suspension to borrowers.**

26.     On March 13, 2020, President Trump declared a national emergency

due to the COVID-19 pandemic.

27.     On March 25, 2020, the Department announced that, due to the

national emergency, it would "halt collection actions and wage garnishments to

provide additional assistance to borrowers. This flexibility will last for a period of at

least 60 days from March 13, 2020." *See* Press Release, U.S. Dep't of Educ.,

"Secretary DeVos Directs FSA to Stop Wage Garnishment, Collections Actions for

Student Loan Borrowers, Will Refund More Than $1.8 Billion to Students,

Families" (Mar. 25, 2020), *available at:* https://www.ed.gov/news/press-

releases/secretary-devos-directs-fsa-stop-wage-garnishment-collections-actions-

student-loan-borrowers-will-refund-more-18-billion-students-families.

7

28.     On March 27, 2020, after passing by a vote of 96–0 in the United

States Senate, and by a voice vote in the United States House of Representatives,

President Trump signed the CARES Act into law. *See* Pub. L. No. 116–136, ___ Stat.

___ (2020). The purpose of the CARES Act is to "[p]rovid[e] emergency assistance

and health care response for individuals, families[,] and businesses affected by the

2020 coronavirus pandemic." *Id.*

29.     Prior to and after its passage, legislators from both parties came

together to emphasize that the relief provided under the Act must be provided

immediately. For example, Senator McConnell explained that the CARES Act "puts

urgently-needed cash in the hands of American workers and families. . . . That is

what we have to do: Inject a significant amount of money as quickly as possible into

households, small businesses, key sectors, and our nation's hospitals and health

centers. This bill would do just that—and do it fast." Press Release, Sen. Mitch

McConnell, "This is Not a Political Opportunity. It is a National Emergency" (Mar.

22, 2020), *available at:*

https://www.mcconnell.senate.gov/public/index.cfm/pressreleases?ContentRecord_id
=16D7E2DB-8860-4B80-A9F3-6E6858BF625D. *See also* 166 Cong. Rec. S1977 (Mar.

24, 2020) (statement of Sen. John Thune) ("[The CARES Act is filled with resources

to help struggling families, provide relief to workers, and enable businesses to

retain their employees during this crisis. Americans need this bill today, not

tomorrow, [and] not next week[.]"); Press Release, Sen. Chuck Grassley (Mar. 25,

2020), *available at:* https://www.grassley.senate.gov/news/news-releases/grassley-

releases-phase-3-coronavirus-response-legislation ("The economic and public health crisis we are experiencing as a country is an emergency and Congress must respond in kind. Congress must pass this legislation immediately.").

30.    In an effort to protect financially vulnerable borrowers from mounting financial burdens during the COVID-19 crisis, section 3513(e) of the CARES Act requires the Secretary to suspend, until September 30, 2020, all involuntary collections of defaulted Direct Loans and Federal Family Education Loans ("FFEL")[1] owned by the Department. The Act specifically and explicitly includes suspension of wage garnishment:

> (a) IN GENERAL. —The Secretary shall suspend all
> payments due for loans made under part D and part B
> (that are held by the Department of Education) of title IV
> of the Higher Education Act of 1965 (20 U.S.C. 1087a et
> seq.; 1071 et seq.) through September 30, 2020.
> . . .

