## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ELIZABETH BARBER, *et al.,* on behalf of themselves and all others similarly situated, | Civil Action No. 1:20-cv-01137-CJN |
| Plaintiffs, | |
| v. | |
| ELISABETH DeVOS, in her official capacity as United States Secretary of Education, and UNITED STATES DEPARTMENT OF EDUCATION, | |
| Defendants. | |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' AMENDED MOTION
## FOR CLASS CERTIFICATION

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................ 4

I.   STATUTORY AND REGULATORY BACKGROUND.................................................. 4

A.   The William D. Ford Federal Direct Loan Program................................................. 4

B.   The Department's Authority to Collect Defaulted Student Loans........................... 4

C.   The CARES Act...................................................................................................... 6

II.  THE DEPARTMENT'S ACTIONS TO EFFECTUATE SECTION 3513 OF THE
     CARES ACT............................................................................................................ 7

III. THIS CASE ............................................................................................................ 10

LEGAL STANDARD FOR CLASS CERTIFICATION .................................................... 12

ARGUMENT .................................................................................................................... 13

I.   A CLASS CANNOT BE CERTIFED BECAUSE THE CLAIMS OF THE
     PROPOSED CLASS REPRESENTATIVES ARE MOOT ........................................... 13

II.  THE PROPOSED CLASS DOES NOT SATISFY RULE 23(a)'S
     REQUIREMENTS OF COMMONALITY AND TYPICALITY.................................... 16

III. THE PROPOSED CLASS DOES NOT SATISFY THE REQUIREMENTS OF
     RULE 23(b)(2)....................................................................................................... 20

A.   The Court Cannot Grant Injunctive Relief............................................................ 20

B.   Plaintiffs Have Not Established That A Single Uniform Injunction Could
     Provide Relief To The Entire Class, As Required By Rule 23(B)(2).................. 21

CONCLUSION................................................................................................................. 23

# TABLE OF AUTHORITIES

## CASES

*Amchem Products v. Windsor,*
  521 U.S. 591 (1997) ........................................................................................... 12

*Arizonans for Official English v. Arizona,*
  520 U.S 43 (1997) .............................................................................................. 13

*Barnes v. Am. Tobacco Co.,*
  161 F.3d 127 (3rd Cir. 1998) ............................................................................. 22

*Calise Beauty School, Inc. v. Riley,*
  941 F. Supp. 425 (S.D.N.Y. 1996) ..................................................................... 20

*Chavis v. Garrett,*
  419 F. Supp. 3d 24 (D.D.C. 2019) ...................................................................... 14

*City of Erie v. Pap's A.M.,*
  529 U.S. 277 (2000) ........................................................................................... 14

*Cooper v. Southern Co.,*
  205 F.R.D. 596 (N.D. Ga. 2001),
  *aff'd*, 390 F.3d 695 (11th Cir. 2004) .................................................................. 22

*E. Tex. Motor Freight Sys. v. Rodriguez,*
  431 U.S. 395 (1977) ........................................................................................... 14

*Foretich v. United States,*
  351 F.3d 1198 (D.C. Cir. 2003) .......................................................................... 13

*Gen. Tel. Co. of Sw. v. Falcon,*
  457 U.S. 147 (1982) ...................................................................................... 12, 13

*Gray v. Int'l Bhd. of Elec. Workers,*
  73 F.R.D. 638 (D.D.C. 1977) .............................................................................. 22

*Hartman v. Duffey,*
  19 F.3d 1459 (D.C. Cir. 1994) ............................................................................ 14

*In re Lorazepam & Clorazepate Antitrust Litig.,*
  202 F.R.D. 12 (D.D.C. 2001) .............................................................................. 19

ii

*In re Lorazepam & Clorazepate Antitrust Litig.*,
  289 F.3d 98 (D.C. Cir. 2002) ................................................................. 13

*J.D. v. Azar*,
  925 F.3d 1291 (D.C. Cir. 2019) ........................................................... 3, 15

*Kas v. Fin. Gen. Bankshares, Inc.*,
  105 F.R.D. 453 (D.D.C. 1984) ............................................................... 19

*LaRoque v. Holder*,
  679 F.3d 905 (D.C. Cir. 2012) ............................................................... 14

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) .............................................................................. 13

*McCarthy v. Kleindienst*,
  741 F.2d 1406 (D.C. Cir. 1984) ............................................................. 12

*Radosti v. Envision EMI, LLC*,
  717 F. Supp. 2d 37 (D.D.C. 2010) ......................................................... 18

*Ramirez v. U.S. Immigration & Customs Enf't*,
  338 F. Supp. 3d 1 .................................................................................. 14

*Shimkus v. Gersten Co.*,
  816 F.2d 1318 (9th Cir. 1987) ............................................................... 17

*Shook v. Bd. of Cty. Comm'rs of Cty. of El Paso*,
  543 F.3d 597 (10th Cir. 2008) ............................................................... 21

*Sosna v. Iowa*,
  419 U.S. 393 (1975) .............................................................................. 15

*Speaks Family Legacy Chapels, Inc. v. Nat'l Heritage Enters., Inc.*,
  No. 2:08-cv-04148-NKL, 2009 WL 2391769 (W.D. Mo. Aug. 3, 2009) ................. 18

*Thompson v. Jiffy Lube Int'l, Inc.*,
  505 F. Supp. 2d 907 (D. Kan. 2007) ...................................................... 18

*Thorpe v. Dist. of Columbia*,
  916 F. Supp. 2d 65 (D.D.C. 2013) ......................................................... 15

