**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ELIZABETH BARBER, et al, *on behalf of themselves and all others similarly situated*,<br><br>　　　　　*Plaintiffs*,<br><br>　vs.<br><br>ELISABETH DEVOS, *in her official capacity as United States Secretary of Education*, and UNITED STATES DEPARTMENT OF EDUCATION,<br><br>　　　　*Defendants*. | Case No. 20-cv-1137-CJN |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR**
**AMENDED MOTION FOR CLASS CERTIFICATION**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 2

I.   The Class Can Be Certified Even If Named Plaintiffs' Claims Are Moot ........................ 2

II.  The Proposed Class Satisfies Rule 23(a)'s Requirements Of Commonality
     And Typicality ............................................................................................................. 5

III. The Proposed Class Satisfies The Requirements Of Rule 23(b)(2).................................. 8

     A.  The Higher Education Act Does Not Bar Injunctive Relief ......................................... 9

     B.  Plaintiffs Have Established That A Single Uniform Injunction Can Provide
         Relief To The Entire Class ......................................................................................... 12

CONCLUSION.................................................................................................................... 15

# TABLE OF AUTHORITIES

## Cases

*Adams v. Duncan*, 179 F. Supp. 3d 632, (S.D. W.Va. 2016) ......................................................... 12

*Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Pompeo*, No. 18-CV-01388 (TSC), 2020 WL 590121 (D.D.C. Feb. 5, 2020) ................................................................................................................................ 3

*Barnes v. Am. Tobacco Co.* 161 F.3d 127 (3d. Cir. 1998) ............................................................ 13

*Basel v. Knebel*, 551 F.2d 395 (D.C. Cir. 1977) ........................................................................... 3

*Calise Beauty Sch., Inc. v. Riley*, 941 F. Supp. 425 (S.D.N.Y. 1996) ................................ 9, 10, 11

*Canterbury Career Sch., Inc. v. Riley*, 833 F. Supp. 1097 (D.N.J. 1993) .................................... 11

*Coal. of New York State Private Career Sch., Inc. v. Riley*, No. 96-CV-429 (FJS), 1996 WL 678453 (N.D.N.Y. Nov. 15, 1996) ............................................................................. 11

*Cooper v. S. Co.*, 390 F.3d 695 (11th Cir. 2004) ......................................................................... 13

*Cty. of Riverside v. McLaughlin,* 500 U.S. 44, 51-52 (1991) ........................................................ 2

*Gearhart v. U.S. Dep't of Educ.*, No. 19-CV-00750-YGR, 2019 WL 5535798 (N.D. Cal. Oct. 25, 2019) ........................................................................................................................... 11

*Gray v. Int'l Bhd of Elec. Workers* 73 F.R.D. 638 (D.D.C. 1977) ................................................ 13

*Int'l Dealers Sch., Inc. v. Riley*, 840 F. Supp. 748 (D. Nev. 1993) ........................................ 11, 12

*J.D. v. Azar*, 925 F.3d 1291 (D.C. Cir. 2019) .......................................................................... 3, 5

*Mons v. McAleenan*, No. CV 19-1593 (JEB), 2019 WL 4225322 (D.D.C. Sept. 5, 2019) ............ 4

*Okla. Aeronautics, Inc. v. United States*, 661 F.2d 976 (D.C. Cir.1981) ..................................... 12

*Shimkus v. Gersten Co*, 816 F.2d 1318 (9th Cir. 1987) ................................................................. 7

*Shook v. Bd. of Cty. Commissioners of Cty. of El Paso*, 543 F.3d 597 (10th Cir. 2008) .............. 13

*Sosna v. Iowa*, 419 U.S. 393 (1975) .............................................................................................. 2

*Speaks Family Legacy Chapels, Inc. v. Nat'l Heritage Enters, Inc.*, No. 2:08-cv-04148-NKL, 2009 WL 2391769 (W.D. Mo. Aug. 3, 2009) ............................................................................. 7

*Student Loan Mktg. Ass'n v. Riley,* 907 F. Supp. 464 (D.D.C.1995) ........................................ 9, 12

*Thompson v. Jiffy Lube, Int'l, Inc.*, 505 F. Supp. 2d 907 (D. Kan. 2007) ...................................... 7

