**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ELIZABETH BARBER, et al, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>ELISABETH DeVOS, in her official capacity as United States Secretary of Education, and UNITED STATES DEPARTMENT OF EDUCATION,<br><br>    Defendants. | Civil Action No. 1:20-cv-01137-CJN |

<u>**JOINT STATUS REPORT**</u>

Pursuant to the Court's minute order of May 28, 2020, the parties hereby submit the following Joint Status Report:

<u>**Defendants' Report:**</u>

1.      The efforts taken as of June 2, 2020, by the United States Department of Education ("Department"), to instruct employers to halt administrative wage garnishment ("AWG") and to refund borrowers whose wages were already garnished are set forth in the Declaration of Mark A. Brown, Chief Operating Officer, Federal Student Aid, U.S. Department of Education, filed on June 2, 2020 (ECF No. 20-1) ("Brown Decl.").

2.      In that declaration, General Brown stated that, as of May 16, 2020, the Department's contractor, Maximus Federal Servicers ("Maximus"), reported that it had notified, either by mail or telephone call, 100% of employers that had been actively garnishing wages as of May 11, 2020, instructing them to stop garnishments for Department-held debt.  Brown Decl. ¶ 36.

3.      General Brown explained that the Department cannot directly determine when an employer has canceled garnishment for its employees with federally-held student loans.  Instead, the Department measures on a weekly basis the percentage of borrowers for whom it has received an AWG payment from an employer, during the week at issue, compared against the total number of unique borrowers for which the Department has received an AWG payment since March 13, 2020 (the latter is also referred to in the Declaration as "the original pool covered by the CARES Act").  Brown Decl. ¶ 40.  In other words, the percentages provided represent a snapshot of the garnishment payments received by the Department from employers during the given week.

4.      As reported in the Joint Status Report filed on May 11, 2020 (ECF No. 11), for the week ending May 7, 2020, the Department received payments from garnishment by employers for approximately 14% of the total number of unique borrowers for which the Department has received an AWG payment since March 13, 2020.

5.      General Brown stated that, for the week ending May 14, 2020, the Department received payments from garnishments by employers for fewer than 3 percent of the total number of unique borrowers for which the Department has received an AWG payment since March 13, 2020.  He further reported that the best information available to the Department indicates that, for the week ending on May 28, the Department received payments from garnishments by employers for approximately 4 percent of the total number of unique borrowers for which the Department has received an AWG payment since March 13, 2020.  Brown Decl. ¶ 40.

6.      For the week ending on June 4, 2020, the Department received payments from garnishments by approximately 2,500 employers affecting 1.5% percent of the total number of

2

unique borrowers for which the Department has received an AWG payment since March 13, 2020.

7.      The Department's contractor, Maximus, continues to attempt to re-contact by phone or other means, if available, those employers who continue to send in garnishment payments, prioritizing employers by the number of employees they are garnishing pursuant to Department orders.

8.      With regard to refunds, General Brown reported, that as of June 1, 2020, the Department has issued AWG refunds totaling over $172 million to over 370,000 borrowers, representing over 94% of the wages garnished since March 13.  Brown Decl. ¶ 45.

9.      As of June 4, 2020, the Department has now issued AWG refunds totaling over $174 million to over 371,000 borrowers, representing over 95% of the wages garnished since March 13, 2020.  Refunds for the remaining borrowers have been initiated by FSA and are either being actively processed or on hold because the borrowers owed a refund have an invalid address on file.  In the meantime, all garnishment funds received by the Department are applied to each borrower's account until such time as a refund can be processed and sent to the borrower.

10.     As of June 2, 2020, the Department reported that there were 21,000 borrowers without valid addresses on file.  Brown Decl. ¶ 46.

11.     As of June 4, 2020, the Department reports that there are 19,000 borrowers without valid addresses on file.  The Department continues to work to validate addresses by sending emails to the borrowers (most if not all of whom have email addresses on file) instructing them to how to access and use the Debt Resolution Portal to confirm their address.

12.     The Department will continue with the foregoing efforts to obtain employer compliance and to deliver refunds to all borrowers who are owed one.  The Department has voluntarily provided Plaintiffs and the Court with information previously in this case, and is providing the information in this report pursuant to the Court's minute order.  But the ongoing detailed reporting Plaintiffs request below would be wholly unjustified.  Defendants' time to respond to the complaint has not even run yet, and there is no longer a motion for preliminary injunction before the Court, because Plaintiffs withdrew it.  In addition, unless and until a class is certified (and the Court should decline to do so for the reasons set forth in Defendants' Opposition to Plaintiffs' Amended Motion for Class Certification (ECF No. 20)), there is no plaintiff in the case with standing, and therefore the Court lacks subject-matter jurisdiction over this case (as Defendants intend to demonstrate when they respond to the complaint).  *See* ECF No. 20 at 13-14.  Further, the detailed reporting demanded by Plaintiffs would be unduly burdensome as portions of it require information in a format not maintained or easily generated by the Department.  The Department should not be required to divert its efforts to help borrowers in order to satisfy Plaintiffs' demand for information to which they are not entitled.

