**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ELIZABETH BARBER, *et al.*, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

ELISABETH DeVOS, in her official capacity as United States Secretary of Education, and UNITED STATES DEPARTMENT OF EDUCATION,

Defendants.

Civil Action No. 1:20-cv-01137-CJN

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

INTRODUCTION .......... 1

BACKGROUND .......... 3

I. STATUTORY AND REGULATORY BACKGROUND .......... 3

A. The William D. Ford Federal Direct Loan Program .......... 3

B. The Department's Authority to Collect Defaulted Student Loans .......... 4

C. The CARES Act .......... 6

II. THE DEPARTMENT'S ACTIONS TO EFFECTUATE SECTION 3513 OF THE CARES ACT .......... 7

III. THIS CASE .......... 10

LEGAL STANDARDS .......... 12

ARGUMENT .......... 13

I. THE CASE SHOULD BE DISMISSED BECAUSE PLAINTIFFS' CLAIMS ARE MOOT .......... 13

II. IN THE ALTERNATIVE, DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT .......... 16

III. THE COURT CANNOT ENJOIN ANY ONGOING GARNISHMENTS BECAUSE PLAINTIFFS HAVE FAILED TO JOIN NECESSARY PARTIES .......... 19

CONCLUSION .......... 23

# TABLE OF AUTHORITIES

**Cases**

*16th & K Hotel, LP v. Commonwealth Land Title Ins. Co.*,
276 F.R.D. 8 (D.D.C. 2011)............................................................................... 13, 20

*Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Service to the U.S. v. Pompeo*,
No. 18-cv-01388 (TSC), 2019 WL 4575565 (D.D.C. Sept. 20, 2019).................................... 15

*Am. Bar Ass'n v. FTC*,
636 F.3d 641 (D.C. Cir. 2011)........................................................................................ 16

*Arizonans for Official English v. Arizona*,
520 U.S 43 (1997)........................................................................................................ 14

*Chavis v. Garrett*,
419 F. Supp. 3d 24 (D.D.C. 2019).................................................................................. 14

*Cierco v. Lew*,
190 F. Supp. 3d 16 (D.D.C. 2016).................................................................................. 14

*City of Erie v. Pap's A.M.*,
529 U.S. 277 (2000)...................................................................................................... 14

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)...................................................................................................... 21

*de Csepel v. Republic of Hungary*,
No. 1:10-cv-01261, --- F. Supp. 3d ---, 2020 WL 2343405 (D.D.C. May 11, 2020)............... 12

*Draisner v. Liss Realty Co.*,
228 F.2d 48 (D.C. Cir. 1955).......................................................................................... 21

*Foretich v. United States*,
351 F.3d 1198 (D.C. Cir. 2003)...................................................................................... 13

*Honeywell Int'l, Inc. v. Nuclear Regulatory Comm'n*,
628 F.3d 568 (D.C. Cir. 2010)........................................................................................ 12

*J.D. v. Azar*,
925 F.3d 1291 (D.C. Cir. 2019)...................................................................................... 15

*Jerome Stevens Pharm., Inc. v. FDA*,
402 F.3d 1249 (D.C. Cir. 2005)...................................................................................... 12

*Johnson v. Perez*,
823 F.3d 701 (D.C. Cir. 2016) ........ 13

*LaRoque v. Holder*,
679 F.3d 905 (D.C. Cir. 2012) ........ 14

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ........ 12, 13

*Marshall v. Safeway Inc.*,
437 Md. 542 (2014) ........ 22

*Mississippi ex rel. Hood v. AU Optronics Corp.*,
571 U.S. 161 (2014) ........ 18

*Mons v. McAleenan*,
No. 19-1593 (JEB), 2019 WL 4225322 (D.D.C. 2019) ........ 16

*Renne v. Geary*,
501 U.S. 312 (1991) ........ 12

*Republic of Philippines v. Pimentel*,
553 U.S. 851 (2008) ........ 21

*Shimkus v. Gersten Co.*,
816 F.2d 1318 (9th Cir. 1987) ........ 22

*Spivey v. Barry*,
665 F.2d 1222 (D.C. Cir. 1981) ........ 15

*Thompson v. Jiffy Lube Int'l, Inc.*,
505 F. Supp. 2d 907 (D. Kan. 2007) ........ 22

*United States v. Philip Morris USA Inc.*,
566 F.3d 1095 (D.C. Cir. 2009) ........ 14

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
395 U.S. 100 (1969) ........ 21

**Statutes**

20 U.S.C. § 1070 ........ 3

20 U.S.C. § 1071 *et seq* ........ 4

20 U.S.C. § 1085(*l*) .......... 5

20 U.S.C. § 1087a *et seq*. .......... 3, 7

20 U.S.C. § 1087e .......... 4

20 U.S.C. § 1087e(f) .......... 4

20 U.S.C. § 1087*ll* .......... 3

20 U.S.C. § 1095a .......... 5, 7

20 U.S.C. § 1095a(a)(6 .......... 6

31 U.S.C. § 3701(b)(1) .......... 4

31 U.S.C. § 3711 *et seq*. .......... 4

31 U.S.C. § 3711(a)(1). .......... 4

31 U.S.C. § 3720D(a) .......... 4

31 U.S.C. § 3720D(b) .......... 5

31 U.S.C. § 3720D(c) .......... 6

31 U.S.C. § 3720D(d) .......... 6

31 U.S.C. § 3720D(f) .......... 6

31 U.S.C. § 3720D(f)(2) .......... 18

Coronavirus Aid, Relief, and Economic Security Act,
Pub. L. No. 116-136, 134 Stat 281 (2020) .......... passim

