IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELIZABETH BARBER, *et al.,* on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>ELISABETH DeVOS, in her official capacity as United States Secretary of Education, and UNITED STATES DEPARTMENT OF EDUCATION,<br><br>    Defendants. | Civil Action No. 1:20-cv-01137-CJN |

**DEFENDANTS' STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE DISPUTE**

Pursuant to LCvR 7(h), Defendants Elisabeth DeVos, in her official capacity as United States Secretary of Education, and the United States Department of Education (the "Department") submit this Statement of Material Facts as to Which There is No Genuine Dispute in connection with their motion for summary judgment.

1. Under Title IV of the Higher Education Act of 1965 ("HEA"), 20 U.S.C. § 1070 *et seq.*, the Department enters into agreements with institutions of higher education that permit students to receive federal grants and loans to pay for the cost of attendance at the school.

2. The William D. Ford Federal Direct Loan Program ("Direct Loan Program"), the largest student loan program authorized under Title IV, *see* 20 U.S.C. § 1087a *et seq.*, allows students to apply for and receive Direct Loans from the federal government to pay for their educational expenses, including tuition as well as living expenses. *Id.* § 1087*ll*.

3. Borrowers repay their Direct Loans to the Department of Education. 20 U.S.C. § 1087e; 34 C.F.R. §§ 685.207, 685.211(d).

4. Repayments begin once the borrower stops attending school or if other conditions are met. *See* 20 U.S.C. § 1087e(f).

5. Federal agencies are authorized, so long as they follow certain procedural requirements, to collect their debts through a number of tools, including administrative wage garnishment. 31 U.S.C. § 3720D(a); *see also* 20 U.S.C. § 1095a (authorizing the Department to collect Title IV loan debts through wage garnishment). AWG is a process in which a creditor, in this case the Department, collects delinquent non-tax debt by garnishing the wages of a delinquent debtor without first obtaining a court order. Declaration of Mark A. Brown, Chief Operating Officer, Federal Student Aid, U.S. Department of Education, ¶ 7 ("Brown Decl.," ECF 20-1). In AWG, an employer withholds amounts from an employee's wages and pays those amounts to the creditor agency in satisfaction of an administrative wage garnishment order issued by the creditor agency. *Id.*

6. For federal student loans, a loan is considered in "default" when at least 270 days have passed without the borrower making a payment. Brown Decl. ¶ 8; 20 U.S.C. § 1085(*l*); 34 C.F.R. § 685.102(b) ("Default").

7. When default occurs, the Department notifies the student loan borrower that the debt is due in full and that they may enter into a voluntary payment agreement. Brown Decl. ¶ 8.

8. If the borrower does not enter into a voluntary payment agreement within 65 days of the notice being sent, the Department initiates collection activities, which may include administrative wage garnishment. Brown Decl. ¶ 8.

9. In accordance with the wage garnishment procedures in the regulations and as described in the Brown Declaration, the Department provides the borrower with notice and the opportunity for a hearing before the garnishment is started. Brown Decl. ¶¶ 10-11. The borrower has the right to inspect and copy records, to enter into a repayment agreement to avoid garnishment, to contest the existence or amount of the debt to be collected as well as the terms of the repayment schedule, and to receive an administrative hearing before a hearing official on any objections to the garnishment filed in a timely manner. *See* Brown Decl. ¶ 11; 31 U.S.C. § 3720D(b); *see also* 34 C.F.R. §§ 34.4-34.6.

10. If the dispute over the unpaid debt is not resolved in the borrower's favor or if the borrower does not respond, the Department issues an "Order to Withhold Wages" to the borrower's employer, with a copy also sent to the borrower. Brown Decl. ¶¶ 12-14; *see* 31 U.S.C. § 3720D(c), (d); *see also* 34 C.F.R. § 34.18.

11. Generally speaking, employers begin garnishing payments within four weeks of receiving the "Order to Withhold Wages." Brown Decl. ¶ 15.

12. Once an account is paid in full or if garnishment should stop for other reasons, the Department's Debt Management and Collection System automatically generates a "Notice of cancellation of order for withholding of wages." Brown Decl. ¶ 17. The Department then directs its contractor, Maximus Federal Servicers ("Maximus"), a loan servicer, to send this notice to the employer. *Id.*; *see* 34 C.F.R. § 34.26.

