IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELIZABETH BARBER, et al, *on behalf of themselves and all others similarly situated*,<br><br>*Plaintiffs*,<br><br>vs.<br><br>ELISABETH DEVOS, *in her official capacity as United States Secretary of Education*, and UNITED STATES DEPARTMENT OF EDUCATION,<br><br>*Defendants*. | Case No. 20-cv-1137-CJN |

**DECLARATION OF PLAINTIFFS' COUNSEL, ALEXANDER S. ELSON,
IN SUPPORT OF FED. R. CIV. P. 56(d) DISCOVERY MOTION**

I, ALEXANDER S. ELSON, pursuant to 28 U.S.C. § 1746, hereby declare:

1. I am an attorney duly admitted to practice in this Court. I am one of the attorneys of record for the Plaintiffs and am familiar with the facts and circumstances of this matter.

2. In its Memorandum in Support of its Motion for Summary Judgment, the Department asserts that summary judgment should be granted because it has "fully complied with [its] obligation" under the Section 3513(e) of the Coronavirus Aid, Relief, and Economic Security Act, P.L. 116-136 (the "CARES Act"). Dkt. 27-1 at 16. To support this assertion, the Department has cited the purported facts that it "has sent notices to each employer instructing them to cease garnishment," *id.*, and that it "has issued refunds for most of the payments garnished since March 31, 2020, where the Department has the necessary information to send the refund to the borrower," *id*. See also, *id*. at 17 (describing why, in the Department's view, it has "met [its] obligations regarding AWG under the CARES Act" and "has no further responsibility").

3. In opposition to the Department's motion, Plaintiffs have asserted that the adequacy of the Department's efforts to comply with the CARES Act is immaterial, but that if the Court disagrees, the motion is premature because "there is not currently a sufficient record for the Court to decide summary judgment." Pls.' Consol. Mem. in Opp. to Defs.' Mot. to Dismiss or, in the Alt., Mot. for Summ. J. and in Supp. of Mot. to Stay Pursuant to Rule 56(d) at 13.

4. Discovery in this case has not commenced. Defendants have not filed an Answer.

5. In light of the facts averred by Defendants in moving for summary judgment, Plaintiffs anticipate discovery into the following facts or categories of facts, each of which is relevant (if the Court agrees with Defendants that this case turns on the extent of their effort to comply with the CARES Act) to the claims or defenses in this case, and proportional to the needs of the case:

   a. The Department's process for implementing wage garnishments, issuing orders to halt wage garnishments, and effectuating orders to implement and halt wage garnishments. Defs.' Statement of Material Facts (Dkt. 28) ¶¶ 5, 7-13.

   b. "On March 26, 2020, the Department instructed Maximus to direct employers to stop all wage garnishments and also instructed Maximus to initiate refunds of garnishments received on or after March 13, 2020." *Id.* ¶ 19.

   c. "After reengineering its processes and systems, Maximus began sending automated notifications to employers by mail on April 18, 2020." *Id.* ¶ 20.

   d. "By April 23, 2020, less than 30 days after the CARES Act was signed, Maximus reported that it had notified, either by mail or telephone call, 98% of employers

      that had been actively garnishing wages, instructing them to stop garnishments for Department-held debt." *Id.* ¶ 21.

e. "On May 16, 2020, Maximus sent stop garnishment notices to the remaining 2% of employers who had been identified as not previously having received one as a result of discrepancies in Maximus' records (e.g., employers who had invalid addresses in the system or borrowers who were associated with the wrong employers)." *Id.* ¶ 22.

f. "Maximus mailed several additional rounds of garnishment notices and also began making calls to employers who continued to send in wage garnishments." *Id.* ¶ 23.

g. "The Department cannot directly determine when an employer has canceled garnishment for its employees with federally-held student loans. Instead, on a weekly basis, the Department measures the percentage of borrowers for whom it has received an AWG payment from an employer compared against the total number of unique borrowers for which the Department has received an AWG payment since March 13, 2020." *Id.* ¶ 24 (internal citation omitted).