---

[1]    Direct and FFEL loans are two types of federal student loans. As part of the HEA, Congress established the FFEL loan program in which commercial lenders loaned money to students and their families under favorable terms, which were then guaranteed by guaranty agencies and reinsured by the United States government. *See generally* 20 U.S.C. § 1078(a)–(c). Effective in 2010, Congress ceased the origination of new FFEL loans and transitioned entirely to a Direct Loan program wherein the United States serves as the lender and contracts with non-governmental entities to service loans the Department issues. 20 U.S.C. § 1071(d); *see also* Health Care & Educ. Reconciliation Act of 2010, Pub. L. No. 111–152, § 2201 *et seq.*, 124 Stat. 1029, 1074 (2010). Although borrowers are still repaying FFEL loans, no new FFEL loans have been issued since June 30, 2010. In addition, in 2008, Congress—through the Ensuring Continued Access to Student Loan Act ("ECASLA"), Pub. L. No. 110–227—authorized the Department to purchase FFEL loans from commercial lenders for a limited period of time. That period was subsequently extended. Many of those loans are still owned by the Department today. The Department's statutory wage garnishment authority applies to loans "held" by the Secretary, regardless of whether they are Department-owned FFEL loans or Direct Loans. HEA § 488A, 20 U.S.C. § 1095a(a).

(e) SUSPENDING INVOLUNTARY COLLECTION.—
During the period in which the Secretary suspends
payments on a loan under subsection (a), the Secretary
shall suspend all involuntary collection related to the
loan, including—(1) a wage garnishment authorized
under section 488A of the Higher Education Act of 1965
(20 U.S.C. 1095a) or section 3720D of title 31, United
States Code.

31.     With this provision, Congress immediately suspended wage

garnishments for a six-month period (more than the sixty days previously

announced by the Department) so that struggling student loan borrowers would

have more income to put food on the table and pay their rent and medical bills

during the crisis.

32.     The CARES Act also requires the Department to provide notice to

borrowers of the actions taken suspending wage garnishment on or before April 10,

2020. Section 3513(g)(1)(B) provides that the Secretary shall "not later than 15 days

after the date of enactment of this Act, notify borrowers—. . . . (B) of the actions

taken in accordance with subsection (e) for whom collections have been suspended."

33.     Following passage of the CARES Act, Secretary DeVos stated the

following at the White House coronavirus task force press briefing:

Mr. President, you have promised to defeat this invisible enemy and to
keep our economy strong. You took immediate action and provided
student loan relief to tens of millions of borrowers. We set all federally
held student loans to zero percent interest rates and deferred
payments for 60 days. Now with the CARES Act, that you signed into
law, Mr. President, those actions will extend to 6 months.

Those who are, or become, delinquent on their payments as a result of
the National Emergency will receive an automatic suspension of
payments, without having to request it. **Additionally, we've stopped
federal wage garnishments altogether for students and families**

**in default.** And I have asked private collection agencies that contract with the Department to stop all collections correspondence including phone calls, letters, and emails.

We hope these actions will help alleviate the financial burden and anxiety students and their families are feeling during these tough times.

*See* Press Release, U.S. Dep't of Educ., "Remarks by Secretary DeVos at the White House Coronavirus Task Force Press Briefing" (Mar. 27, 2020) (emphasis added), *available at*: https://www.ed.gov/news/speeches/remarks-secretary-devos-white-house-coronavirus-task-force-press-briefing.

34. On or around April 1, 2020, the Department placed the following guidance to borrowers on its website:

**UPDATED: On March 25, 2020, ED announced that my wages would not be garnished, but money is still being taken from my paycheck. What should I do?**

Your human resources department will receive a letter from ED instructing them to stop your wage garnishment. If ED receives funds from a garnishment between March 13, 2020, and Sept. 30, 2020, we will refund your garnished wages.

*See* U.S. Dep't of Educ., "Coronavirus and Forbearance Info for Students, Borrowers, and Parents," https://studentaid.gov/announcements-events/coronavirus (last visited Apr. 27, 2020).

35. Because the Department's guidance states that borrowers' wages may continue to be taken and that they should expect to receive refunds at some uncertain date in the future, it contradicts the CARES Act's directive to immediately suspend involuntary collections.