*United States v. Philip Morris USA Inc.*,
  566 F.3d 1095 (D.C. Cir. 2009) ............................................................. 14

iii

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ........................................................................ 12, 13, 21

*Whayne v. U.S. Dep't of Educ.*,
    915 F. Supp. 1143 (D. Kan. 1996) ....................................................... 20

**STATUTES**

20 U.S.C. ch. 28, subch. IV, Part B ........................................................... 19

20 U.S.C. § 1070 *et seq.* ......................................................................... 4

20 U.S.C. § 1071 *et seq.* ....................................................................... 4, 7

20 U.S.C. § 1082(a)(2) ........................................................................... 3, 20

20 U.S.C. § 1085(*l*) ................................................................................. 5

20 U.S.C. § 1087a *et seq.* ...................................................................... 4, 7

20 U.S.C. § 1087e ................................................................................. 4, 20

20 U.S.C. § 1087e(f) ................................................................................. 4

20 U.S.C. § 1087*ll* ................................................................................. 4

20 U.S.C. § 1095a ................................................................................. 5, 7

31 U.S.C. § 3701 ...................................................................................... 5

31 U.S.C. § 3711(a)(1) ............................................................................. 4

31 U.S.C. § 3720D .................................................................................... 7

31 U.S.C. § 3720D(a) ............................................................................... 5

31 U.S.C. § 3720D(b) ............................................................................... 6

31 U.S.C. § 3720D(c) ............................................................................... 6

31 U.S.C. § 3720D(d) ............................................................................... 6

31 U.S.C. § 3720D(f)(1)(B) ....................................................................... 6

Pub. L. 116-136, § 3513, 134 Stat 281 (2020)........................................................ 1, 7

**REGULATIONS**

34 C.F.R. §§ 34.4-34.6............................................................................................... 6

34 C.F.R. § 34.18 ....................................................................................................... 6

34 C.F.R. § 34.26 ....................................................................................................... 6

34 C.F.R. § 34.28 ....................................................................................................... 6

34 C.F.R. § 34.29 ....................................................................................................... 6

34 C.F.R. § 685.102(b) .............................................................................................. 5

34 C.F.R. § 685.207 ................................................................................................... 4

34 C.F.R. § 685.211(d) .............................................................................................. 4

**RULES**

Fed. R. Civ. P. 19 ................................................................................................. 17, 18

Fed. R. Civ. P. 23 ............................................................................................... *passim*

**OTHER AUTHORITIES**

5 Moore's Fed. Prac. § 23.43 (3d. 2000) ................................................................. 21

## **INTRODUCTION**

Section 3513 of the Coronavirus Aid, Relief and Economic Security Act ("CARES Act") provides for "TEMPORARY RELIEF FOR FEDERAL STUDENT LOAN BORROWERS" in response to the effects of the coronavirus pandemic on the United States.  The CARES Act includes a provision requiring defendant Secretary of Education to "suspend all involuntary collection related to" federally held student loans, such as administrative wage garnishment ("AWG").  However, the garnishment of wages under AWG is actually performed by the individual employer of each borrower as part of the employer's payroll process, not by defendant United States Department of Education ("Department").  The Department has a role to play, but it is limited to issuing orders to employers of defaulted student loan borrowers, both in the first instance to direct the employers to withhold amounts from the student loan borrower's wages and pay those amounts to the Department, and then to cancel the garnishment once AWG should end.  But the actual commencement and termination of garnishment, as well as each individual act of garnishing wages, is carried out entirely by the employer.  Plaintiffs' filings, including their class certification motion, ignore this central fact.

Even before the CARES Act became law, the Department had decided, because of the nationwide impact of the coronavirus pandemic, to direct employers to halt all wage garnishments for federally held student loans as of March 13, 2020, and to refund to the borrower any funds recovered through garnishments occurring on or after that date.  *See* Declaration of Mark A. Brown, Chief Operating Officer, Federal Student Aid, U.S. Department of Education, ¶¶ 23-24, Ex. 1 hereto ("Brown Decl.").  Since then, the Department has been working diligently to ensure that all employers receive the necessary notice to cease garnishment and that any refunds of amounts garnished after March 13, 2020, are processed and returned to

the borrowers.  *Id.* ¶¶ 25-46.  As of May 16, 2020, the Department had sent notices to all

employers (in some cases, multiple notices by different methods).  *Id.* ¶ 36.  As of June 1, 2020,

the Department has issued AWG refunds totaling over $172 million to over 370,000 borrowers,

representing over 94% of the wages garnished since March 13.  *Id.* ¶ 45.  The Department's

records reflect that, for the week ending May 28, 2020, employers garnished the wages of

approximately 4% of the borrowers in the original pool covered by the CARES Act.  *Id.* ¶ 40.

Plaintiffs Elizabeth Barber and Susan Jenkins (collectively, "Plaintiffs") are two student

loan borrowers who continued to have their wages garnished by their employers for a short

period of time after passage of the CARES Act.  On April 30, and as amended on May 7, 2020,

they filed the present suit challenging the continued garnishment and seeking to represent a class

of similarly situated borrowers.  However, as of now, Plaintiffs are no longer subject to

garnishment for their federally held student loans, and the Department has refunded to them any

amounts collected through that means since March 13, 2020.  Brown Decl. ¶¶ 47-48.  Plaintiffs'

claims are therefore moot.