*U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388 (1980) ................................................................ 2

*Ulstein Mar., Ltd. v. United States*, 833 F.2d 1052 (1st Cir. 1987) ............................................ 12

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ........................................................... 12, 13

*Whayne v. U.S. Dep't of Educ.*, 915 F. Supp. 1143 (D. Kan. 1996) ............................................ 10

## Statutes

5 U.S.C. § 706 ............................................................................................................................ 12

20 U.S.C. § 1082(a)(2) ............................................................................................................ 9, 10

20 U.S.C. §1095a ....................................................................................................................... 1

28 U.S.C. § 1331 ...................................................................................................................... 12

31 U.S.C. § 3720D ..................................................................................................................... 2

## Other Authorities

U.S. Dep't of Educ., Sixth Monthly Compliance Report in response to ECF 130, *Manriquez v. Devos*, No. 17-cv-07210 (SK), Dkt. 205-2 (N.D. Cal. 2019) ...................................................... 4

## Rules

Fed. R. Civ. P. 12 ....................................................................................................................... 7

Fed. R. Civ. P. 19 ................................................................................................................... 6, 7

Fed. R. Civ. P. 23 ............................................................................................................... *Passim*

## Treatises

7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure Section (3d ed. 2005) ............................................................................................................... 14

## Public Laws

CARES Act, Pub. L. 116-136 § 3513, 134 Stat 281 (2020) ................................................. *Passim*

## INTRODUCTION

In their opposition to Plaintiffs' Motion for Class Certification, Defendants United States Department of Education and Secretary Elisabeth DeVos (collectively, the "Department") readily admit that thousands of borrowers continue to have their wages garnished to pay student loan debts, in direct violation of the CARES Act. Even with the passage of time and opportunity to resolve the problem, the Department also now admits that *more* borrowers are being subjected to wage garnishment than it reported to the Court on May 11, 2020. Notwithstanding that the Department has made progress toward full compliance with the law since March 27, that admission, by itself, demonstrates that the harm to the class is ongoing, the claims of the proposed class are not moot, and the proposed class satisfies the requirements for certification. As of last week, more than 15,000 borrowers were still being subject to the same involuntary collection measure that federal law has expressly and universally prohibited since March 27.

Despite its efforts to comply with the law, *see e.g., see* Decl. of Mark Brown (Dkt. 20-1) ("Brown Decl.") ¶¶ 23–37, the Department's arguments for why the class should not be certified depend almost entirely on styling itself as the passive participant in its own wage garnishment process, with employers exercising ultimate control. *See* Defs.' Opp. Br. (Dkt. 20) ("Def. Br") at 7 ("[T]he garnishment of wages under AWG is actually performed by the individual employer as part of the employer's payroll process, not by defendant United States Department of Education."). But the order of mechanical operations that the Department has arranged with employers—and now purports to be incapable of reversing—does not relieve the Department of authority or responsibility for wage garnishment under the Higher Education Act ("HEA"), 20 U.S.C. §1095a, or for suspending it, as required by the CARES Act. Those laws expressly designate the Department as the actor responsible for starting *and stopping* wage garnishment.

Indeed, just as the HEA and Debt Collective Improvement Act ("DCIA"), 31 U.S.C. § 3720D, vest the Department with authority to garnish wages, the CARES Act states without qualification that "*the Secretary* shall suspend all involuntary collection."

The President and Congress were clear in their intent: the Department must immediately stop wage garnishment for federal student loan borrowers. And indeed, the Department has carried out that directive for a large number of borrowers. Nevertheless, the Secretary's failure to end the practice for approximately 15,000 borrowers, and to provide refunds for at least 21,000, demands attention. The failure to cease wage garnishment because *employers* have not received or complied with her directives is a circumstance that aggrieved members of the class have in common, not one that distinguishes them from each other.

The proposed class should be certified.

## ARGUMENT

### I.   The Class Can Be Certified Even If Named Plaintiffs' Claims Are Moot

The Department effectively concedes that live claims existed at the time the Amended Complaint and Amended Motion for Class Certification were filed. *See* Decl. of Mark Brown (Dkt. 20-1) ("Brown Decl.") ¶ 48. *See also* Jenkins Decl. (Dkt 11-1) & Exhibits. The Department nevertheless contends that class certification must be denied because it has since stopped garnishing Named Plaintiffs' wages and has provided them refunds. Def. Br. at 14. The "inherently transitory" exception to the mootness doctrine provides otherwise.