13.     Defendants have continued to encourage Plaintiffs' counsel to put any borrower still being garnished in touch with the Department, in order to provide information to direct the Department's ongoing to efforts to encourage the few remaining employers who are garnishing wages to stop. The only specific borrower or employer information provided to date, however, has been with regard to the garnishment of named Plaintiffs.

4

**Plaintiffs' Position Regarding Information Needed to Assess Compliance with CARES Act:**

14.     Having learned from the Brown Declaration that the Department does not know the total number of outstanding garnishments and can only provide snapshots during a given week, Plaintiffs believe that regular, ongoing reporting to the Court is necessary. This reporting should be carried out using a standardized template so that the Department's progress toward full compliance can be accurately tracked over time.

15.     Plaintiffs suggest that such reporting be filed every other Monday until such time that the parties agree they are no longer necessary or until otherwise ordered by the Court.

16.      In order to understand the precise status of the Department's efforts to stop ongoing garnishments, Plaintiffs request that these ongoing reports provide the following information:

    a.   The number of unique borrowers who remain subject to wage garnishment;

    b.   The number of unique employers who have:

        i.   Not stopped garnishing wages for at least one employee;

        ii.   Not stopped garnishing wages for at least ten employees;

        iii.   Not stopped garnishing wages for at least fifty employees;

    c.   With respect to all employers notified by mail to stop garnishing during the reporting period, the number of notices confirmed as successfully delivered by the United States Postal Service;

    d.   A description of the "other means," *see supra,* ¶ 7, that the Department (or Maximus) is using to contact employers who continue to garnish wages, as

5

well as a description of all new efforts used to halt ongoing garnishments during the reporting period;

17.     With respect to refunds, in order to understand the relief that has been provided to remedy past and ongoing wage garnishment, Plaintiffs request that these ongoing reports provide the following information:

   a.   The total dollar amount of wages garnished since March 13, 2020;

   b.   The total dollar amount of refund checks sent to borrowers;

   c.   The total dollar amount of refund checks cashed or deposited;

   d.   The number of unique borrowers who have been sent refund checks but have not cashed a single check;

   e.   The number of unique borrowers who do not have a valid address on file;

   f.   Of those borrowers without a valid address on file, the total number who the Department has sent an email to, the total number of those emails that bounced back, and the total number of those email that were opened; and

   g.   A description of all other ongoing efforts to locate borrowers who do not have a valid address on file.

18.     With what appears to be a minimum of 15,000 borrowers still subject to wage garnishment, Plaintiffs' counsel continues to hear from borrowers complaining of continued garnishment. At this stage, given the Department's statement that it will continue its efforts toward full compliance with the CARES Act, Plaintiffs believe that, to the extent the Department shows satisfactory progress, ongoing reporting is a better use of the parties' and the Court's resources than continued litigation and motion practice, including the potential for a

motion for leave to file a second amended complaint and new motion for a preliminary

injunction on behalf of borrowers still being garnished.


Dated:  June 8, 2020                                    Respectfully submitted,

*/s/ Alexander S. Elson*                                JOSEPH H. HUNT
Daniel A. Zibel (D.C. Bar No. 491377)                   Civil Division
Eric Rothschild (D.C. Bar No. 1048877)
Alexander S. Elson (D.C. Bar No. 1602459)               MARCIA BERMAN
National Student Legal Defense Network                  Assistant Branch Director, Federal Programs
1015 15th Street NW, Suite 600                          Branch
Washington, DC 20005
(202) 734-7495                                          */s/ Carol Federighi*
alex@defendstudents.org                                 CAROL FEDERIGHI
eric@defendstudents.org                                 Senior Trial Counsel
dan@defendstudents.org                                  United States Department of Justice
                                                        Civil Division, Federal Programs Branch
Stuart T. Rossman* (BBO No. 430640)                     P.O. Box 883
Persis Yu* (BBO No. 685951)                             Washington, DC 20044
National Consumer Law Center                            Phone: (202) 514-1903
7 Winthrop Square, Fourth Floor                         Email: carol.federighi@usdoj.gov
Boston, MA 02110
(617) 542-8010                                          *Counsel for Defendants*
srossman@nclc.org
pyu@nclc.org

*Counsel for Plaintiffs*

* admitted *pro hac vice*


7