**Rules**

Fed. R. Civ. P. 12(b)(1) .......... 1, 12

Fed. R. Civ. P. 12(b)(7) .......... 2, 12, 19

Fed. R. Civ. P. 19 .......... passim

Fed. R. Civ. P. 23 .......... 22

Fed. R. Civ. P. 56 .......... 13

Fed. R. Civ. P. 65(d)(2) .......... 19

**Regulations**

34 C.F.R. §§ 34.4-34.6 .......... 5

34 C.F.R. § 34.18 .......... 6

34 C.F.R. § 34.26 .......... 6, 17

34 C.F.R. § 34.28 .......... 6, 17

34 C.F.R. § 34.29 .......... 6

34 C.F.R. § 685.102(b) .......... 5

34 C.F.R. § 685.207 .......... 4

34 C.F.R. § 685.211(d) .......... 4

**Other Authorities**

Debt Resolution Federal Student Aid, https://myeddebt.ed.gov/borrower/ .......... 10

Location of Federal Family Education Loan Program Loans, https://studentaid.gov/data-center/student/portfolio .......... 4

**INTRODUCTION**

In Defendants' Opposition to Plaintiffs' Amended Motion for Class Certification, filed June 2, 2020 ("Defendants' Class Certification Opposition," ECF No. 20), Defendants pointed out that the named Plaintiffs' claims had become moot because they had received all the relief they sought through this lawsuit—an end to garnishment and a refund of amounts garnished since March 13, 2020. ECF No. 20, at 11, 14. Plaintiffs confirmed this fact in their Reply Memorandum. *See* ECF 22, at 2. As a result of the mooting of Plaintiffs' claims, the Court lacks subject-matter jurisdiction, and, therefore, Defendants are now filing the present motion to dismiss the case pursuant to Federal Rule of Procedure 12(b)(1). Because there is no dispute that Plaintiffs' claims are moot and that they will not recur, the motion should be granted.

Plaintiffs may argue that this case should be kept alive because the named Plaintiffs are seeking to represent a class, which, as they define it, contains putative members who would have live claims against Defendants. However, in the month since Defendants filed their class certification opposition, Plaintiffs' counsel has not attempted to amend the complaint (already amended once) to add new plaintiffs with live claims or to come forward with *any* evidence that there is even one putative class member with a live claim that wishes to pursue a lawsuit against Defendants. This is not surprising since, as Defendants have stated in their status reports, they are continuing to work to get employers to cease all garnishment of federally held student loans, and they have encouraged Plaintiffs' counsel to put any borrower still being garnished or who has not received a refund in touch with them through counsel, so that they might address the situation. *See* Status Report at 3 (June 28, 2020) (ECF No. 24); Status Report at 3 (July 13, 2020) (ECF No. 26). Therefore, there are procedures in place to resolve any putative class

members' concerns without the need for litigation. There is thus no reason to keep this case on the Court's docket to resolve a class certification motion for which there appears to be no need.

In the alternative, Defendants are entitled to summary judgment because they have fully complied with their obligation under the Coronavirus Aid, Relief and Economic Security Act ("CARES Act") to "suspend" all garnishments. As Defendants have previously explained, under the applicable statutes the garnishment of Plaintiffs' wages is actually performed by the individual employer of each borrower as part of the employer's payroll process, not by the Department of Education ("Department"). The Department has a role to play, but it is limited to issuing orders to employers of defaulted student loan borrowers, both in the first instance to direct the employers to withhold amounts from the student loan borrower's wages and pay those amounts to the Department, and then to cancel the garnishment when warranted. In this case, the Department has sent notices to each employer instructing them to cease garnishment. Moreover, even though not required by the CARES Act, the Department has issued refunds for almost all of the payments garnished since March 13, 2020. Defendants are therefore entitled to judgment in their favor on Plaintiffs' claims that Defendants have violated the CARES Act, and the declaratory relief Plaintiffs request setting forth the obligations of the CARES Act is unnecessary.

That not all garnishments have ceased lies at the doors of the employers, not the Department. Therefore, to the extent Plaintiffs seek an end to such garnishments, their cause of action lies against the employers, who are not parties here. Any such claim must therefore alternatively be dismissed pursuant to Rule 12(b)(7) for failure to join necessary parties. Finally, to the extent that not all putative class members have received the refunds Defendants are

prepared to provide, that fact rests in their hands. The Department is ready and willing to provide refunds, as soon as it receives verification of the borrower's proper address, and borrowers are invited to provide that information at any time, whether through the Department's website or to counsel. In the interim, however, any garnishments still in the hands of the Department are fully credited to the borrowers' accounts.

## BACKGROUND

This case stems from passage of Section 3513 of the CARES Act, which provides for "TEMPORARY RELIEF FOR FEDERAL STUDENT LOAN BORROWERS" in response to the effects of the coronavirus pandemic on the United States. That section requires defendant Secretary of Education to "suspend all involuntary collection related to" federally held student loans, such as administrative wage garnishment ("AWG"). The relevant legal and factual background is set forth further below and in Defendants' Class Certification Opposition.