13. As with the original wage garnishment order, employers generally process the cease garnishment instruction using their normal payroll processes, so it too can often take up to four weeks or even longer from the time the stop garnishment order is transmitted to the employer until wages are no longer garnished. Brown Decl. ¶ 17.

14. The Department has the authority to sue an employer who fails to implement a garnishment notice, *see* 31 U.S.C. § 3720D(f)(2); 20 U.S.C. § 1095a(a)(6); 34 C.F.R. § 34.29, but there is no explicit authority for it to sue an employer who continues with garnishment after being instructed to stop.

15. If a borrower establishes before a hearing official that an employer has improperly garnished a borrower's wages, the Department will issue a refund to the borrower. *See* 34 C.F.R. § 34.28.

16. On March 27, 2020, the President signed the Coronavirus Aid, Relief and Economic Security Act ("CARES Act") into law to provide emergency relief to individuals and businesses impacted by the COVID-19 pandemic. Pub. L. 116-136, 134 Stat 281 (2020).

17. Section 3513 of the CARES Act provides that:

> IN GENERAL.—The Secretary shall suspend all payments due for loans made under part D and part B (that are held by the Department of Education) of title IV of the Higher Education Act of 1965 (20 U.S.C. 1087a *et seq*.; 1071 *et seq*.) through September 30, 2020.
> …
> (e) SUSPENDING INVOLUNTARY COLLECTION.—During the period in which the Secretary suspends payments on a loan under subsection (a), the Secretary shall suspend all involuntary collection related to the loan, including—
>
> > (1) a wage garnishment authorized under section 488A of the Higher Education Act of 1965 (20 U.S.C. 1095a) or section 3720D of title 31, United States Code;
>
> …

Pub. L. 116-136, § 3513, 134 Stat 281, 404 (2020).

18. On March 25, 2020, Secretary DeVos ordered the Department to halt collection activity and wage garnishments on federally held student loans and further directed the

Department to refund any funds recovered through garnishments received after March 13, 2020. Brown Decl. ¶ 23.

19. On March 26, 2020, the Department instructed Maximus to direct employers to stop all wage garnishments and also instructed Maximus to initiate refunds of garnishments received on or after March 13, 2020. Brown Decl. ¶ 24.

20. After reengineering its processes and systems, Maximus began sending automated notifications to employers by mail on April 18, 2020. Brown Decl. ¶¶ 25-27.

21. By April 23, 2020, less than 30 days after the CARES Act was signed, Maximus reported that it had notified, either by mail or telephone call, 98% of employers that had been actively garnishing wages, instructing them to stop garnishments for Department-held debt. Brown Decl. ¶ 28.

22. On May 16, 2020, Maximus sent stop garnishment notices to the remaining 2% of employers who had been identified as not previously having received one as a result of discrepancies in Maximus' records (*e.g.*, employers who had invalid addresses in the system or borrowers who were associated with the wrong employers). Brown Decl. ¶¶ 34-35.

23. Maximus mailed several additional rounds of garnishment notices and also began making calls to employers who continued to send in wage garnishments. Brown Decl. ¶¶ 29-33.

24. The Department cannot directly determine when an employer has canceled garnishment for its employees with federally-held student loans. Brown Decl. ¶ 40. Instead, on a weekly basis, the Department measures the percentage of borrowers for whom it has received an AWG payment from an employer compared against the total number of unique borrowers for which the Department has received an AWG payment since March 13, 2020. *Id.*

25. The percentage of borrowers reported as subject to garnishment varies slightly from week to week because different borrowers are paid and subject to AWG each week depending on the pay schedule of their employers (*e.g.*, some borrowers get paid weekly, bi-weekly, monthly).  Brown Decl. ¶ 40.

26. Between the beginning of the national emergency period described in the CARES Act (March 13, 2020) and June 2, 2020, approximately 115,000 employers garnished the wages of approximately 390,000 borrowers.  Brown Decl. ¶ 38.

27. For the week ending June 25, 2020, the Department received payments from garnishment by approximately 2900 employers, affecting 1.1% of the total number of unique borrowers for which the Department has received an AWG payment since March 13, 2020. Declaration of Joe L. Lindsey, Principal Deputy Chief Operating Officer, Federal Student Aid, U.S. Department of Education ¶ 9 ("Lindsey Decl.," filed herewith).

28. For the week ending July 9, 2020, the Department received payments from garnishment by approximately 2147 employers, affecting 0.66% of the total number of unique borrowers for which the Department has received an AWG payment since March 13, 2020. Lindsey Decl. ¶ 10.