h. "The percentage of borrowers reported as subject to garnishment varies slightly from week to week because different borrowers are paid and subject to AWG each week depending on the pay schedule of their employers (e.g., some borrowers get paid weekly, bi- weekly, monthly)." *Id.* ¶ 25.

i. "Between the beginning of the national emergency period described in the CARES Act (March 13, 2020) and June 2, 2020, approximately 115,000 employers garnished the wages of approximately 390,000 borrowers." *Id.* ¶ 26.

j.  "For the week ending June 25, 2020, the Department received payments from garnishment by approximately 2900 employers, affecting 1.1% of the total number of unique borrowers for which the Department has received an AWG payment since March 13, 2020." *Id.* ¶ 27.

k.  "For the week ending July 9, 2020, the Department received payments from garnishment by approximately 2147 employers, affecting 0.66% of the total number of unique borrowers for which the Department has received an AWG payment since March 13, 2020." *Id.* ¶ 28.

l.  "Approximately 89% of the remaining non-compliant employers are only garnishing one borrower's wages." *Id.* ¶ 29.

m.  "Maximus continues to attempt to re-contact by phone or written notifications those non-compliant employers who continue to send in garnishment payments, prioritizing employers by the number of employees they are garnishing." *Id.* ¶ 30.

n.  "The Department has also acted to refund payments claimed through AWG since March 13, 2020, as quickly as possible, even though refunds are not required by the CARES Act." *Id.* ¶ 31.

o.  "Maximus developed an automated process that allowed the Department to expedite refunds for borrowers, which was implemented on April 14, 2020. This automated process generally reduced the processing time for any new reimbursements from several weeks to generally 4-5 business days from the date the garnishment is received at the Treasury Lockbox until the refund check can be mailed to the borrower by the Department of the Treasury." *Id.* ¶ 32 (internal citation omitted).

p. "As of July 9, 2020, the Department has issued AWG refunds totaling over $178 million to over 374,000 borrowers, representing over 96% of the wages garnished since March 13." *Id.* ¶ 33.

q. "Refunds for the remaining borrowers have been initiated by the Department and are either being actively processed or on hold because the borrowers owed a refund have an invalid address on file." *Id.* ¶ 34.

r. "The Department and Maximus continue work to validate addresses for the fewer than 19,000 borrowers with invalid addresses on file." *Id.* ¶ 35.

s. "As part of the stop garnishment notices sent to employers, the Department also requested that employers encourage borrowers to contact the Department to provide an updated address to which garnishment refund payments could be sent." *Id.* ¶ 36.

t. "The Department continues to work to validate addresses by sending emails to the borrowers (most if not all of whom have email addresses on file) on a weekly basis notifying them they are owed a refund and instructing them how to access and use the Debt Resolution Portal to confirm their address." *Id.* ¶ 37.

u. "Maximus has implemented targeted messaging in their Interactive Voice Response systems and updated scripts for call center representatives prompting borrowers who calls to provide the Department with a valid address." *Id.* ¶ 38.

v. "For those borrowers with invalid addresses, the Department and Maximus deployed an address validation tool on the Debt Resolution Portal, https://myeddebt.ed.gov/ borrower/." *Id.* ¶ 39.

  w. "The Department is also working with the Department of Treasury to locate correct addresses for these borrowers." *Id*. ¶ 40.

  x. "Any garnishments still in the hands of the Department are fully credited to the borrowers' accounts until such time as a refund can be processed and sent to the borrower." *Id*. ¶ 41.