11

36.     On or around April 9, 2020, the Department sent a notice to borrowers with the following heading in bold: "**We have temporarily . . . stopped collection activity on your defaulted federally owned student loans.**" The notice explained that "we are contacting you to explain how [the CARES Act] affects your defaulted federally owned student aid debt." In bold again, it then states:

> **We've taken the following actions on your defaulted federally owned loans and/or grant overpayment debts:** . . . .
>
> **Stopped Collections**—We stopped all collection activity on the federal student aid debt for the period March 13, 2020, through Sept. 30 2020.
>
> During this period you will not . . . have your wages garnished (taken from your paycheck).

37.     In a section titled "**WHAT YOU NEED TO DO,**" the notice states: "Keep this notification for your records. We'll communicate with you in August to help prepare you for Sept. 30 2020, when the . . . stopped collections period ends. There's no action you need to take at this time."

**The Department's failure to implement the CARES Act**

38.     Despite these statements—including the notice to borrowers that their wage garnishment was suspended and there was no further action they needed to take—the Department continues to illegally garnish wages of borrowers in violation of the CARES Act.

39.     On information and belief, the Department still has not ensured that all affected employers have received instructions to stop garnishing the pay of their employees with defaulted federal student loans.

---

**Deleted:** , including the wages of Named Plaintiff Elizabeth Barber.¶

**Moved down [2]:** Ms.

**Deleted:** Barber's most recent paycheck, dated April 24, 2020, was garnished in violation of the CARES Act, as were several others, and the garnishment order remains in effect.

**Formatted:** Font color: Text 1, Pattern: Clear (White)

40.     According to the *Washington Post,* as of April 21, 2020, the
Department had "yet to send letters requesting that employers stop garnishing the
pay of student loan borrowers in default." *See* Danielle Douglas-Gabriel, "The
Education Department is dragging its feet on stopping wage garnishment for
student loan borrowers," *Washington Post* (Apr. 21, 2020), *available at:*
https://www.washingtonpost.com/education/2020/04/21/wage-garnish-student-loans-education-department/.

41.     In fact, the Department reportedly attempted to send emails to
employers regarding suspension of wage garnishment but is aware that most of
those emails were never opened. *Id.*

42.     On  May 1, 2020, the Department conceded in a separate litigation
that at least twelve borrowers who attended Corinthian Colleges were still
experiencing wage garnishment, despite a federal court order issued in May of 2018
requiring an end to that practice for a specific cohort of student loan borrowers. *See*
*Manriquez et al. v. DeVos*, No. 17-cv-07210-SK, Dkt. 215 at 8-9 (N.D. Cal, U.S. Dep't
of Education, Office of Federal Student Aid, Seventh Monthly Compliance Report
filed May 1, 2020).

43.     The CARES Act did not provide the Department with a grace period in
which to provide this temporary six-month relief. To the contrary—as indicated by
the requirement in Section 3513(g)(1)(B) that the Secretary provide notice to
borrowers *by April 10, 2020* that wage garnishments were suspended—timely
action is essential to delivering the relief Congress mandated.

44.    Irrespective of steps that the Department may have taken to cease garnishing wages of some student loan borrowers, it nevertheless has not stopped the practice altogether and is therefore out of compliance with the CARES Act.

45.    The Department has also not provided Named Plaintiffs or the class with refunds of the amount garnished in violation of the CARES Act.

**Harm to Named Plaintiffs and the Putative Class**

46.    The Department's illegal wage garnishments are causing material and immediate harm to Named Plaintiffs and the proposed class, as well as thwarting the purpose of the CARES Act to provide fast, direct relief to student loan borrowers during the current national emergency.

47.    If the Department provides full refunds to borrowers months or even weeks into the future, many borrowers will still experience irreparable harm. Section 3513 of the CARES Act is designed to provide immediate relief to struggling borrowers for life necessities such as food, rent, and bills. A refund many weeks or months after the garnishment takes place cannot erase hardship suffered in the present.

**Elizabeth Barber**

48.    In 2010, Plaintiff Elizabeth Barber attended Nazareth College, where she studied psychology. Ms. Barber took out federally held student loans to attend the program. She currently owes approximately $10,000 on those loans.