In view of the mooting of their claims, Plaintiffs' Amended Motion for Class

Certification should be denied.  In the absence of a class representative with a live claim, no

class should be certified.  The exception to this general mootness rule for claims that are

"inherently transitory" does not apply here because the Department is working diligently to

ensure that all employers cease garnishment and employers are responding by ending

garnishment (albeit more slowly than anyone would like in some instances).  Therefore, this is

not a case where other class members will retain a live claim at every stage of litigation even

once the named representatives' claims are mooted out.  *See J.D. v. Azar*, 925 F.3d 1291, 1311 (D.C. Cir. 2019).

In any event, even if the Court concludes that a class representative with a live claim is not required here, class certification should be denied because the situations of any student loan borrowers still experiencing garnishment are too individualized to be amenable to class certification.  The Department relies upon employers to garnish the wages of defaulted student loan borrowers, and similarly relies upon those employers heeding their instructions to cease garnishment.  Hence, any student loan borrowers' claims cannot finally be resolved without the participation of their employers and without, as well, specific factual development as to the reasons why that particular employer has not yet ceased garnishment.  Accordingly, Plaintiffs cannot establish that the proposed class meets the requirements of Federal Rule of Civil Procedure 23(a) regarding commonality or typicality.  Nor, given the necessity to tailor any injunctive relief to the particular employers involved, can Plaintiffs meet the requirement of Rule 23(b)(2) that injunctive or declaratory relief be "appropriate … with respect to the class as a whole."  In any event, the Court is statutorily barred from issuing an injunction against the government defendants by 20 U.S.C. § 1082(a)(2), and declaratory relief would serve little purpose here in light of the absence of the employers as parties.

For all of these reasons, Plaintiffs' Amended Motion for Class Certification should be denied.

## BACKGROUND

### I. STATUTORY AND REGULATORY BACKGROUND

#### A.  The William D. Ford Federal Direct Loan Program

Under Title IV of the Higher Education Act of 1965 ("HEA"), 20 U.S.C. § 1070 *et seq.*, the Department  enters into agreements with institutions of higher education that permit students to receive federal grants and loans to pay for the cost of attendance at the school.  The William D. Ford Federal Direct Loan Program ("Direct Loan Program"), the largest student loan program authorized under Title IV, *see* 20 U.S.C. § 1087a *et seq.*, allows students to apply for and receive Direct Loans from the federal government to pay for their educational expenses, including tuition as well as living expenses.  *Id*. § 1087*ll*.  As of the end of March 2020, the Department held more than $1.28 trillion in outstanding Direct Loans to over 35 million borrowers.  *See* Brown Decl. ¶ 6.  The Department also owns some loans originated under the Federal Family Education Loan ("FFEL") Program that it subsequently purchased from commercial lenders.  *See* Amend. Compl. at 9 n.1; *see generally* 20 U.S.C. § 1071 *et seq.*  The Department currently holds about $43 billion in FFEL loans in repayment.  *See* https://studentaid.gov/data-center/student/portfolio, under the heading "Location of Federal Family Education Loan Program Loans."

Borrowers repay their Direct Loans to the Department of Education.  20 U.S.C. § 1087e; 34 C.F.R. §§ 685.207, 685.211(d).  Repayments begin once the borrower stops attending school or if other conditions are met.  *See* 20 U.S.C. § 1087e(f).

#### B.  The Department's Authority to Collect Defaulted Student Loans

Federal law requires the heads of executive agencies to "try to collect" any "claim" of the United States "arising out of the activities of, or referred to, the agency," 31 U.S.C. § 3711(a)(1),

and defines "claim," or "debt," as "any amount of funds or property that has been determined by an appropriate official of the Federal Government to be owed to the United States by a person, organization, or entity other than another Federal agency," *id.* § 3701(b)(1).  Federal agencies are authorized, so long as they follow certain procedural requirements, to collect their debts through a number of tools, including, as relevant here, administrative wage garnishment ("AWG").  *Id.* § 3720D(a); *see also* 20 U.S.C. § 1095a (authorizing the Department to collect Title IV loan debts through wage garnishment).  AWG is a process in which a creditor, in this case the Department, collects delinquent non-tax debt by garnishing the wages of a delinquent debtor without first obtaining a court order.  In AWG, an employer withholds amounts from an employee's wages and pays those amounts to the employee's creditor in satisfaction of an administrative wage garnishment order issued by the creditor.

For federal student loans, a loan is considered in "default" when at least 270 days have passed without the borrower making a payment.  Brown Decl. ¶ 8; 20 U.S.C. § 1085(*l*); 34 C.F.R. § 685.102(b) ("Default").  When that occurs, the Department sends borrowers a notice that advises them that their debt is now due in full and provides them with an opportunity to enter into a voluntary payment arrangement.  Brown Decl. ¶ 8.  If a borrower does not enter into a satisfactory repayment arrangement within 65 days of that notice, the account is placed with a collection agency.  *Id.*  After the collection agency verifies the borrower's employment, another contractor for the Department, Maximus Federal Servicers ("Maximus"), sends the borrower a Notice of Proposed Wage Garnishment informing them of their rights and giving them 30 days from the date of the letter to submit a request for hearing with objection to the garnishment, or to take advantage of a second opportunity to establish a voluntary repayment arrangement.  Brown Decl. ¶ 10; *see*

31 U.S.C. § 3720D(b); *see also* 34 C.F.R. §§ 34.4-34.6.  If the borrower does not respond to the Notice or comply within 30 days, or if a hearing is requested and the hearing official orders garnishment, an "Order to Withhold Wages" is sent to the employer, with a copy also sent to the borrower.  Brown Decl. ¶ 12, 14; *see* 31 U.S.C. § 3720D(c), (d); *see also* 34 C.F.R. § 34.18. Generally speaking, employers begin garnishing paymenmts within four weeks of the "Order to Withhold Wages" being received.  Brown Decl. ¶ 15.  An employer must honor a garnishment order and is liable to the creditor for amounts that are not withheld pursuant to a garnishment order, together with attorney fees, costs, and, in the court's discretion, punitive damages.  31 U.S.C. § 3720D(f)(1)(B); 34 C.F.R. § 34.29.