This exception is recognized for class action claims that "are so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 399 (1980); *see also Cty. of Riverside v. McLaughlin,* 500 U.S. 44, 51-52 (1991); *Sosna v. Iowa*, 419 U.S. 393, 402 n.11 (1975) ("There may be cases in which the controversy

involving the named plaintiffs is such that it becomes moot as to them before the district court

can reasonably be expected to rule on a certification motion."). The exception applies when "the

individual claim might end before the district court has a reasonable amount of time to decide

class certification, and . . . *some class members will retain a live claim at every stage of*

*litigation.*" *J.D. v. Azar*, 925 F.3d 1291, 1311 (D.C. Cir. 2019) (emphasis added). "Where a live

controversy exists for class members, mootness alone does not render the named Plaintiffs

inadequate." *Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the*

*United States v. Pompeo*, No. 18-CV-01388 (TSC), 2020 WL 590121, at *12 (D.D.C. Feb. 5,

2020) (citing *Basel v. Knebel*, 551 F.2d 395, 397 n.1 (D.C. Cir. 1977)).

The Department argues that Plaintiffs cannot satisfy the second *Azar* prong, *i.e.*, that

there are "some class members [who] will retain a live claim at every stage of litigation." *Azar*,

925 F.3d at 1311; Def. Br. at 15. But the Department readily admits in its brief, and in the

Declaration of Mark Brown (the Chief Operating Officer of Federal Student Aid), that there are

many thousands of class members who *do* have such live claims. Brown Decl. ¶¶ 40, 46. It is

hard to imagine any stronger evidence to satisfy the *Azar* criteria.

Having no argument that there aren't tens of thousands of live claims right now, the

Department retreats to its "goal and expectation" that "any remaining garnishments will soon

cease" and that all individuals will be provided refunds. Def. Br. at 15. It goes on to say "there is

no certainty that there will continue to be class members with live claims as the litigation

progresses—indeed the hope is to the contrary." *Id.* Plaintiffs also hope that the Department will

cease the garnishment for all class members and provide all refunds—then the case will be over.

But *Azar* and its progeny do not require Plaintiffs to prove with "certainty" that their live claims

will persist into the future, nor do they allow the Department to overcome its own admission that

thousands of claims are live now on the basis of its "goals," "expectations," or "hope" that they

will not be live at some point in the future. *Cf. Mons v. McAleenan*, No. CV 19-1593 (JEB), 2019

WL 4225322, at *8 (D.D.C. Sept. 5, 2019) (finding that plaintiffs satisfy the second *Azar* prong

based on evidence that thousands of members of the proposed class continued to suffer the harm

at issue).

Not only are the Department's hopes and expectations legally irrelevant, they are belied

by the very declaration upon which they rely. With respect to ongoing garnishments, nearly 40%

of the CARES Act's six month emergency period has expired, and the Department is still

garnishing wages for over 15,000 people, all of whom are members of the putative class.[1] This is

an *increase* in the number of active garnishments since the week ending on May 14, when the

Department reported approximately 12,000 active garnishments. Dkt. 17 at n.2.

In addition, the Department has repeatedly claimed that it "cannot and does not control"

the actions of employers and, by extension, cannot control its own wage garnishment process.

*See* Dkt. 17 at 5; Def. Br. at 1; *see also* U.S. Dep't of Educ., Sixth Monthly Compliance Report

in response to ECF 130, *Manriquez v. Devos*, No. 17-cv-07210 (SK), Dkt. 205-2 at 10 (N.D. Cal.