### I. STATUTORY AND REGULATORY BACKGROUND

#### A. The William D. Ford Federal Direct Loan Program

Under Title IV of the Higher Education Act of 1965 ("HEA"), 20 U.S.C. § 1070 *et seq*., the Department enters into agreements with institutions of higher education that permit students to receive federal grants and loans to pay for the cost of attendance at the school. The William D. Ford Federal Direct Loan Program ("Direct Loan Program"), the largest student loan program authorized under Title IV, *see* 20 U.S.C. § 1087a *et seq*., allows students to apply for and receive Direct Loans from the federal government to pay for their educational expenses, including tuition and living expenses. *Id*. § 1087*ll*. As of the end of March 2020, the Department held more than $1.28 trillion in outstanding Direct Loans to over 35 million borrowers. *See* Declaration of Mark

A. Brown, Chief Operating Officer, Federal Student Aid, U.S. Department of Education, ¶ 6 ("Brown Decl.," ECF 20-1). The Department also owns some loans originated under the Federal Family Education Loan ("FFEL") Program to which it subsequently acquired title. *See* Amend. Compl. at 9 n.1; *see generally* 20 U.S.C. § 1071 *et seq*. The Department currently holds about $87 billion in FFEL loans in repayment.[1] *See* https://studentaid.gov/data-center/student/portfolio (last visited July 20, 2020), under the heading "Location of Federal Family Education Loan Program Loans."

Borrowers repay their Direct Loans to the Department of Education. 20 U.S.C. § 1087e; 34 C.F.R. §§ 685.207, 685.211(d). Repayments begin once the borrower stops attending school or if other conditions are met. *See* 20 U.S.C. § 1087e(f).

**B. The Department's Authority to Collect Defaulted Student Loans**

The Debt Collection Improvement Act, 31 U.S.C. § 3711 *et seq*., requires the heads of executive agencies to "try to collect" any "claim" of the United States "arising out of the activities of, or referred to, the agency," 31 U.S.C. § 3711(a)(1), and defines "claim," or "debt," as "any amount of funds or property that has been determined by an appropriate official of the Federal Government to be owed to the United States by a person, organization, or entity other than another Federal agency," *id*. § 3701(b)(1). Federal agencies are authorized, so long as they follow certain procedural requirements, to collect their debts through a number of tools, including, as relevant here, administrative wage garnishment. *Id.* § 3720D(a); *see also* 20 U.S.C.

[1] Defendants' Class Certification Opposition stated that the Department currently holds about $43 billion in FFEL loans in repayment. ECF No. 20, at 4. However, the latter number represents only the value of the FFEL loans that the Department holds that are in default. *See* https://studentaid.gov/data-center/student/portfolio.

§ 1095a (authorizing the Department to collect Title IV loan debts through wage garnishment). AWG is a process in which a creditor, in this case the Department, collects delinquent non-tax debt by garnishing the wages of a delinquent debtor without first obtaining a court order. In AWG, an employer withholds amounts from an employee's wages and pays those amounts to the creditor agency in satisfaction of an administrative wage garnishment order issued by the creditor agency.

For federal student loans, a loan is considered in "default" when at least 270 days have passed without the borrower making a payment. Brown Decl. ¶ 8; 20 U.S.C. § 1085(*l*); 34 C.F.R. § 685.102(b) ("Default"). When that occurs, the Department notifies the borrower that the debt is due in full and that they may enter into a voluntary payment agreement. Brown Decl. ¶ 8. If the borrower does not enter into a voluntary payment agreement within 65 days of the notice being sent, the Department initiates collection activities, which may include administrative wage garnishment. *Id.* In accordance with the wage garnishment procedures in the regulations and as described in the Brown Declaration, the Department provides the borrower with notice and the opportunity for a hearing before the garnishment is started. *Id.* ¶¶ 10-11. The borrower has the right to inspect and copy records, to enter into a repayment agreement to avoid garnishment, to contest the existence or amount of the debt to be collected as well as the terms of the repayment schedule, and to receive an administrative hearing before a hearing official on any objections to the garnishment filed in a timely manner. *See* Brown Decl. ¶ 11; 31 U.S.C. § 3720D(b); *see also* 34 C.F.R. §§ 34.4-34.6.

If the dispute over the unpaid debt is not resolved in the borrower's favor or if the borrower does not respond, the Department issues an "Order to Withhold Wages" to the

borrower's employer, with a copy also sent to the borrower. Brown Decl. ¶¶ 12-14; *see* 31 U.S.C. § 3720D(c), (d); *see also* 34 C.F.R. § 34.18. Generally speaking, employers begin garnishing payments within four weeks of receiving the "Order to Withhold Wages." Brown Decl. ¶ 15. If a borrower establishes before a hearing official that an employer has improperly garnished a borrower's wages, the Department will issue a refund to the borrower. *See* 34 C.F.R. § 34.28.

Once an account is paid in full or if garnishment should stop for other reasons, the Department's Debt Management and Collection System automatically generates a "Notice of cancellation of order for withholding of wages." Brown Decl. ¶ 17. The Department then directs its contractor, Maximus Federal Servicers ("Maximus"), the default loan servicer, to send this notice to the employer. *Id.*; *see* 34 C.F.R. § 34.26. As with the original wage garnishment order, employers generally process the cease garnishment instruction using their normal payroll processes, so under normal circumstances it too can often take up to four weeks or even longer from the time the stop garnishment order is transmitted to the employer until wages are no longer garnished. Brown Decl. ¶ 17. The Department has the authority to sue an employer who fails to implement a garnishment notice, *see* 31 U.S.C. § 3720D(f)(2); 20 U.S.C. § 1095a(a)(6); 34 C.F.R. § 34.29, but there is no express authority for it to sue an employer who continues with garnishment after being instructed to stop.