29. Approximately 89% of the remaining non-compliant employers are only garnishing one borrower's wages.  Lindsey Decl. ¶ 11.

30. Maximus continues to attempt to re-contact by phone or written notifications those non-compliant employers who continue to send in garnishment payments, prioritizing employers by the number of employees they are garnishing.  Lindsey Decl. ¶ 7.

31. The Department has also acted to refund payments claimed through AWG since March 13, 2020, as quickly as possible, even though refunds are not required by the CARES Act. Lindsey Decl. ¶¶ 13-14; Brown Decl. ¶ 41.

32. Maximus developed an automated process that allowed the Department to expedite refunds for borrowers, which was implemented on April 14, 2020. Brown Decl. ¶¶ 43-44. This automated process generally reduced the processing time for any new reimbursements from several weeks to generally 4-5 business days from the date the garnishment is received at the Treasury Lockbox until the refund check can be mailed to the borrower by the Department of the Treasury. *Id.* ¶ 44.

33. As of July 9, 2020, the Department has issued AWG refunds totaling over $178 million to over 374,000 borrowers, representing over 96% of the wages garnished since March 13. Lindsey Decl. ¶ 15.

34. Refunds for the remaining borrowers have been initiated by the Department and are either being actively processed or on hold because the borrowers owed a refund have an invalid address on file. Lindsey Decl. ¶ 15.

35. The Department and Maximus continue work to validate addresses for the fewer than 19,000 borrowers with invalid addresses on file. Lindsey Decl. ¶¶ 17-20.

36. As part of the stop garnishment notices sent to employers, the Department also requested that employers encourage borrowers to contact the Department to provide an updated address to which garnishment refund payments could be sent. Brown Decl. ¶ 42.

37. The Department continues to work to validate addresses by sending emails to the borrowers (most if not all of whom have email addresses on file) on a weekly basis notifying

them they are owed a refund and instructing them how to access and use the Debt Resolution Portal to confirm their address.  Lindsey Decl. ¶ 18.

38.     Maximus has implemented targeted messaging in their Interactive Voice Response systems and updated scripts for call center representatives prompting borrowers who calls to provide the Department with a valid address.  Lindsey Decl. ¶ 19.

39.     For those borrowers with invalid addresses, the Department and Maximus deployed an address validation tool on the Debt Resolution Portal, https://myeddebt.ed.gov/borrower/.  Lindsey Decl. ¶ 20.

40.     The Department is also working with the Department of Treasury to locate correct addresses for these borrowers.  Lindsey Decl. ¶ 22.

41.     Any garnishments still in the hands of the Department are fully credited to the borrowers' accounts until such time as a refund can be processed and sent to the borrower. Lindsey Decl. ¶ 23.

42.     The wages of plaintiff Elizabeth Barber, a Direct Loan borrower, were garnished between March 13, 2020, and April 24, 2020.  Amend. Compl. ¶¶ 55-57 (ECF No. 9).

43.     Garnishment then ceased as to Ms. Barber's wages, and no amounts were withheld from her May 1, 2020, paycheck or from any future paychecks.  Amend. Compl. ¶ 58; Brown Decl. ¶ 47.

44.     Ms. Barber has received and cashed refund checks for all amounts garnished between March 13, 2020, and April 24, 2020.  Brown Decl. ¶ 47; Lindsey Decl. ¶ 16.

45.     The wages of plaintiff Craigory Jenkins, a Direct Loan borrower, were garnished between March 13, 2020, and May 8, 2020.  Amend. Compl. ¶¶ 68-71.

46. Garnishment then ceased as to Ms. Jenkins' wages, and no amounts have been withheld from paychecks she received after May 8, 2020.  Brown Decl. ¶ 48.

47. Ms. Jenkins has received and cashed refund checks for all amounts garnished between March 13, 2020, and May 8, 2020.  Brown Decl. ¶ 48; Lindsey Decl. ¶ 16.

Dated: July 20, 2020

Respectfully submitted,

ETHAN P. DAVIS
Acting Assistant Attorney General
Civil Division

MARCIA BERMAN
Assistant Branch Director, Federal Programs Branch

*/s/ Carol Federighi*
CAROL FEDERIGHI
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
Phone: (202) 514-1903
Email: carol.federighi@usdoj.gov

*Counsel for Defendants*