6. In order to present facts essential to justify their opposition to the Department's motion for summary judgment, Plaintiffs seek an opportunity to conduct discovery into the above facts, within the scope permitted by Fed. R. Civ. P. 26(b)(1). Such discovery would include, but not be limited to, the following:

  a. Templates of letters and emails sent to borrowers to notify them of the CARES Act, to notify them of their refund rights, to request address validation, and to provide refunds.

  b. Automated and live scripts for telephone calls with borrowers whose addresses need validation.

  c. Templates of written communications sent to employers to notify them of the CARES Act and inform them to stop garnishment.

  d. Communications between the Department and its contractor, Maximus, including but not limited to:

   i. The Department's instructions to Maximus in March 2020 to direct employers to stop all wage garnishments and to initiate refunds of garnishments.

      ii. Communications from the weeks after the CARES Act was passed relevant to how Maximus "reengineer[ed] its processes and systems," Dkt. 28 at 20.

      iii. The weekly reports the Department received from Maximus regarding the status of its attempts to suspend wage garnishments.

      iv. Contract documents (including change requests and modification orders), policies, procedures, guidance, or communications that reflect the Department's expectations and instructions for Maximus.

e. The number of unique borrowers subject to wage garnishment since March 13, 2020.

f. The number of unique employers who have garnished wages since March 13, 2020.

g. The total number of refunds owed or paid and the dollar amount of each refund payment owed or paid to borrowers whose wages were garnished since March 27, 2020.

h. Of the $180 million in refunds that the Department claims to have "issued" as of July 27, 2020, Dkt. 29 at 2, records documenting the amount of those funds that have in fact been cashed or deposited.

i. The number of borrowers who have used the Department's Debt Resolution Portal to validate their addresses for purposes of receiving refunds.

j. Information about why the Department waited until April 18, 2020 to begin sending stop garnishment orders to employers.

k. Information about how and when the Department confirmed that employers received a stop garnishment order or communication.

l. Information about how the Department obtains and validates contact information for employers.

m. Information about why the Department reports no attempts to reach employers by email, particularly after stating to the Washington Post in April 2020 that they have "been trying to speed things up by first calling and emailing employers," Am Compl. ¶¶ 40-41, and where, in other court proceedings, they have reported emailing employers in efforts to stop unlawful garnishments.

n. Of the 98% of employers that the Department claims Maximum contacted by mail or telephone as of April 23, 2020, Dkt. 28 at ¶ 21, information regarding whether letters were in fact received or returned to sender and information regarding how many phone calls resulted in live conversations as opposed to voice mails.

o. Information about any feedback or complaints that the Department (including through their contractors) received from employers and from borrowers about stop garnishment notices, refunds, or communication efforts regarding the CARES Act's suspension of wage garnishment.

p. Information about how the Department ensures email addresses are valid for borrowers.

q. Information about when the Department began making phone calls to employers who continued to garnish wages, how many of those phone calls resulted in live conversations as opposed to voice mails, and whether the calls proved effective.

  r. Information about what additional efforts, if any, the Department considered taking, but did not pursue to halt wage garnishments, validate addresses, and deliver refunds.

  s. Information about what additional efforts, if any, the Department intends to take to halt wage garnishments, validate addresses, and deliver refunds, and the date on which such efforts will begin.

  7. If the Court views the determinative question in this case to depend on the adequacy of the Department's attempts to fulfill its statutory duties—as opposed to whether or not the Department has fulfilled its duty to suspend wage garnishments between March 27, 2020 and September 30, 2020—then such discovery is necessary to uncover the nature and extent of the Department's efforts and whether they have in fact been adequate or reasonable—as well as how (if at all) they have changed over time and whether they are continuing. This discovery will also reveal the efforts the Department did not undertake, or that it considered and rejected. At present, Plaintiffs have not had any opportunity to question the facts asserted by the Department.

  8. The documents and information sought through these discovery requests are in the custody and control of Defendants, are relevant to each of Plaintiffs' claims, and fit within the broad scope of Federal Rule of Civil Procedure 26(b)(1).

I declare under penalty of perjury that the foregoing is true and correct. Executed on the 3rd day of August, 2020.

_/s/ Alexander S. Elson_
Alexander S. Elson