49.    Ms. Barber is currently employed as a home health aide at Companion Care of Rochester, Inc., a home care services agency for older adults and individuals

14

with disabilities. Ms. Barber has continued to provide home health care throughout the COVID-19 crisis.

50.    Ms. Barber earns $12.89 per hour. In 2019, she earned approximately $20,000 in total. The money that Ms. Barber earns as a home health aide is her sole source of income.

51.    At work, Ms. Barber primarily looks after clients with cerebral palsy. Her work requires her to be in constant close contact with her clients, including to shower, feed, dress, and help them go to the bathroom. Ms. Barber often needs to clean her clients' catheters and change their diapers. In addition, she cooks, cleans, helps with laundry, shops for groceries and household supplies, plays games, and takes her clients outside.

52.    Ms. Barber fears bringing the virus into her clients' homes, especially those whose medical conditions place them at heightened risk of severe symptoms if they catch the virus.

53.    Due to the decrease in demand for her services during the COVID-19 pandemic, Ms. Barber's hours have been reduced by approximately ten to fifteen hours per week, increasing her financial strain.

54.    As Ms. Barber continues to assist clients in need, the Department—in violation of the CARES Act—continued to garnish approximately twelve percent of her paychecks in March and April 2020.

15

55.    In her paystub dated April 10, 2020 (for the period from March 20, 2020 through April 4, 2020), $52.10 was garnished. Ms. Barber's April 10, 2020 paystub shows that $789.57 had been garnished during the 2020 calendar year.

56.    In her paystub dated April 17, 2020 (for the period from April 5, 2020 through April 11, 2020), $43.43 was garnished.

57.    In her paystub dated April 24, 2020 (for the period from April 12, 2020 through April 18, 2020), $70.20 was garnished. Ms. Barber's April 24, 2020 paystub shows that $903.20 had been garnished during the 2020 calendar year.

58.    Ms. Barber's paycheck for May 1, 2020 does not show any additional amounts garnished.

59.    Ms. Barber has not received a refund of any wages garnished since March 13, 2020.

60.    Ms. Barber is struggling to make ends meet, so every dollar counts as she tries to meet her immediate needs.

61.    Ms. Barber often has to leave bills unpaid in order to cover her basic needs. She has no money in her checking or savings accounts, is in arrears on various local taxes, and is subject to a lien on her home. She is also past due on both her water and electric bills, which she cannot afford to pay in full each month.

62.    As her past due amounts continue to grow, the decrease in hours due to COVID-19 has magnified Ms. Barber's financial struggles.

16

63. The funds that the Department has illegally garnished are essential to Ms. Barber's ability to satisfy her essential financial obligations during the pandemic.

**Craigory Lee A. Jenkins**

64. Between 2012 and 2014, Plaintiff Craigory Lee A. Jenkins attended Ohio State University, where she studied secondary English education.

65. Ms. Jenkins earns $17.58 per hour. In 2019, she earned approximately $29,000 in total. The money that Ms. Jenkins earns working for Lowe's is her sole source of income.

66. On or around February 24, 2020, Ms. Jenkins' employer received a Wage Garnishment Order, dated February 12, 2020, stating that Ms. Jenkins owed over $65,000 on her federal student loans. The Wage Garnishment Order directed her employer to deduct an amount for each pay period and to remit that amount to "Central Research," which is a private debt collection agency that contracts with the Department and, as such, is an agent of the Department.

67. The Wage Garnishment Order instructed her employer to continue to garnish wages in compliance with the order "until [the employer] receive[s] notification from the [Department] to suspend or discontinue deductions."

68. Beginning in March 2020 and continuing to the present, the Department has garnished approximately 15 percent of the wages from Ms. Jenkins's paychecks. In her paystub dated March 27 2020 (for the period from March 7, 2020 through March 20, 2020), $235.17 was garnished. Ms. Jenkins's

17

March 27, 2020 paystub shows that $439.12 had been garnished during the 2020 calendar year.