Once an account is paid in full or if garnishment should stop for other reasons, the Department's Debt Management and Collection System automatically generates a "Notice of cancellation of order for withholding of wages."  Brown Decl. ¶ 17.  The Department then directs Maximus to send this notice to the employer.  *Id.*; *see* 34 C.F.R. § 34.26.  As with the original wage garnishment order, employers generally process the cease garnishment instruction using their normal payroll processes, so it too can often take up to four weeks or even longer from the time the stop garnishment order is transmitted to the employer until wages are no longer garnished.  *Id.*  If an employer fails to cancel the wage garnishment and continues to garnish a borrower's wages, the Department will issue a refund to the borrower of any additional payments received.  Brown Decl. ¶ 19; *see* 34 C.F.R. § 34.28.

C.    **The CARES Act**

On March 27, 2020, the President signed into law the Coronavirus Aid, Relief and Economic Security Act ("CARES Act") to provide emergency relief to individuals and

businesses impacted by the COVID-19 pandemic.  Pub. L. 116-136, 134 Stat 281 (2020).

Section 3513 of that Act provides for "TEMPORARY RELIEF FOR FEDERAL STUDENT

LOAN BORROWERS," including provisions requiring the Secretary to "suspend all involuntary

collection related to" student loans, such as wage garnishment.  As pertinent here, that section

specifically provides that:

> (a) IN GENERAL.—The Secretary shall suspend all payments due
> for loans made under part D and part B (that are held by the
> Department of Education) of title IV of the Higher Education Act
> of 1965 (20 U.S.C. 1087a *et seq.*; 1071 *et seq.*) through September
> 30, 2020.
> …
> (e) SUSPENDING INVOLUNTARY COLLECTION.—During
> the period in which the Secretary suspends payments on a loan
> under subsection (a), the Secretary shall suspend all involuntary
> collection related to the loan, including—
>
>> (1) a wage garnishment authorized under section 488A of
>> the Higher Education Act of 1965 (20 U.S.C. 1095a) or
>> section 3720D of title 31, United States Code;
>
> …

*Id.*

## II.  THE DEPARTMENT'S ACTIONS TO EFFECTUATE SECTION 3513 OF THE CARES ACT

Even prior to the passage of the CARES Act, on March 25, 2020, Secretary DeVos

ordered the Department to halt collection activity and wage garnishments and refund any funds

recovered through garnishments received after March 13, 2020.  Brown Decl. ¶ 23.  On March

26, 2020, the Department instructed Maximus to stop all wage garnishments and initiate refunds

of garnishments received on or after March 13, 2020.  *Id.* ¶ 24.  In order to execute this

unprecedented directive, Maximus began reengineering its processes and systems to facilitate the

automated issuance of cancellation requests to approximately 115,000 employers.  *Id.* ¶ 25.  In the interim, it began an outbound calling campaign to those employers with the largest number of borrowers under wage garnishment orders to instruct them to cease all wage garnishments as FSA had ordered.  *Id.* ¶ 26.

Maximus began sending automated notifications to employers by mail on April 18, 2020. Brown Decl. ¶ 27.  By April 23, 2020, less than 30 days after the CARES Act was signed, Maximus reported that it had notified, either by mail or telephone call, 98% of employers that had been actively garnishing wages, instructing them to stop garnishments for Department-held debt.  *Id.* ¶ 28.  In late April, Maximus began initiating calls to employers who continued to send in wage garnishments, and Maximus continues to make those calls daily.  *Id.* ¶ 29.  In addition, between May 9 and 11, Maximus sent a second round of stop garnishment notices to approximately 37,000 non-compliant employers who were still garnishing wages from April 28 – May 7.  *Id.* ¶ 30.  Also between May 9 and 11, 2020, Maximus sent letters to borrowers who continued to have their wages garnished, advising them that the Department had sent a stop garnishment order to their employer.  *Id.* ¶ 31.  This letter included a copy of a stop garnishment notice that borrowers could take to their employer to expedite the stop in garnishment.  *Id.*  On May 15, 2020, Maximus sent a third round of stop garnishment notices via certified mail to all employers that remained non-compliant.  *Id.* ¶ 33.  Finally, on May 16, 2020, Maximus sent stop garnishment notices to the remaining 2% of employers who had been identified as not previously having received one as a result of discrepancies in Maximus' records (e.g., employers who had invalid addresses in the system or borrowers who were associated with the wrong employers). *Id.* ¶¶ 34-35.

As of May 16, 2020, Maximus reported that it had notified, either by mail or telephone call, 100% of employers that had been actively garnishing wages as of May 11, 2020, instructing them to stop garnishments for Department-held debt.  Brown Decl. ¶ 36.

The Department cannot directly determine when an employer has canceled garnishment for its employees with federally-held student loans.  Brown Decl. ¶ 40.  Instead, on a weekly basis, the Department measures the percentage of borrowers for whom it has received an AWG payment from an employer compared against the total number of unique borrowers for which the Department has received an AWG payment since March 13, 2020.  *Id.*  The percentage of borrowers reported as subject to garnishment varies slightly from week to week because different borrowers are paid and subject to AWG each week depending on the pay schedule of their employers (*e.g.*, some borrowers get paid weekly, bi-weekly, monthly).  *Id.*  To clarify the Department's statement in the May 14, 2020, joint status report, therefore, for the week ending May 14, 2020, employers garnished fewer than 3 percent of the borrowers in the original pool covered by the CARES Act.  *Id.; see* ECF No. 17, at 5 n.2.  The best information available to the Department indicates that for the week ending on May 28, employers garnished approximately 4 percent of the borrowers in the original pool covered by the CARES Act.  Brown Decl. ¶ 40.