2019) ("Since the employer is actually the one that garnishes wages, the Department does not

have the capability to prevent employers from continuing to garnish wages following a stopped

collection order."). In fact, the Department declares that it "cannot directly determine when an

---

[1]    The Department's opposition provides percentages but does not disclose the total number of ongoing garnishments. On May 11, 2020, the Department stated that "[a]s of March 13, 2020, there were approximately 390,000 borrowers subject to wage garnishment." Dkt. 14 at ¶ 2. Using this disclosure as a baseline, it appears that approximately 15,000 borrowers were subject to wage garnishment for the week ending on May 28, 2020. *See* Brown Decl. ¶ 40 ("The best information available to the Department indicates that for the week ending on May 28, employers garnished approximately 4 percent of the borrowers in the original pool covered by the CARES Act."); Def. Br. at 2 (noting the 4 percent figure); Dkt. 17 at n. 2 (explaining that 3% of the original pool of garnishees is approximately 12,000 borrowers).

employer has cancelled garnishment for its employees with federally-held student loans," and only knows who has been garnished *after* such a garnishment has taken place. Brown Decl. ¶ 40. The Department cannot assure Plaintiffs and the Court that all members of the proposed class will soon receive relief, while simultaneously claiming not to have enough control over the wage garnishment system to provide that relief.

With respect to refunds, the Department explains in its brief that it is "providing all [eligible] individuals with any refunds to which they are entitled." Def. Br. at 15. However, according to the Brown Declaration, there are "approximately 21,000 borrowers with invalid addresses on file," and refunds for each of these borrowers are "on hold." Brown Decl. ¶¶ 45-46. Each of these 21,000 borrowers is a member of the putative class. While the Department states that it "continues work to validate addresses," for these borrowers, *id.* ¶ 46, it offers no plan for how, or timetable for when, they will receive refunds.

On this record, the second prong of *Azar* is satisfied. 925 F.3d at 1311-12.

## II.  The Proposed Class Satisfies Rule 23(a)'s Requirements Of Commonality And Typicality

Plaintiffs' claims derive from the plain language of Section 3513(e) of the CARES Act, which requires *the Secretary*—and not a third party—to cease involuntary collection, including a halt of administrative wage garnishment. In this regard, Named Plaintiffs and the class they seek to represent present common questions of fact, and *identical* questions of law, as outlined in their Amended Motion. *See* Dkt. 10 at 9-11. These common issues are typical of the class members, as well. *Id.* at 11-12. Each of the Named Plaintiffs and each member of the proposed class experienced illegal wage garnishment after the CARES Act went into effect because of the Department's actions.

In response to Plaintiffs' commonality and typicality arguments, the Department contends only that the situations of Named Plaintiffs and proposed class members are different because the individuals have different employers. Def. Br. at 18-19. But this is legally irrelevant to Plaintiffs' claims and ignores the plain language of the CARES Act, which requires *the Secretary* to cease garnishing the wages of affected borrowers. *See* Def. Br. at 17 (acknowledging that "it is true that the CARES Act requires *the Secretary* to suspend all wage garnishments[.]") (emphasis in original). Congress did not require employers to stop garnishing wages; indeed, such an approach would have been inconsistent with the entire wage garnishment system, which grants the Department authority to start and stop garnishment. Protest as they may, the Department started the process and the Department has the obligation to stop it.

Consistent with this notion, the administrative wage garnishment system that the Department describes in detail, *see* Def. Br. at 4-6; Brown Decl. ¶¶ 7-19, was neither conceived of, nor mandated by, Congress. Rather, the Department designed, implements, and manages the process. It makes sense, therefore, that Congress required the Secretary, and the Secretary alone, to turn her system off. But according to the Department, it has already satisfied all of its legal obligations under the CARES Act by *trying* to get employers to stop, even though tens of thousands of borrowers continue to have wages garnished and/or are awaiting refunds. Clearly, this is not what Congress and the President intended when passing and signing legislation stating that "the Secretary shall suspend all involuntary collection related to the loan, including . . . wage garnishment." CARES Act § 3513(e)(1).

Much of the Department's argument that the commonality and typicality requirements aren't satisfied is given over to a convoluted assertion that class members' employers are necessary parties pursuant to Federal Rule of Civil Procedure 19(a)(1)(A); Def. Br. at 17. The

Department has not raised this argument in a Fed. R. Civ. P. 19 motion to join indispensable parties. Nor did it file a Fed. R. Civ. P. 12(b)(7) motion to dismiss for failure to join indispensable parties. Instead, and rather than giving the issue the treatment that would be required under either of those approaches, the Department offers the issue as a makeweight for the absence of any serious argument that potential class members are not commonly entitled to have the Department cease garnishing wages and have not commonly suffered the harms associated with such garnishment.