### C. The CARES Act

On March 27, 2020, the President signed the CARES Act into law to provide emergency relief to individuals and businesses impacted by the COVID-19 pandemic. Pub. L. 116-136, 134 Stat 281 (2020). Section 3513 of that Act provides that:

> (a) IN GENERAL.—The Secretary shall suspend all payments due for loans made under part D and part B (that are held by the Department of Education) of title IV of the Higher Education Act of 1965 (20 U.S.C. 1087a *et seq*.; 1071 *et seq*.) through September 30, 2020.
>
> …
>
> (e) SUSPENDING INVOLUNTARY COLLECTION.—During the period in which the Secretary suspends payments on a loan under subsection (a), the Secretary shall suspend all involuntary collection related to the loan, including—
>
> > (1) a wage garnishment authorized under section 488A of the Higher Education Act of 1965 (20 U.S.C. 1095a) or section 3720D of title 31, United States Code;
> >
> > …

*Id.* at 404.

## II. THE DEPARTMENT'S ACTIONS TO EFFECTUATE SECTION 3513 OF THE CARES ACT

On March 25, 2020—prior to the enactment of the CARES Act—Secretary DeVos ordered the Department to halt collection activity and wage garnishments and refund any funds recovered through garnishments received after March 13, 2020. Brown Decl. ¶ 23. The next day, the Department instructed Maximus to direct employers to stop all wage garnishments and also instructed Maximus to initiate refunds of garnishments received on or after March 13, 2020. *Id.* ¶ 24.

After reengineering its processes and systems, Maximus began sending automated notifications to employers by mail on April 18, 2020. Brown Decl. ¶¶ 25-27. By April 23, 2020, less than 30 days after the CARES Act was signed, Maximus reported that it had notified, either by mail or telephone call, 98% of employers that had been actively garnishing wages, instructing them to stop garnishments for Department-held debt. *Id.* ¶ 28. By May 16, 2020, Maximus had

sent stop garnishment notices to the remaining 2% of employers who had been identified as not previously having received one as a result of discrepancies in Maximus' records (*e.g.*, employers who had invalid addresses in the system or borrowers who were associated with the wrong employers). *Id.* ¶¶ 34-35. Maximus also mailed several additional rounds of garnishment notices and began making calls to employers who continued to send in wage garnishments. *Id.* ¶¶ 29-33.

The Department cannot directly determine when an employer has canceled garnishment for its employees with federally-held student loans. Brown Decl. ¶ 40. Instead, on a weekly basis, the Department measures the percentage of borrowers for whom it has received an AWG payment from an employer compared against the total number of unique borrowers for which the Department has received an AWG payment since March 13, 2020. *Id.* The percentage of borrowers reported as subject to garnishment varies slightly from week to week because different borrowers are paid and subject to AWG each week depending on the pay schedule of their employers (*e.g.*, some borrowers get paid weekly, bi-weekly, monthly). *Id.*

With those caveats, the number of garnishments received by the Department on a weekly basis has been generally decreasing. Between March 13, 2020, and June 2, 2020, approximately 115,000 employers garnished the wages of approximately 390,000 borrowers. *Id.* ¶ 38. For the week ending June 25, 2020, the Department received payments from garnishment by approximately 2900 employers affecting 1.1% of the total number of unique borrowers for which the Department has received an AWG payment since March 13, 2020. Declaration of Joe L. Lindsey, Principal Deputy Chief Operating Officer, Federal Student Aid, U.S. Department of Education ¶ 9 ("Lindsey Decl.," filed herewith). For the week ending July 9, 2020, the

Department received payments from garnishment by approximately 2147 employers affecting 0.66% of the total number of unique borrowers for which the Department has received an AWG payment since March 13, 2020. *Id.* ¶ 10. Maximus continues to attempt to re-contact by phone or written notifications those non-compliant employers who continue to send in garnishment payments, prioritizing employers by the number of employees they are garnishing. *Id.* ¶ 7. Approximately 89% of the remaining non-compliant employers are only garnishing one borrower's wages. *Id.* ¶ 11. The Department believes that many of the remaining non-compliant employers are small businesses that have been affected by the national emergency (*e.g.*, working offsite, reduced staff or even in a few instances have gone out of business). *Id.* ¶ 12.

The Department has also acted to refund payments claimed through AWG since March 13, 2020, as quickly as possible. Brown Decl. ¶ 41. The Department has taken this step even though refunds are not required by the CARES Act. Lindsey Decl. ¶ 42. Given the unprecedented volume of involuntary payments that required refunds during this period, Maximus developed an automated process that allowed the Department to expedite refunds for borrowers, which was implemented on April 14, 2020. Brown Decl. ¶¶ 43-44. This automated process generally reduced the processing time for any new reimbursements from several weeks to generally 4-5 business days from the date the garnishment is received at the Treasury Lockbox until the refund check can be mailed to the borrower by the Department of the Treasury. *Id.* ¶ 44. As part of the stop garnishment notices sent to employers, the Department also requested that employers encourage borrowers to contact the Department to provide an updated address to which garnishment refund payments could be sent. *Id*. ¶ 42.