69.     In her paystub dated April 10, 2020 (for the period from March 21, 2020 through April 3, 2020), $228.65 was garnished. Ms. Jenkins's April 10, 2020 paystub shows that $667.77 had been garnished during the 2020 calendar year.

70.     In her paystub dated April 24, 2020 (for the period from April 4, 2020 through April 17, 2020), $276.25 was garnished. Ms. Jenkins's April 24, 2020 paystub shows that $944.02 had been garnished during the 2020 calendar year.

71.     Ms. Jenkins has received a copy of her paystub dated May 8, 2020— *i.e.*, one day after the filing of this Amended Class Action Complaint for Declaratory and Injunctive Relief. The May 8, 2020 paystub (for the period from April 18, 2020 through May 1, 2020) shows that $204.16 was garnished. The May 8, 2020 paystub shows that $1,148.18 had been garnished during the 2020 calendar year.

72.     In total and to date, $944.23 has been garnished from Ms. Jenkins's paychecks issued since the CARES Act became law on March 27, and $1,148.18 has been garnished since March 13, the date from which the Department has committed to providing refunds.

73.     Ms. Jenkins has not received a refund of any garnished wages.

74.     On May 6, 2020, Lowe's informed Ms. Jenkins that it could not suspend garnishment of her wages because it had not received a letter from the Department instructing it to do so.

75.     Ms. Jenkins's customer base has declined dramatically during COVID-19 pandemic as people are delaying kitchen remodels and, for health reasons, are unwilling to bring strangers into their home for cabinet installation.

76.     Due to the decrease in her customer base, Ms. Jenkins no longer has the opportunity or ability to earn sales performance bonuses. Prior to and at the beginning of the pandemic, Lowe's provided bonuses for sales on custom cabinets over a certain amount. Lowe's has since stopped offering those bonuses.

77.     Even if the sales bonuses were still available, the decline in Ms. Jenkins's customer base would make them impossible to earn.

78.     In normal circumstances, Ms. Jenkins relies on public transportation to commute to and from work. Because of the COVID-19 pandemic, public transportation has become less frequent and less reliable, so she has been forced to spend additional money on rideshare services like Uber to get to work.

79.     Ms. Jenkins is struggling to make ends meet, so every dollar counts as she tries to meet her immediate needs.

80.     Ms. Jenkins has to leave bills unpaid in order to cover her basic expenses. She has no money in her checking or savings accounts, is past due on both her water and electric bills, and she is past due on this month's rent.

81.     She is using the $986 from her May 8 paycheck to pay her overdue rent, which totals $1,650. To cover the difference, she has to borrow money from a friend. Until her next paycheck in two weeks, Ms. Jenkins will have no money in

her checking account. For food, she will have to scrape by with what she currently has in her pantry.

82.    As her past due amounts continue to grow, the decrease in her income due to COVID-19 has magnified her financial struggles.

83.    The funds that the Department has illegally garnished are necessary to Ms. Jenkins's ability to satisfy her essential financial and life obligations during the pandemic.

## CLASS ACTION ALLEGATIONS

84.    Named Plaintiffs file this class action on behalf of themselves and all other individuals who are similarly situated. They seek to represent a class consisting of:

All borrowers of Department issued and/or held student loans whose wages are being garnished by the Department or have been garnished by the Department since March 27, 2020, and whose wages garnished during that time period have not been fully refunded.

85.    The proposed class satisfies the requirements of Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure.

86.    The class is so numerous that joinder of all members is impracticable. The Department estimates that approximately 285,000 people had their wages garnished between March 13 and March 26, 2020. *See* Danielle Douglas-Gabriel, *supra* ¶ 40. On information and belief, many of these borrowers continue to have their wages garnished in violation of the CARES Act and have not had their illegally garnished wages refunded.