The Department has also acted to refund payments claimed through AWG since March 13, 2020, as quickly as possible.  Brown Decl. ¶ 41.  As part of the stop garnishment notices sent to employers, the Department requested that employers encourage borrowers to contact the Department to provide an updated address to which garnishment refund payments could be sent.  *Id.* ¶ 42.  Given the unprecedented volume of involuntary payments that required refunds during this period, Maximus also developed an automated process that allowed FSA to expedite refunds

for borrowers, which was implemented on April 14, 2020.  *Id.* ¶¶ 43-44.  This automated process generally reduced the processing time for any new reimbursements from several weeks to generally 4-5 business days from the date the garnishment is received at the Treasury Lockbox until the refund check can be mailed to the borrower by the Department of the Treasury.  *Id.* ¶ 44.

As of June 1, 2020, the Department has issued AWG refunds totaling over $172 million to over 370,000 borrowers, representing over 94% of the wages garnished since March 13. Brown Decl. ¶ 45.  Refunds for the remaining borrowers have been initiated by the Department and are either being actively processed or on hold because the borrowers owed a refund have an invalid address on file.  *Id.*  For those borrowers with invalid addresses the Department and Maximus deployed an address validation tool on the Debt Resolution Portal, https://myeddebt.ed.gov/borrower/, and they continue work to validate addresses for the approximately 21,000 borrowers with invalid addresses on file.  *Id.* ¶ 46.

### III.  THIS CASE

On April 20, 2020, plaintiff Elizabeth Barber, a Direct Loan borrower, filed the present suit contending that, as of her April 24, 2020, paycheck she continued to have her wages garnished by her employer pursuant to an AWG order from the Department, notwithstanding section 3513 of the CARES Act.  Compl. ¶ 50 (ECF No. 1).  She filed the suit on behalf of herself and a class of other similarly situated borrowers.  *Id.* ¶¶ 55-65.  She sought primarily declaratory relief but also sought orders directing the Department to notify the Court when it suspends garnishments and provides notice of such to the class members and directing an

immediate refund of all amounts illegally garnished.  *Id.* at 19-20.  She did not move for a preliminary injunction.  *Id.*

The garnishment of Ms. Barber's wages ceased with her May 1, 2020, paycheck. Amend. Compl. ¶ 58 (ECF No. 9).  On May 7, 2020, Ms. Barber, now joined by an additional plaintiff, Craigory Lee Jenkins, filed an Amended Complaint providing, *inter alia*, that information, although also reiterating that she had as yet received no refunds.  *Id.* ¶¶ 10, 58-59. The new named plaintiff, Ms. Jenkins, stated that her paychecks continued to be garnished as of her May 8, 2020, paycheck.  *Id.* ¶¶ 9, 68-71.  She also had received no refunds as of the date of filing of the Amended Complaint.  *Id.* ¶ 73.  Both plaintiffs also filed an amended motion for class certification on May 7, 2020 (ECF No. 10), and Ms. Jenkins filed a motion for a preliminary injunction (ECF No. 11).

As noted, Ms. Barber's garnishments ceased after her April 24, 2020, paycheck.  Amend. Compl. ¶¶ 57-58; Brown Decl. ¶ 47.  She has since received and cashed refund checks for all amounts garnished between March 13. 2020, and April 24, 2020.  Brown Decl. ¶ 47.  Ms. Jenkins' garnishment ceased after her May 8, 2020, paycheck, and she withdrew her preliminary injunction motion on May 22, 2020, Notice of Withdrawal of Preliminary Injunction Motion at 1 (ECF No. 19), and Ms. Jenkins has received and cashed four of the five refund checks she has been issued.  Brown Decl. ¶ 48.  Plaintiffs' amended motion for class certification remains pending, however, and the present brief addresses this motion.

## LEGAL STANDARD FOR CLASS CERTIFICATION

"The class-action device was designed as 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'"  *General Tel. Co. of Sw. v.*

*Falcon*, 457 U.S. 147, 155 (1982) (citation omitted).  In general, class certification is warranted only in those limited circumstances where common issues so predominate among the class as a whole that classwide adjudication would promote fairness and judicial efficiency.  *See id*.

To warrant this extraordinary procedure, Plaintiffs "must affirmatively demonstrate [their] compliance" with Rule 23 of the Federal Rules of Civil Procedure.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  Pursuant to Rule 23(a), a class may be certified only if: (1) it is so numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative are typical of those of the class ("typicality"); and (4) the class representative will fairly and adequately protect the interests of the class ("adequacy of representation").  In addition to meeting the requirements set forth in Rule 23(a), the proposed class must also qualify under Rule 23(b)(1), (2), or (3).  *See Amchem Products v. Windsor*, 521 U.S. 591, 614 (1997).  In this case, Plaintiffs seek certification under Rule 23(b)(2).  ECF No. 10, at 3.  Certification under 23(b)(2) is available only when the defendant "has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."  Fed. R. Civ. P. 23(b)(2).