The cases cited by the Department stand only for the proposition that class actions are not entirely quarantined from the application of Rule 19. None suggest that the Court can deny class certification for failure to join indispensable parties, as the Department appears to be arguing. In *Shimkus v. Gersten Co.*, the court *sua sponte* applied Rule 19 to *add* a second plaintiffs' class of non-black minorities to the existing class of black plaintiffs getting relief. 816 F.2d 1318 (9th Cir. 1987). *Thompson v. Jiffy Lube, Int'l, Inc.* involved a fully briefed motion to dismiss for failure to join indispensable parties, not a motion for class certification; the Court addressed Rule 23 only in passing, to affirm that the filing of a class action does not preclude the application of Rule 19 where there is no conflict between Rules 19 and 23, a position that plaintiffs did not assert. 505 F. Supp. 2d 907 (D. Kan. 2007). *Speaks Family Legacy Chapels, Inc. v. Nat'l Heritage Enters, Inc.* also involved a Rule 12(b)(7) motion to dismiss for failure to join indispensable parties, not a class certification motion, and denied the motion because Rule 19 "does not require joinder of every tortfeasor [as it] would be inequitable to prevent the Plaintiffs from recovering from some tortfeasors just because another tortfeasor cannot be sued." No. 2:08-cv-04148-NKL, 2009 WL 2391769 at *8 (W.D. Mo. Aug. 3, 2009).

None of these cases address the effect of purportedly indispensable parties on Rule 23's commonality and typicality requirements, and this Court should not venture into such unplowed territory, particularly where the Department has not even attempted to satisfy Rule 19(b)'s multi-factor test for demonstrating that parties are indispensable.

Finally, even if the various employers were relevant to class treatment of the Department's obligation to cease illegal garnishments, they are most certainly not relevant to whether the Department is providing refunds of the amounts illegally garnished. *See* Am. Compl. Request for Relief at ¶ 7. The Department concedes as much. Def. Br. at 17 ("The Department does not contend that it is not largely responsible for ensuring that borrowers receive any refunds due them."). The Secretary attempts to minimize this issue by placing it in a parenthetical and stating that refunds are "but a small part of this case." *Id.* But her attempts to minimize the issue flout the *entire purpose* of this provision of the CARES Act, which is to stop seizing funds from struggling student loan borrowers due to the pandemic. *See* Am. Compl. ¶¶ 28-29 (quoting, for example, Senator McConnell's statement about how the act "puts urgently-needed cash in the hands of American workers and families," does so "as quickly as possible," and "do[es] it fast."). According to the Department, millions of dollars in refunds remain outstanding, and there are at least 21,000 borrowers whose refunds are on hold because the Department does not have a valid address for them on file. Brown Decl. ¶¶ 45-46. Each of these borrowers is a member of the putative class with common issues that have nothing to do with their employer.

## III. The Proposed Class Satisfies The Requirements Of Rule 23(b)(2)

The Department contends that Plaintiffs do not satisfy Rule 23(b)(2) because (i) the Court is precluded by the HEA from granting injunctive relief and (ii) Plaintiffs have not established that a single uniform injunction or corresponding declaratory relief could provide relief to the entire class. Neither argument has merit.

## A.  The Higher Education Act Does Not Bar Injunctive Relief

The relief Plaintiffs seek in this case includes a series of declarations ordering the Department to take action in order to remedy its ongoing violation of the CARES Act. *See* Am. Compl. at Request for Relief ¶¶ 4-5. To the extent such declaratory relief is considered injunctive, this Court has ample authority to order that relief.[2]

The Department, however, asserts otherwise, not only characterizing (without discussion) the relief sought as entirely "injunctive," but arguing that under HEA § 432(a)(2), 20 U.S.C. § 1082(a)(2), this Court "cannot issue an injunction, even if one were warranted (which it is not)." Def. Br. at 20. While the HEA's general waiver of sovereign immunity contains a limited exception for injunctive relief, the Department concedes that the HEA's anti-injunction provision "does not protect the Secretary from being enjoined when [s]he exercises powers that are clearly outside of [her] statutory authority." Def. Br. at 20 (citing *Calise Beauty Sch., Inc. v. Riley*, 941 F. Supp. 425, 428 (S.D.N.Y. 1996)). The Department does not explain how or why it believes that the Secretary is not exercising her powers "clearly outside" of her statutory authority; rather, they assert in a conclusory manner that this exception to the anti-injunction language does not apply.