As of July 9, 2020, the Department has issued AWG refunds totaling over $178 million to over 374,000 borrowers, representing over 96% of the wages garnished since March 13. Lindsey Decl. ¶ 15. Refunds for the remaining borrowers have been initiated by the Department and are either being actively processed or are on hold because the borrowers owed a refund have an invalid address on file. *Id.* As of July 9, 2020, there were fewer than 19,000 borrowers without valid addresses on file. *Id.* ¶ 17. FSA continues to work to validate addresses by sending emails to the borrowers (most if not all of whom have email addresses on file) on a weekly basis notifying them they are owed a refund and instructing them how to access and use the Debt Resolution Portal to confirm their address. *Id.* ¶ 18. The Department and Maximus has deployed an address validation tool on the Debt Resolution Portal, https://myeddebt.ed.gov/borrower/. *Id.* ¶ 20. Maximus has also implemented targeted messaging in their Interactive Voice Response systems and updated scripts for call center representatives prompting borrowers who calls to provide FSA with a valid address. *Id.* ¶ 19. The Department is also working with the Department of Treasury to locate correct addresses for these borrowers. *Id.* ¶ 22. In the meantime, all garnishment funds received by the Department are applied to each borrower's account until such time as a refund can be processed and sent to the borrower. *Id.* ¶ 23.

## III. THIS CASE

On April 20, 2020, plaintiff Elizabeth Barber, a Direct Loan borrower, filed the present suit contending that, as of her April 24, 2020, paycheck she continued to have her wages garnished by her employer pursuant to an AWG order from the Department, notwithstanding section 3513 of the CARES Act. Compl. ¶ 50 (ECF No. 1). She filed the suit on behalf of

herself and a class of other similarly situated borrowers. *Id.* ¶¶ 55-65. She sought primarily declaratory relief but also sought orders directing the Department to notify the Court when it suspends garnishments and provides notice of such to the class members and directing an immediate refund of all amounts illegally garnished. *Id.* at 19-20. She did not move for a preliminary injunction. *Id.*

The garnishment of Ms. Barber's wages ceased with her May 1, 2020, paycheck. Amend. Compl. ¶ 58 (ECF No. 9); Brown Decl. ¶ 47. On May 7, 2020, Ms. Barber, now joined by an additional plaintiff, Craigory Lee Jenkins, filed an Amended Complaint providing, *inter alia*, that information, although also reiterating that she had as yet received no refunds. *Id.* ¶¶ 10, 58-59. The new named plaintiff, Ms. Jenkins, stated that her paychecks continued to be garnished as of her May 8, 2020, paycheck. *Id.* ¶¶ 9, 68-71. She also had received no refunds as of the date of filing of the Amended Complaint. *Id.* ¶ 73. Both plaintiffs also filed an amended motion for class certification on May 7, 2020 (ECF No. 10), and Ms. Jenkins filed a motion for a preliminary injunction (ECF No. 11).

Ms. Barber's paychecks are no longer being garnished, and she has also received and cashed refund checks for all amounts garnished between March 13. 2020, and April 24, 2020. Brown Decl. ¶ 47; Lindsey Decl. ¶ 16. Ms. Jenkins' garnishment ceased after her May 8, 2020, paycheck. Brown Decl. ¶ 48. She withdrew her preliminary injunction motion on May 22, 2020, Notice of Withdrawal of Preliminary Injunction Motion at 1 (ECF No. 19), and has received the refund checks she has been issued. Brown Decl. ¶ 48; Lindsey Decl. ¶ 16.

## LEGAL STANDARDS

Defendants seek dismissal of this case (1) under Federal Rule of Civil Procedure 12(b)(1), on the ground that the Court lacks subject-matter jurisdiction because Plaintiffs' claims are moot, and, in the alternative, (2) partially under Rule 12(b)(7), on the ground that Plaintiffs have failed to join a necessary party under Rule 19.

When a defendant files a motion under Rule 12(b)(1), the plaintiff generally bears the burden of demonstrating the existence of subject-matter jurisdiction. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Courts should "presume that [they] lack jurisdiction unless the contrary appears affirmatively from the record." *Renne v. Geary*, 501 U.S. 312, 316 (1991) (internal quotation marks and citations omitted). If the issue is one of standing, "[t]he party invoking federal jurisdiction bears the burden of establishing" the necessary elements. *Defs. of Wildlife*, 504 U.S. at 561. However, where mootness is argued, "[t]he initial 'heavy burden' of establishing mootness lies with the party asserting a case is moot, … but the opposing party bears the burden of showing an exception applies …." *Honeywell Int'l, Inc. v. Nuclear Regulatory Comm'n*, 628 F.3d 568, 576 (D.C. Cir. 2010) (citations omitted). The Court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." *Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

Federal Rule of Civil Procedure 12(b)(7) permits dismissal of a complaint for failure to join a necessary party under Rule 19. The burden is on the defendant seeking dismissal for failure to name an absent person "to demonstrate that [the] absent party is required under Rule 19." *de Csepel v. Republic of Hungary*, No. 1:10-cv-01261, --- F. Supp. 3d ---, ---, 2020 WL 2343405, at *12 (D.D.C. May 11, 2020) (citation omitted, alteration in original). "In evaluating

the need for the absent person under Rule 12(b)(7), the court must accept as true the allegations in the complaint, and may also consider extrinsic evidence submitted by the parties." *16th & K Hotel, LP v. Commonwealth Land Title Ins. Co.*, 276 F.R.D. 8, 12 (D.D.C. 2011).