20

87.    The exact number of class members can be readily determined using the Department's records.

88.    The nature of relief sought, as well as questions of fact and law, are common to all members of the class.

89.    The Department's failure to suspend wage garnishments and provide refunds is identical for the entire class, all of whom have had their wages illegally garnished after the CARES Act became law.[2] The Department's challenged actions therefore apply generally to the class, making declaratory relief regarding those decisions appropriate for the class as a whole.

90.    The common questions of law and fact also predominate over any questions affecting individual members. The common questions of law and fact include, but are not limited to, whether the Department's failure to suspend wage garnishment as required by the CARES Act violates the Administrative Procedure Act ("APA").

91.    Named Plaintiffs' claims are typical of the claims of other class members, as they arise out of the same course of conduct and legal theories and challenge the Department's conduct with respect to the class as a whole.

92.    Named Plaintiffs are capable of and committed to fairly and adequately protecting the interests of the class and have no conflicts with other class members.

---

[2]    Although the CARES Act became law on March 27, 2020, the Department has committed to refunding all wage garnishments since March 13, 2020 (the date President Trump declared a national emergency). *See supra* ¶ 34.

Deleted: , as required by the CARES Act,

Deleted: Plaintiff's

Deleted: Plaintiff is

Deleted: has

Deleted: 30

93.    Named Plaintiffs are represented by counsel experienced in higher

education law, administrative law, and class action litigation.

94.    A class action is superior for the fair and efficient adjudication of this

matter. The Department has acted in the same unlawful manner with respect to all

class members. A legal ruling concerning the unlawfulness of the Department's

actions under the APA would vindicate the rights of every class member. Finally, a

class action would serve the economies of time, effort, and expense while preventing

inconsistent results.

CAUSE OF ACTION

COUNT ONE
**Violation of the APA, 5 U.S.C. § 706(1) for Garnishing Wages in Violation of the CARES Act**

95.    Plaintiffs repeat and incorporate by reference each of the foregoing

allegations as if fully set forth herein.

96.    The garnishments of wages after March 27, 2020 constitute "final

agency action[s] for which there is no other adequate remedy in court." 5 U.S.C.

§ 704.

97.    Under the APA, a "reviewing court shall . . . compel agency action

unlawfully withheld or unreasonably delayed." *Id.* § 706(1).

98.    Section 3513(e) of the CARES Act requires the Secretary to suspend,

until September 30, 2020, all involuntary collection—including wage garnishment—

of defaulted Direct and FFEL loans currently held by the Department.

99.    By garnishing the wages of Named Plaintiffs and the class following

the March 27 enactment of the CARES Act, the Department has unlawfully

22

withheld its legal obligation to suspend administrative wage garnishments between March 27, 2020, and September 30, 2020, as required by Section 3513(e) of the CARES Act.

**COUNT TWO**
**Violation of the APA, 5 U.S.C. § 706(2)(A) for Garnishing Wages in Violation of the CARES Act**

100.    Plaintiffs repeat and incorporate by reference each of the foregoing allegations as if fully set forth herein.

101.    The garnishments of wages after March 27, 2020, constitute "final agency action[s] for which there is no other adequate remedy in court." 5 U.S.C. § 704.

102.    Under the APA, a "reviewing court shall . . . hold unlawful and set aside agency action . . . found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 706(2)(A).

103.    Section 3513(e) of the CARES Act requires the Secretary to suspend, until September 30, 2020, all involuntary collection—including wage garnishment— of defaulted Direct and FFEL loans currently held by the Department.

104.    By garnishing the wages of Named Plaintiffs and the class following the March 27 enactment of the CARES Act, the Department has violated Section 3513(e) of the CARES Act and has failed to act in accordance with law.

105.    By failing to stop employers from garnishing the wages of Named Plaintiffs and the class following the enactment of the CARES Act, the Department has violated Section 3513(e) of the CARES Act and has failed to act in accordance with law.