The proponents of a class action have the burden of proof as to each of Rule 23's requirements.  *See McCarthy v. Kleindienst*, 741 F.2d 1406, 1414 n.9 (D.C. Cir. 1984).  "[A]ctual, not presumed, conformance with Rule 23(a) [is] indispensable."  *Falcon*, 457 U.S. at 160.  If a court is not fully satisfied, the class cannot be certified.  *Id*.  In ruling on a class certification motion, it "may be necessary for the court to probe behind the pleadings before coming to rest on the certification question,' and … certification is proper only if 'the trial court

12

is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'"

*Wal-Mart Stores, Inc.*, 564 U.S. at 350 (quoting *Falcon*, 457 U.S. at 160-61).

 For the reasons set forth below, the Plaintiffs have failed to meet their heavy burden to show that class certification is warranted in this case, and therefore their Amended Motion for Class Certification should be denied.

## **ARGUMENT**

### I. **A CLASS CANNOT BE CERTIFED BECAUSE THE CLAIMS OF THE PROPOSED CLASS REPRESENTATIVES ARE MOOT**

 "The question of constitutional standing ... is a prerequisite to Rule 23 class certification because it goes to the court's jurisdiction." *In re Lorazepam & Clorazepate Antitrust Litig*., 289 F.3d 98, 108 (D.C. Cir. 2002). The doctrines of standing, as well as the related one of mootness, both ensure that a case presents an actual, ongoing controversy satisfying the requirements of Article III of the Constitution. *Foretich v. United States*, 351 F.3d 1198, 1210 (D.C. Cir. 2003). To satisfy Article III's standing requirement, a plaintiff ordinarily must establish that (1) he or she has suffered an "injury in fact"; (2) there is a "causal connection between the injury and the conduct complained of"; and (3) "the injury will likely be 'redressed by a favorable decision.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). The mootness doctrine requires that "an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Official English v. Arizona*, 520 U.S 43, 67 (1997) (citation and internal quotation marks omitted). "A case is moot when the challenged conduct ceases such that there is no reasonable expectation that the wrong will be repeated in circumstances where it becomes impossible for the court to grant any effectual relief whatever to the prevailing party." *United States v. Philip Morris USA Inc*., 566 F.3d 1095, 1135 (D.C. Cir. 2009) (internal quotation marks

omitted) (quoting *City of Erie v. Pap's A.M*., 529 U.S. 277, 287 (2000)); *see also LaRoque v. Holder*, 679 F.3d 905, 909 (D.C. Cir. 2012) (case is moot when "appellants have obtained everything that they could recover from this lawsuit" (internal quotation marks and modifications omitted)).

"Ordinarily, a named plaintiff must present live claims to litigate on behalf of a class." *Ramirez v. U.S. Immigration & Customs Enf't* 338 F. Supp. 3d 1, 34035 (D.D.C. 2018) (citing *Sosna v. Iowa*, 419 U.S. 393, 402-03 (1975)). Here, as described above, the named Plaintiffs' wages are no longer being garnished, and they have received or will shortly receive refunds of amounts improperly garnished. Therefore, both of the proposed class representatives, Ms. Barber and Ms. Jenkins, have received all the relief they seek in this lawsuit and their claims are moot. *See Chavis v. Garrett*, 419 F. Supp. 3d 24 (D.D.C. 2019) (plaintiff's claims moot where housing authority issued her a permanent housing voucher, sent back rent to her landlord, and designated her head of household). Since neither of the proposed class representatives has a live claim, the motion for class certification should be denied. *See Hartman v. Duffey*, 19 F.3d 1459, 1471 (D.C. Cir. 1994) ("[C]ertification was unwarranted when at the time of certification it was abundantly clear that plaintiffs were not members of the class." (citing *E. Tex. Motor Freight Sys. v. Rodriguez*, 431 U.S. 395, 403 (1977))).

Plaintiffs contend that, "so long as a plaintiff files a motion to certify a class when he still has a live claim, the mooting of that claim while the motion is pending" should not preclude the court from deciding the certification motion, citing Third Circuit case law and *Sosna v. Iowa*, 419 U.S. at 403. ECF No. 19, at 2 n.1. But the D.C. Circuit applies a more rigorous standard than this for application of the exception to the mootness rule outlined in *Sosna*. Under this

"inherently transitory" exception to mootness, the D.C. Circuit looks at "(i) whether the individual claim might end before the district court has a reasonable amount of time to decide class certification, and (ii) whether some class members will retain a live claim at every stage of litigation." *J.D. v. Azar*, 925 F.3d 1291, 1311 (D.C. Cir. 2019).  In effect, this exception is intended to address the situation where "the population of the claimant population is fluid, but the population as a whole retains a continuing live claim." *Thorpe v. Dist. of Columbia*, 916 F. Supp. 2d 65, 66-67 (D.D.C. 2013) (citation and internal quotation marks omitted).

Plaintiffs cannot meet the second prong of the *J.D.* test here.  They cannot show that there are some class members that will retain a live claim as litigation progresses.  The Department has already notified every employer that is still conducting garnishment and requested that they cease garnishment.  The Department also has issued and continues to issue any necessary refunds.  The goal and expectation of these efforts is that any remaining garnishments will soon cease, rapidly shrinking the class of individuals experiencing garnishment to zero (since no one is being added to the class as time passes) and providing all such individuals with any refunds to which they are entitled.  Therefore, there is no certainty that there will continue to be class members with live claims as the litigation progresses—indeed, the hope is to the contrary.