In the CARES Act, Congress and the President divested the Secretary of all authority to garnish wages of federal student loan borrowers for a six-month period. Indeed, the Department acknowledges that "the relevant provisions of the CARES Act includes a provision *requiring*

---

[2]    Even if this Court accepts the Department's arguments about injunctive relief, nothing in 20 U.S.C. § 1082(a)(2) prevents the court from issuing declaratory relief. *See, e.g.*, *Student Loan Mktg. Ass'n v. Riley,* 907 F. Supp. 464, 474 (D.D.C. 1995), *aff'd and remanded,* 104 F.3d 397 (D.C. Cir. 1997), *on reh'g* (Mar. 11, 1997) (holding, in a case that did not seek injunctive relief, that § 1082(a)(2) "does not preclude award of declaratory relief, should the facts warrant").

defendant Secretary of Education to 'suspend all involuntary collection related to' federally held student loans, such as administrative wage garnishment." Def. Br. at 1 (emphasis added). Yet somehow, the Department also asserts that its ongoing—and plainly illegal—wage garnishment is not beyond the scope of its authority. This argument fails because the Department unambiguously and admittedly does not have the statutory authority to garnish wages until September 30, 2020. But that is precisely what it is doing.

The cases cited by the Department establish the flaws in its reasoning. In *Calise*, the plaintiffs were two institutions of higher education that sought an injunction to prohibit the Department from rendering them ineligible to participate in the federal student loan programs. *Calise Beauty Sch., Inc. v. Riley*, 941 F. Supp. 425 (S.D.N.Y. 1996). Although the Court acknowledged the anti-injunction provision of 20 U.S.C. § 1082, it went on to note that "a court may *always* enjoin a federal officer who acts beyond his powers, even where a statute appears to prohibit injunctive relief." *Calise*, 941 F. Supp. at 428. The Court then distinguished situations in which the Department improperly exercised an authorized function from those in which the Department took an action that was unauthorized in the first instance. *Id.* at 428-29. Ultimately, the court concluded that the allegations in that case related to the manner in which the Department carried out its authorized functions, not—as is the case here—whether the Department exceeded the bounds of its authorities in the first instance. *Id.* at 429-30 ("Plaintiffs have not alleged that Secretary Riley failed to perform his enumerated functions, but rather that in the performance of these functions he unlawfully violated a number of nondiscretionary rules and regulations.").[3]

---

[3]     The Department's citation to *Whayne v. U.S. Dep't of Educ.*, 915 F. Supp. 1143, 1145 (D. Kan. 1996) does not help its case. There, the plaintiffs sought to enjoin the Department "from

Thus, even under the rationale of *Calise*, the anti-injunction provision does not apply here because the Department has acted, *inter alia*, "in excess of its statutory jurisdiction or authority." Am. Compl. ¶ 110. Moreover, the relief Plaintiffs seek includes a declaration that the Department's continuing garnishment of wages is "in excess of statutory authority." *Id.* at Prayer for Relief ¶ 3. Alternatively stated, because Plaintiffs seek "specific relief requiring the Secretary of Education to perform a duty imposed by law" and "the conduct alleged is determined to be beyond the statutory limits on the Secretary's power," this Court has full authority to enjoin the Department from continuing its illegal garnishments. *See Gearhart v. U.S. Dep't of Educ.*, No. 19-CV-00750-YGR, 2019 WL 5535798, at *2 (N.D. Cal. Oct. 25, 2019) ("[S]pecific relief requiring the Secretary of Education to perform a duty imposed by law may nevertheless be ordered, even in the face of the prohibition in section 1082, if the conduct alleged is determined to be beyond the statutory limits on the Secretary's power."); *Canterbury Career Sch., Inc. v. Riley*, 833 F. Supp. 1097, 1102-4 (D.N.J. 1993) (collecting cases and holding that where the Secretary of Education "has exceeded the scope of [her] authority, then this Court has jurisdiction to grant appropriate injunctive relief notwithstanding the 'anti-injunction' provision."); *Int'l Dealers Sch., Inc. v. Riley*, 840 F. Supp. 748, 749 (D. Nev. 1993) (explaining that "if the Department is still violating its statutory mandate . . . it would be acting outside its authority, thus allowing for extraordinary relief," including a preliminary injunction.); *cf. Coal. of New York State Private Career Sch., Inc. v. Riley*, No. 96-CV-429 (FJS), 1996 WL 678453, at