In the alternative, Defendants seek summary judgment pursuant to Federal Rule of Civil Procedure 56 on the ground that there are no material facts in dispute and they are entitled to judgment as a matter of law. On summary judgment, "[t]he task of the court is to review the factual material the parties present in support of and opposition to the motion, in light of the parties' legal claims and defenses, and assess whether the record contains disputes calling for resolution by a factfinder." *Johnson v. Perez*, 823 F.3d 701, 705 (D.C. Cir. 2016). In performing this assessment, "the court views the evidence in the light most favorable to the nonmoving party . . . and draws all reasonable inferences in his favor. . . . But if one party presents relevant evidence that another party does not call into question factually, the court must accept the uncontroverted fact." *Id.*

## ARGUMENT

### I. THE CASE SHOULD BE DISMISSED BECAUSE PLAINTIFFS' CLAIMS ARE MOOT

The doctrines of standing, as well as the related doctrine of mootness, ensure that a case presents an actual, ongoing controversy satisfying the requirements of Article III of the Constitution. *Foretich v. United States*, 351 F.3d 1198, 1210 (D.C. Cir. 2003). To meet Article III's standing requirement, a plaintiff must establish that (1) he or she has suffered an "injury in fact"; (2) there is a "causal connection between the injury and the conduct complained of"; and (3) "the injury will likely be 'redressed by a favorable decision.'" *Defs. of Wildlife*, 504 U.S. at 560-61. The mootness doctrine requires that these requirements must be met "at all stages of

review, not merely at the time the complaint is filed." *Arizonans for Official English v. Arizona*, 520 U.S 43, 67 (1997) (citation and internal quotation marks omitted). A case becomes moot when the plaintiffs "have obtained everything that they could recover from this lawsuit." *LaRoque v. Holder*, 679 F.3d 905, 909 (D.C. Cir. 2012) (internal quotation marks and modifications omitted)). "A case is moot when the challenged conduct ceases such that there is no reasonable expectation that the wrong will be repeated in circumstances where it becomes impossible for the court to grant any effectual relief whatever to the prevailing party." *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1135 (D.C. Cir. 2009) (internal quotation marks omitted) (quoting *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000)).

Here, as described above, the named Plaintiffs' wages are no longer being garnished, and they have received refunds of all amounts garnished in the interim, as they sought in the Amended Complaint. *See* Amended Compl., at p. 25 ¶ 6. Plaintiffs are therefore no longer being injured by Defendants' alleged failure to comply with the CARES Act. Moreover, in light of Defendants' representations regarding its commitment to implement section 3513 of the CARES Act, and the actions it has taken to effectuate that provision, Plaintiffs' requests for declaratory relief to the same effect also present no live controversy. *See id.* ¶¶ 2-6. Therefore, both Plaintiffs no longer have the "injury-in-fact" required for standing, and their claims are moot. *See Chavis v. Garrett*, 419 F. Supp. 3d 24 (D.D.C. 2019) (plaintiff's claims moot where housing authority issued her a permanent housing voucher, sent back rent to her landlord, and designated her head of household); *Cierco v. Lew*, 190 F. Supp. 3d 16, 27 (D.D.C. 2016) ("[W]here a plaintiff seeks both declaratory and injunctive relief pertaining to unlawful agency action, and where the latter has been mooted, an outstanding request for the former will not

operate to bar mootness."), *aff'd on other grounds*, 857 F.3d 407 (D.C. Cir. 2017); *see also Spivey v. Barry*, 665 F.2d 1222, 1235 (D.C. Cir. 1981) (dismissing case as moot where "a grant of declaratory relief would not achieve any useful objective"). Accordingly, the case should be dismissed.

Defendants addressed Plaintiffs' argument as to why they still have standing to pursue class certification in Defendants' Class Certification Opposition. ECF No. 20, at 14-16. As stated therein, Plaintiffs fail to meet the requirements for the "inherently transitory" exception to mootness in the class certification context because, given Defendants' commitment to ending garnishment as to every borrower on a federally-held student loan, Plaintiffs have not shown that "some class members will retain a live claim at every stage of litigation." *J.D. v. Azar*, 925 F.3d 1291, 1311 (D.C. Cir. 2019). In their Class Certification Reply, Plaintiffs took issue with this representation, noting that, as of May 28, 2020, Defendants had reported that employers had garnished approximately 4 percent of the total number of unique borrowers for which the Department has received an AWG payment since March 13, 2020. *See* ECF No. 22, at 1 ("more than 15,000 borrowers"). However, that number continues to drop and was most recently reported to be down to .66%. Lindsey Decl. ¶ 10. Thus, Defendants' statement that the class of putative claimants is expected to shrink to zero is being borne out. For this reason as well, the cases cited by Plaintiffs in their reply are not pertinent because, in those cases, the government was not affirmatively trying to resolve every putative class member's claim to comply with new law, as it is here. *See Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Service to the U.S. v. Pompeo*, No. 18-cv-01388 (TSC), 2019 WL 4575565, at *8 (D.D.C. Sept. 20, 2019) (government continued to defend delay in processing visa applications as to class

members); *Mons v. McAleenan*, No. 19-1593 (JEB), 2019 WL 4225322, at *8 (D.D.C. Sept. 5, 2019) (noting evidence that the government "continues to detain a great number of the members of the proposed class without granting them individualized parole determinations").