23

Deleted: Plaintiff repeats

Deleted: incorporates

Deleted: garnishment

Deleted: constitutes

Deleted: continuing to garnish

Deleted: Plaintiff

Deleted: is in violation of

Deleted: . Its actions are therefore not

Deleted: Plaintiff

Deleted: is in violation of

Deleted: . Its actions are therefore not

**COUNT THREE**
**Violation of the APA, 5 U.S.C. § 706(2)(C) for Garnishing Wages in Violation of the CARES Act**

106.    Plaintiffs repeat and incorporate by reference each of the foregoing allegations as if fully set forth herein.

107.    The garnishments of wages after March 27, 2020, constitute "final agency action[s] for which there is no other adequate remedy in court." 5 U.S.C. § 704.

108.    Under the APA, a "reviewing court shall . . . hold unlawful and set aside agency action . . . found to be . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." *Id.* § 706(2)(C).

109.    Section 3513(e) of the CARES Act requires the Secretary to suspend, until September 30, 2020, all involuntary collection—including wage garnishment—of defaulted Direct and FFEL loans currently held by the Department.

110.    By garnishing the wages of Named Plaintiffs and the class following the March 27 enactment of the CARES Act, the Department has violated Section 3513(e) of the CARES Act and has acted in excess of its statutory jurisdiction or authority.

111.    By failing to stop employers from garnishing the wages of Named Plaintiffs and the class following the enactment of the CARES Act, the Department has violated Section 3513(e) of the CARES Act and has acted in excess of its statutory jurisdiction or authority.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs request that this Court:

24

1.      Certify the class defined in paragraph 84 pursuant to Rule 23 of the

Federal Rules of Civil Procedure;

2.      Enter a declaratory judgment, pursuant to 28 U.S.C. § 2201, that the

Department unlawfully withheld its legal obligation to suspend wage garnishment

as required by the CARES Act and/or that its failure to suspend wage garnishment

is not in accordance with law and/or in excess of statutory jurisdiction or authority;

3.      Further declare that the Department's wage garnishments on or after

the March 27, 2020, effective date of the CARES Act are not legally enforceable;

4.      Further declare that Defendants, their officers, their employees,

contractors, and/or their agents must, consistent with the CARES Act, immediately

suspend all administrative wage garnishments for Named Plaintiffs and the class;

5.      Further declare that Defendants, their officers, their employees,

contractors, and/or their agents must, consistent with the CARES Act, provide

immediate notice of the suspension of wage garnishment to Named Plaintiffs and

the class when that suspension has actually happened;

6.      Order the Department to certify to the Court when it suspends

garnishments and provides notices thereof to class members;

7.      Order ancillary relief, under 28 U.S.C. § 2202, including an immediate

refund of all amounts illegally garnished;

8.      Award Plaintiffs reasonable fees, costs, expenses, and other

disbursements for this action; *and*

25

Deleted: 55

Deleted: Plaintiff

Deleted: Plaintiff

Deleted: Plaintiff

9.      Grant any other relief this Court deems just and proper.

/s/Alexander S. Elson
Daniel A. Zibel (D.C. Bar No. 491377)
Eric Rothschild (D.C. Bar No. 1048877)
Alexander S. Elson (D.C. Bar No. 1602459)
National Student Legal Defense Network
1015 15th Street NW, Suite 600
Washington, DC 20005
(202) 734-7495
dan@defendstudents.org
eric@defendstudents.org
alex@defendstudents.org

Stuart T. Rossman* (BBO No. 430640)
Persis Yu* (BBO No. 685951)
National Consumer Law Center
7 Winthrop Square, Fourth Floor
Boston, MA 02110
P: (617) 542-8010
srossman@nclc.org
pyu@nclc.org

Counsel for Plaintiffs

*Admitted pro hac vice.

Dated:      May 7, 2020

**Deleted:** *Plaintiff*

**Deleted:** *Application for admission*

**Deleted:** *forthcoming*

**Deleted:** April 30

26