More generally, Plaintiffs' attempt to contend that an exception to the mootness doctrine should apply here because the Department is "picking off" potential class representatives (ECF No. 19, at 2) misconstrues the Department's actions.  The Department is fully committed to complying with section 3513 of the CARES Act and to doing everything within its power to direct employers to cease garnishment and to issue necessary refunds.  The relief received by the

named Plaintiffs came about as a result of this process, not as an improper attempt to "pick off"
class representatives while leaving unnamed class members without relief.  In fact, the
Department intends that its process should result in all unnamed class members receiving the
same relief that Plaintiffs have, without the need for Court intervention.  Accordingly, the Court
should conclude that the mootness of Plaintiffs' claims defeats their motion for class
certification.

## II.       THE PROPOSED CLASS DOES NOT SATISFY RULE 23(a)'S REQUIREMENTS OF COMMONALITY AND TYPICALITY.

Even if Plaintiffs were not jurisdictionally barred from proceeding, they have also failed
to satisfy the commonality and typicality requirements for class certification set forth in Rule
23.[1]  Plaintiffs have attempted to finesse these requirements by choosing to file suit only against
the Department, thereby giving the appearance that they and their putative class members have
identical claims that lie against the Department only.  They also avoided explicitly requesting
relief in the form of an injunction barring continued action by employers to implement the
garnishment of their wages, focusing instead on declaratory relief against the Department.  These
tactics obscure the necessary role of each plaintiff's employer in the garnishment and cease-
garnishment processes.  The garnishment of the putative class members' wages is actually
implemented by their many different employers, not the Department, and only the employers can
cease the garnishment.  And it is an end to this garnishment, not just declaratory relief, that
Plaintiffs truly seek.  While the Amended Complaint focuses on declaratory relief against the
Department, *see* ECF No. 9, at 25, Plaintiffs' class certification motion suggests that Plaintiffs

---

[1] The Department does not contend that Plaintiffs have not satisfied Rule 23(a)'s
requirements concerning numerosity and adequate representation.

are seeking more than just declaratory relief, such as, *e.g.*, an actual end to "all administrative wage garnishments for the class."  ECF No. 10, at 2.  But this relief can be granted only by the employers, not the Department.  (The Department does not contend that it is not largely responsible for ensuring that borrowers receive any refunds due them.  However, the issue of refunds, which the Department is implementing in any event, is but a small part of this case and does not predominate sufficiently to justify certifying it as a class action.)

Thus, for the putative class members to receive the relief they desire, the employers are necessary parties pursuant to Rule 19(a)(1)(A), whose joinder is required.  That rule provides that a person "must be joined as a party if … in that person's absence, the court cannot accord complete relief among existing parties."  While it is true that the CARES Act requires *the Secretary* to suspend all wage garnishments, it is undisputed that, while the Secretary can direct the employer to cease garnishing its employee's wages, she cannot commandeer the employer's payroll processes and stop the garnishment for the employer.  Accordingly, the employers' presence in this action would be necessary for this Court to grant putative class members the complete relief they seek (whether explicitly or implicitly), and therefore, the employers must be joined pursuant to Rule 19.

Joinder of the employers is required notwithstanding Rule 19(d), which specifies that rule 19 "is subject to Rule 23."  Fed. R. Civ. P. 19(d).  This rule "simply requires [the court] to respect the language of Rule 23, but allows joinder to the extent its use does not conflict with Rule 23's provisions."  *Shimkus v. Gersten Co.*, 816 F.2d 1318, 1321 (9th Cir. 1987).  Rule 19(d) thus does not categorically exempt class actions from the joinder provisions.  *Thompson v. Jiffy Lube Int'l*, Inc., 505 F. Supp. 2d 907, 922 (D. Kan. 2007).  Thus, for example, "to harmonize the

requirements of Rule 19 and Rule 23," the Court may decline to require that all class members be joined as named *plaintiffs* as that would be inconsistent with the "utility of class actions." *Speaks Family Legacy Chapels, Inc. v. Nat'l Heritage Enters., Inc.*, No. 2:08-cv-04148-NKL, 2009 WL 2391769, at *8 (W.D. Mo. Aug. 3, 2009).  However, nothing in Rule 19(d) prohibits a court from finding, as it should here, that necessary parties must be joined as defendants to grant the full relief sought.

Recognition of the nature of the real relief the putative class members seek (an end to garnishment), and the ensuing conclusion that the employers must eventually be added to the action pursuant to Federal Rule of Civil Procedure 19(a)(1)(A), lead to the determination that this case does not meet Rule 23's requirements for class certification.  Specifically, once the Department has completed its role of directing the employer to cease garnishment—as it has done for all employers that had been actively garnishing wages, Brown Decl. ¶ 36—each plaintiff's situation is controlled solely by the actions of his or her particular employer.  As each employer presents different factual scenarios and possible legal defenses, the moving Plaintiffs cannot meet their burden to establish either commonality or typicality, as required by Federal Rule of Civil Procedure 23(a)(2), (3).

The commonality requirement asks whether "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "The commonality test is met when there is at least one issue, the resolution of which will affect all or a significant number of the putative class members."  *Radosti v. Envision EMI, LLC*, 717 F. Supp. 2d 37, 51 (D.D.C. 2010) (quoting *In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 26 (D.D.C. 2001)).  Plaintiffs fail to meet this burden because, at this point, the situations of putative class members are determined

by the actions of their employers and Plaintiffs have not identified "one issue" both common and pertinent to those employers' actions or inactions that would "affect" a significant number of the putative class members.  For example, one employer may not have received the Department's notices because their offices are closed, another one may have technical difficulties in implementing the change, and another one may simply be refusing to abide by the Department's request.  Obtaining the ultimate result of getting all these employers to cease garnishment does not present any sufficiently common issues of law or fact to justify litigating the borrowers' claims as a class action.