---

making further attempts to collect on the plaintiff's student loan." It does not appear that Plaintiff contested that the Department had no authority to collect on his loan, but rather that "he should not be required to pay back his loan, because he derived no benefit from his education." *Id.* There is simply no suggestion that the Department was acting beyond the scope of its authority to collect loans.

*2 (N.D.N.Y. Nov. 15, 1996) (invoking, as in *Calise*, the anti-injunction bar *because* the plaintiff "does not allege that the Secretary acted beyond the scope of his statutory authority by violating an express provision of the HEA").[4]

The HEA's anti-injunction provision does not bar injunctive relief for a second reason, namely that Plaintiffs have brought their claims under section 706 of the Administrative Procedure Act, invoking this Court's "federal question" jurisdiction under 28 U.S.C. § 1331. In such a case, and as this Court has noted previously: "the anti-injunction clause of § 1082(a)(2) does not preclude relief for APA claims." *Student Loan Mktg. Ass'n v. Riley*, 907 F. Supp. 464, 474 (D.D.C. 1995), *aff'd and remanded,* 104 F.3d 397 (D.C. Cir. 1997), *on reh'g* (Mar. 11, 1997); *Adams v. Duncan*, 179 F. Supp. 3d 632 (S.D. W.Va. 2016) (collecting cases and noting that "[m]any federal district and circuit courts have concluded the APA grants federal courts subject matter jurisdiction over cases seeking declaratory *and injunctive* relief for injuries caused by the Secretary's decisions made under the HEA." (emphasis added)).

### B.  Plaintiffs Have Established That A Single Uniform Injunction Can Provide Relief To The Entire Class

Finally, relying on *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 361 (2011), the Department argues that Plaintiffs cannot establish that a single uniform injunction or declaratory judgment could issue to the class as a whole. *Walmart*, of course, involves a private defendant, a

---

[4]      *Cf. Ulstein Mar., Ltd. v. United States*, 833 F.2d 1052, 1057 (1st Cir. 1987) (examining nearly identical anti-injunction language in the Small Business Act and concluding that it "should not be interpreted as a bar to judicial review of agency actions that exceed agency authority where the remedies would not interfere with internal agency operations"). Other courts have looked to the Small Business Act when analyzing the anti-injunction provision of the HEA, due to the similarities between the statutes. *See, e.g.*, *Int'l Dealers Sch., Inc. v. Riley*, 840 F. Supp. 748, 749 (D. Nev. 1993) (concluding that the HEA's anti-injunction provision did not apply and citing an SBA case, *Okla. Aeronautics, Inc. v. United States*, 661 F.2d 976, 977 (D.C. Cir. 1981)).

demand for monetary relief, and, most important for this case's purposes, distinguishing factors among individual members of the class that would determine their entitlement to relief. *See id.* at 366-67 (class members' claims for backpay to remedy gender discrimination require individual proceedings to determine scope of individual relief and whether employment opportunities were denied for lawful reasons). Such class member-specific characteristics also explain why classes were not certified in the other cases that the Department relies on in this section of its brief.[5]

The Department is not arguing that the members of the proposed class in this case have distinguishing characteristics that affect their entitlement to relief—nor could they, because the CARES Act provision they rely upon is unequivocal and universal. Indeed, the only characteristics that place them in the class—the only thing the Court ever needs to know about them in order to certify the class and fashion relief that benefits them—are (a) that the Department exercised its statutory authority to subject them to garnishment in the first instance; (b) the Department has failed to carry out its statutory responsibility to stop garnishing them pursuant to the CARES Act; and (c) the Department has failed to remedy its statutory violation by refunding the improperly garnished wages.