Because Defendants' suspension of AWG is not "voluntary" here but rather mandated by the CARES Act, the "voluntary cessation" exception to mootness also does not apply. *See Am. Bar Ass'n v. FTC*, 636 F.3d 641, 648 (D.C. Cir. 2011) (stating that the "voluntary cessation" exception to mootness "has no play" where the agency abandoned its policy after intervening legislation nullified it). Moreover, there is no likelihood that garnishment will be resumed as to the Plaintiffs (or any other borrower) until after expiration of the period mandated by the CARES. *See* CARES Act, § 3513(g)(2) (requiring the Department to "carry out a program to provide not less than 6 notices by postal mail, telephone, or electronic communication to borrowers" regarding resumption). Plaintiffs will thus have more than ample opportunity to challenge such resumption at that time, if they wish. In sum, no exception to mootness applies here, and the Court must therefore dismiss the case for lack of subject-matter jurisdiction.

## II. IN THE ALTERNATIVE, DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT

In the alternative, Defendants are entitled to summary judgment because they have fully complied with their obligation under the CARES Act to "suspend" all garnishments. As Defendants explained in the Brown Declaration (¶¶ 27-35), the Department has sent notices to each employer instructing them to cease garnishment. In addition, even though not required by the CARES Act, the Department has issued refunds for most of the payments garnished since March 13, 2020, where the Department has the necessary information to send the refund to the borrower. Brown Decl. ¶¶ 41-46; Lindsey Decl. ¶¶ 15, 17-22. Notably, it has efficiently issued

such refunds without requiring the sort of administrative process normally required under its regulations. *See* 34 C.F.R. § 34.28. And the Department is prepared to issue refunds to any remaining borrowers as soon as those borrowers provide verified addresses to which the payments can be sent. In the interim, any garnishments still in the hands of the Department are fully credited to the borrowers' accounts to reduce the amount they owe. Lindsey Decl. ¶ 23.

Although Defendants continue to attempt to contact noncomplying employers (Lindsey Decl. ¶ 7), the Defendants have already met their obligations regarding AWG under the CARES Act. The CARES Act requires the Secretary to "suspend" all wage garnishments. The Secretary has "suspended" all wage garnishments by notifying all employers to stop withholding payments; because the Secretary has rescinded the previously transmitted wage garnishment orders, they are no longer effective. 34 C.F.R. § 34.26(a)(1) ("A garnishment order we issue is effective until we rescind the order."). Of course, the Secretary cannot herself stop the garnishment because the act of garnishment itself is performed by and is under the control of the individual employer of each borrower—the Department simply cannot, as a practical matter, commandeer the employer's payroll processes and itself implement the stop garnishment order. Therefore, it is now up to the employers to implement the Department's instructions to stop garnishments (and most employers have complied). The Department has no further responsibility.

Congress's choice of the word "suspend" in the CARES Act (rather than "stop" or a similar direct-action equivalent) supports this conclusion. As explained above, AWG is a government-wide authority conferred by the Debt Collection Improvement Act that can and is utilized by a variety of agencies to recover debts. That statutory scheme clearly relies on the

employer to withhold the wages. *See* 31 U.S.C. § 3720D(f). It also provides no explicit authority for the agency to sue an employer who continues to garnish wages after being told to stop. Congress is presumed to be aware of the Department's and employers' respective roles in administrative wage garnishment under the statute when it directed the Secretary to "suspend" garnishment. *Mississippi ex rel. Hood v. AU Optronics Corp*., 571 U.S. 161, 169 (2014) (Courts "presume that Congress is aware of existing law when it passes legislation.") (citations and internal quotation marks omitted). The applicable AWG framework therefore strongly suggests that Congress did not intend that the Secretary do more than she has to date, which is to issue instructions to all employers to stop withholding wages.

Plaintiffs do not deny that the employers are a necessary participant in the process but rather criticize the Department for setting up a system that depends on the employer to ultimately effectuate wage garnishment. *See* Pls.' Class Cert. Reply at 6. As demonstrated above, however, the system was set up by Congress, not the Department. Nor do Maximus' follow-up notices and phone calls to employers who continue to send in wage garnishments demonstrate that the Department can do what Congress directed without the participation of the employers, as Plaintiffs also contend. *See id*. at 14-15. Indeed, it suggests the opposite, that the Department's authority to obtain compliance from employers is limited, particularly where contacting remaining employers, who are believed to be mostly small businesses with one student borrower employee, has proved difficult because of the current pandemic situation. *See* Lindsey Decl. ¶¶ 11-12.

Defendants are therefore entitled to judgment in their favor on Plaintiffs' claims that Defendants have violated the CARES Act. *See* Amend. Compl. ¶¶ 95-111 & p. 25 ¶ 2. Further,

the declaratory relief Plaintiffs request, setting forth the obligations of the CARES Act, is unnecessary, as Defendants do not dispute their obligations. *Id.* at p. 25 ¶¶ 3-5 (requesting declarations that Defendants' "wage garnishments on or after the March 27, 2020, effective date of the CARES Act are not legally enforceable," and that Defendants must "suspend all administrative wage garnishments" and "provide immediate notice of the suspension of wage garnishment"). Similarly, the orders requested, to "certify" the suspension of garnishment to the Court and to provide refunds, are also unnecessary. Defendants are accordingly entitled to summary judgment.