Plaintiffs' proposed class lacks typicality for the same reasons.  The typicality requirement of Rule 23(a)(3) ensures that the interests of the named representative align with the interests of the class.  As long as the claims "resemble or exhibit the essential characteristics of those of the representatives," Rule 23(a)(3) will be satisfied.  *Kas v. Fin. Gen. Bankshares, Inc*., 105 F.R.D. 453, 461 (D.D.C. 1984).  The typicality requirement is not met, however, if the proposed class representatives are subject to unique defenses.  *Id*.  As stated, here, each situation between a borrower and its employer is determined by the unique actions of the employer.  Plaintiffs' claims, now resolved, are not "typical" of other class members' claims because there is no evidence that they share an employer or even that the reasons for the employer's non-compliance with the Department's instructions are similar.  Thus, Plaintiffs have not shown that their claims are "typical" of any other class members and they fail to meet this requirement as well.

### III.   THE PROPOSED CLASS DOES NOT SATISFY THE REQUIREMENTS OF RULE 23(b)(2).

Under Rule 23(b)(2), Plaintiffs must also demonstrate that Defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  Plaintiffs cannot satisfy this requirement because the Court is precluded by statute from granting injunctive relief.  In addition, Plaintiffs have not established that a single uniform injunction or corresponding declaratory relief could provide relief to the entire class.

### A.  The Court Cannot Grant Injunctive Relief

The Higher Education Act provides that "no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Secretary or property under the Secretary's control."  20 U.S.C. § 1082(a)(2).  This anti-injunction provision applies to the program authorized under 20 U.S.C. ch. 28, subch. IV, Part B, and to the Direct Loan program under 20 U.S.C. § 1087e.  "Section 1082 prohibits all injunctive relief that would interfere with the ordinary administrative functions of the Department of Education," except "it does not protect the Secretary from being enjoined when he exercises powers that are clearly outside of his statutory authority."  *Calise Beauty Sch., Inc. v. Riley*, 941 F. Supp. 425, 428 (S.D.N.Y. 1996).  Here, the Secretary is not exercising powers "clearly outside" of her statutory authority. As a result, the Court cannot issue an injunction, even if one were warranted (which it is not), directing the Secretary or the Department to take action to effectuate the CARES Act.  *See Whayne v. U.S. Dep't of Educ*., 915 F. Supp. 1143 (D. Kan. 1996) (holding that statute precluded injunction against Department of Education from making further attempts to collect on debtor's student loan).

**B. Plaintiffs Have Not Established That A Single Uniform Injunction Could Provide Relief To The Entire Class, As Required By Rule 23(B)(2)**

Even putting aside the limitations of the Court's authority with regard to injunctive relief, Plaintiffs cannot satisfy the requirements for certification under Rule 23(b)(2) to pursue such relief. That rule requires that Plaintiffs establish that injunctive relief be "appropriate . . . with respect to the class as a whole." Plaintiffs have not shown that a uniform injunction could be formulated that would grant such relief "with respect to the class as a whole." This is because, again, each borrower presents a unique set of circumstances depending on his or her employer, and any injunction would therefore have to be tailored to address the reasons why that employer has not fully complied to date with the Department's cease-garnishment instructions.

As the Supreme Court recently explained,

> [t]he key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted – the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.

*Wal-Mart Stores, Inc.*, 131 S. Ct. at 2557 (internal quotations and citations omitted). "In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Id*. Most critically, "[i]t does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant." *Id*.; *see also Shook v. Bd. of Cty. Comm'rs of Cty. of El Paso*, 543 F.3d 597, 604 (10th Cir. 2008) ("'[A] class action may not be certified under Rule 23(b)(2) if relief specifically tailored to each class member would be necessary to correct the allegedly wrongful conduct of the defendant.'" (quoting 5 Moore's Fed. Prac. § 23.43(2)(b) at 23-195 (3d. 2000))). Thus, courts reject class certification where an appropriate remedy must

21

be determined for each plaintiff on a case-by-case basis.  *Gray v. Int'l Bhd. of Elec. Workers*, 73 F.R.D. 638, 641 (D.D.C. 1977) (denying class certification when "[a]ny relief in the form of promotions or compensatory seniority, for example, would require an assessment of each plaintiff's personal qualifications, demonstrated work habits, and numerous other aspects of his particular employment history").

Here, the individualized determinations (as well as procedural actions, such as adding employers as parties) that hypothetically may be necessary to determine the appropriate relief for each class member would destroy any semblance of cohesion.  Certification of a Rule 23(b)(2) class would therefore be inappropriate.  *See, e.g., Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 143 (3d Cir. 1998) (affirming decertification of (b)(2) class where "'too many individual issues exist which prevent this case from proceeding as a class action'"); *Cooper v. Southern Co.*, 205 F.R.D. 596, 628 (N.D. Ga. 2001) (refusing to certify (b)(2) class because "individualized issues predominate in this case to such an extent that management of the case would be exceptionally difficult."), *aff'd*, 390 F.3d 695 (11th Cir. 2004).

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' Amended Motion for Class Certification should be denied.

Dated:  June 2, 2020

Respectfully submitted,

JOSEPH H. HUNT
Civil Division

MARCIA BERMAN
Assistant Branch Director, Federal Programs
Branch

<u>/s/ Carol Federighi</u>
CAROL FEDERIGHI
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
Phone: (202) 514-1903
Email: carol.federighi@usdoj.gov

*Counsel for Defendants*

23