---

[5]     *See Shook v. Bd. of Cty. Commissioners of Cty. of El Paso*, 543 F.3d 597, 604–05 (10th Cir. 2008) ("Presumably the 'circumstances that pose a substantial risk of serious harm' depend on the nature and severity of the individual's illness, but where a practice may only be enjoined by reference to circumstances that vary among class members … class-wide relief may be difficult to come by."); *Gray v. Int'l Bhd of Elec. Workers* 73 F.R.D. 638, 641–42 (D.D.C. 1977) (court could not "grant the exact relief requested in this remaining portion of plaintiffs' prayer [backpay and damages to compensate for racial discrimination] without first making an independent determination of each plaintiff's entitlement to such relief on the basis of a detailed, personalized evidentiary treatment."); *Cooper v. S. Co.*, 390 F.3d 695, 721 (11th Cir. 2004) (level of monetary damages each class member was entitled would require detailed, case-by-case fact finding); *Barnes v. Am. Tobacco Co.* 161 F.3d 127, 143 (3d. Cir. 1998) (issues of addiction, causation, and the defendant's affirmative defenses to these issues were all too individualized to warrant certification of class of smokers).

Instead, the Department argues that the Court cannot order class wide relief because of distinctions among third parties, the employers that class members work for, who have allegedly (there is no record evidence about individual employers) been non-compliant with the Department's communications about ending garnishments. As a result, the Department suggests, "any injunction would . . . have to be tailored to address the reasons why [each] employer has not fully complied to date with the Department's cease-garnishment instructions." Def. Br. at 22. The Department proposes to pit employees versus employers to resolve this impasse, *id.* at 17-18, even though the CARES Act places the responsibility directly on it.

The Department cites no authorities for the proposition that a 23(b)(2) class can't be certified because the government's discharge of its statutory duties involves its own relationships with and management of individual, private third parties. Such a threshold for class certification is a recipe for wholesale abdication of government agencies' legal responsibilities, in this case relieving the Department of responsibility for the garnishment system that it unilaterally conceived, implements, and manages. The key inquiry to be made is whether *the defendant's* conduct would affect all persons similarly situated, such that the defendant's acts apply generally to the whole class, 7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure Section § 1775 (3d ed. 2005) (emphasis added), not third parties.

The Department's own declaration confirms that it can act in ways that benefit the whole class—notwithstanding challenges posed by individual employers. The declaration describes an escalating set of actions involving phone calls, mail, and certified mail carried out by the Department's private contractor that—had they not been taken voluntarily—would be examples of the kinds of class wide injunctive relief available in a case like this. Brown Decl. ¶¶ 23-37. The Department reasonably credits itself for these positive steps, which demonstrate that it has

the capacity to carry out what Congress directed it to do. Any suggestion that class certification is unavailable because it is at the mercy of private employers is belied by the Department's own actions.

What the declaration still lacks, however, are further steps that will be taken to suspend the garnishments of the 15,000 borrowers remaining or to provide refunds to the 21,000 borrowers with invalid addresses. This is where the Court comes in—it has the authority to require more and faster actions from the Department. It is within the authority of this Court to issue a declaratory judgment on behalf of the putative class that the Department has not fulfilled the mandate that Congress imposed upon it through the CARES Act to immediately cease all garnishment of borrowers' wages. Further, the Court has the authority to order the Department to promptly take further actions to remediate the flaws in its garnishment and refund system, and report to the Court on the steps taken and the results achieved until all garnishments have been halted and all improperly garnished wages are properly refunded to the putative class members.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court certify a class under Rule 23(b)(2) and appoint Student Defense and NCLC as class counsel.

Dated: June 4, 2020                                 Respectfully submitted,

By: */s/ Alexander S. Elson*
Daniel A. Zibel (D.C. Bar No. 491377)
Eric Rothschild (D.C. Bar No. 1048877)
Alexander S. Elson (D.C. Bar No. 1602459)
National Student Legal Defense Network
1015 15th Street NW, Suite 600
Washington, DC 20005
(202) 734-7495
dan@defendstudents.org
eric@defendstudents.org
alex@defendstudents.org

Stuart T. Rossman* (BBO No. 430640)
Persis Yu* (BBO No. 685951)
National Consumer Law Center
7 Winthrop Square, Fourth Floor
Boston, MA 02110
P: (617) 542-8010
srossman@nclc.org
pyu@nclc.org

*Attorneys for Plaintiff and Proposed Class*

*Admitted pro hac vice*