## III. THE COURT CANNOT ENJOIN ANY ONGOING GARNISHMENTS BECAUSE PLAINTIFFS HAVE FAILED TO JOIN NECESSARY PARTIES

The Defendants do not deny that some garnishments continue, and, in fact, the Department is continuing its attempts to re-contact employers to obtain a full stop of all garnishments. Lindsey Decl. ¶ 7. However, Plaintiffs have not in fact sought an injunction against such garnishments, *see* Amend. Compl. at p.25 ¶ 4 (seeking only a declaration that Defendants must "suspend all administrative wage garnishments"), nor could they. The employers, who are actually in control of the acts of garnishment , would be necessary parties to obtain that relief. *See* Fed. R. Civ. P. 65(d)(2) (an injunction can only bind the parties, their officers, agents, servants, employees, and attorneys, or other persons in active concert or participation therewith). Despite ample notice of this defect and opportunity to effect joinder, however, Plaintiffs have failed to try to join such employers as parties, nor would joinder necessarily be feasible.

Under Rule 12(b)(7), a party may bring a motion to dismiss for "failure to join a party under Rule 19." In turn, Rule 19(a)(1)(A) provides that an absent person "must be joined as a

party if … in that person's absence, the court cannot accord complete relief among existing parties." Once the court determines that the absent person is a "necessary party" under Rule 19(a), it must then decide whether it is feasible to order that the absentee be joined. *See 16th & K Hotel, LP*, 276 F.R.D. at 13. Joinder is feasible when the absentee is subject to service of process and joinder will not deprive the court of subject matter jurisdiction. *See* Fed. R. Civ. P. 19(a)(1) & comments. If joinder is not feasible, the court "must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed," considering the following factors:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by:
>
> (A) protective provisions in the judgment;
> (B) shaping the relief; or
> (C) other measures;
>
> (3) whether a judgment rendered in the person's absence would be adequate; and
>
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

Here, the putative class members' employers are "necessary parties" to the extent Plaintiffs seek an end to all garnishments because, in their absence, the Court cannot issue an injunction against garnishment and therefore "the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A); *see Draisner v. Liss Realty Co.*, 228 F.2d 48, 49 (D.C. Cir. 1955) (garnishee (such as the employers here) is "at least a necessary party" to

proceedings in which his title is affected); *see generally Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 110 (1969) ("[G]enerally one is not bound by a judgment in personam resulting from litigation in which he is not designated as a party or to which he has not been made a party by service of process").

It would not be feasible to join all of these employers, however, given the number of employers currently involved (over 2000) and the likelihood that some, if not most or all of them, are not amenable to service of process in the District of Columbia. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (for corporations, general jurisdiction may be asserted if the forum is one in which the corporation is "'fairly regarded as at home,'" generally being either its "place of incorporation" or its "principal place of business."); *id.* at 127 (specific jurisdiction exists where a claim arises out of the non-resident defendant's contacts with the forum state).

The factors outlined in Rule 19(b) then weigh against allowing this action to proceed. The first and second factors, the prejudice to the absentee or to the existing parties and whether that prejudice can be averted, argue for dismissal. Even assuming a binding injunction could be issued, the employers would be prejudiced by not being able to defend against an injunction, and there is no way to shape such an injunction as to protect their interests while also giving the putative class members the relief they seek.

The third factor, "whether a judgment rendered in the person's absence would be adequate," looks at the "public stake in settling disputes by wholes, whenever possible." *Republic of Philippines v. Pimentel*, 553 U.S. 851, 870-71 (2008) (citation omitted). This factor similarly argues against "[g]oing forward with the action without the [employers]" because proceeding thus "would not further the public interest in settling the dispute as a whole because

the [employers] would not be bound by the judgment in an action where they were not parties." *Id*. The fourth factor also argues for dismissal here, as the borrowers will have adequate alternative remedies to sue their employers in state court for, *e.g.*, unpaid wages representing the amount garnished in violation of the CARES Act. *See, e.g.*, *Marshall v. Safeway Inc*., 437 Md. 542, 556-562 (2014) (holding that Maryland law permitted private cause of action by an employee against the employer for unpaid wages as a result of an unauthorized deduction). While the Department's ability to make contact with the various employers is limited by the information it has on them, the borrowers are far better situated to affect service on their employers in state court actions because they work for them.

Finally, joinder of the employers is required notwithstanding Rule 19(d), which specifies that Rule 19 "is subject to Rule 23." Fed. R. Civ. P. 19(d). This rule "simply requires [the court] to respect the language of Rule 23, but allows joinder to the extent its use does not conflict with Rule 23's provisions." *Shimkus v. Gersten Co*., 816 F.2d 1318, 1321 (9th Cir. 1987) (holding that joinder was required and remanding). Rule 19(d) thus does not exempt class actions from dismissal for failure to join a necessary party. *See Thompson v. Jiffy Lube Int'l*, Inc., 505 F. Supp. 2d 907, 922 (D. Kan. 2007) (dismissing certain claims in putative class action suit for failure to join a necessary party). Thus, the fact that Plaintiffs seek to maintain this case as a class action does not prohibit the Court from finding that dismissal is warranted because Plaintiffs have failed to join parties necessary to grant the full relief sought.

## CONCLUSION

For the foregoing reasons, this case should be dismissed or, in the alternative, summary judgment should be granted for Defendants.

Dated: July 20, 2020

Respectfully submitted,

ETHAN P. DAVIS
Acting Assistant Attorney General
Civil Division

MARCIA BERMAN
Assistant Branch Director, Federal Programs Branch

/s/ Carol Federighi
CAROL FEDERIGHI
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
Phone: (202) 514-1903
Email: carol.federighi@usdoj.gov

*Counsel for Defendants*